1  LEO D. PLOTKIN (SBN 101893)
   JOHN P. MERTENS (SBN 252762)
2  LEVY, SMALL & LALLAS
   A Partnership Including Professional Corporations
3  815 Moraga Drive
   Los Angeles, California 90049
4  Telephone: (310) 471-3000
   Facsimile: (310) 471-7990
5
   Attorneys for Plaintiff HSBC Bank USA,
6  National Association, as Indenture Trustee
   for the benefit of the Noteholders and the
7  Certificateholders of Business Loan
   Express Business Loan Trust 2005-A
8

9            UNITED STATES DISTRICT COURT

10          EASTERN DISTRICT OF CALIFORNIA

11

12
   HSBC BANK USA, National            Case No. 2:09-cv-02356-WBS-EFB
13 Association, as Indenture Trustee for the
   benefit of the Noteholders and the      FIRST AMENDED COMPLAINT
14 Certificateholders of Business Loan     FOR:
   Express Business Loan Trust 2005-A,
15                                            1. JUDICIAL FORECLOSURE
                Plaintiff,                    2. BREACH OF WRITTEN
16                                               GUARANTEE
        vs.
17
   DARA PETROLEUM, INC. dba WATT
18 AVENUE EXXON, a California
   corporation; SARBJIT S. KANG, an
19 individual; NARGES EGHTESADI, an
   individual; U.S. SMALL BUSINESS
20 ADMINISTRATION, a United States
   government agency; and DOES 1
21 through 20, inclusive,

22              Defendants.

23

24

25

26

27

28

---

FIRST AMENDED COMPLAINT

Plaintiff HSBC Bank USA, National Association, as Indenture Trustee for the benefit of the Noteholders and the Certificateholders of Business Loan Express Business Loan Trust 2005-A ("HSBC as Trustee"), hereby alleges and complains against defendants Dara Petroleum, Inc. dba Watt Avenue Exxon ("Dara"), Sarbjit S. Kang ("Kang"), Narges Eghtesadi ("Eghtesadi"), the United States Small Business Administration (the "SBA"), and Does 1-20 (collectively, "Defendants") as follows:

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.     Jurisdiction and Venue.**

1.     HSBC as Trustee is informed and believes that the Property (defined below) upon which it seeks to foreclose by this action is property against which the SBA, an agency of the United States Government, has a lien, and that no trial has yet been had in the state court.  Therefore, this action has been removed to United States District Court by the SBA pursuant to 28 U.S.C. §1442(a)(1) and 28 U.S.C. §1444.

2.     Venue is appropriate in the above-captioned court because the Property (defined below) on which this action is based is located within the geographical boundaries of the Eastern District of California.

**B.     The Parties.**

3.     HSBC Bank USA, National Association, is a national banking association duly organized and existing under the laws of the United States, and HSBC as Trustee is the Indenture Trustee for the benefit of the Noteholders and the Certificateholders of Business Loan Express Business Loan Trust 2005-A. HSBC as Trustee is the assignee of the interests of BLX Capital, LLC ("BLX"), a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York, and duly authorized to do business in the State of California, as set forth hereinbelow.

4.     HSBC as Trustee is informed and believes and thereon alleges that Dara is a corporation duly organized and existing under the laws of the State of California, with its principal place of business located at 8994 Greenback Lane, Orangevale, CA, 95662.

5.     HSBC as Trustee is informed and believes, and thereon alleges, that defendant Kang is an individual residing in the County of Contra Costa, State of California.

6.     HSBC as Trustee is informed and believes, and thereon alleges, that defendant Eghtesadi is an individual residing in the County of Contra Costa, State of California.

7.     HSBC as Trustee is informed and believes, and thereon alleges, that Kang and Eghtesadi (collectively, the "Individuals") have done business as or are doing business as, among other things, Dara.

8.     HSBC as Trustee is informed and believes and thereon alleges that the SBA is a United States government agency duly organized and existing under the laws of the United States, and having a business address in California of 650 Capitol Mall, Suite 7-500, Sacramento, CA, 95814.

9.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 20, inclusive, are unknown to HSBC as Trustee, who therefore sues said defendants by such fictitious names. HSBC as Trustee will amend this Complaint to show their true names and capacities when the same have been ascertained.

10.     HSBC as Trustee is informed and believes, and on that basis alleges, that the defendants named herein as Does 1 through 20, inclusive, and each of them, are the agents, co-conspirators or representatives of one another or have, or claim to have, some right, title or interest in or lien upon ("Interest") the Property (defined below) or in the rents, issues and profits therefrom.  Plaintiff is further

COMPLAINT

informed and believes, and on that basis alleges, that the Interests, if any, of said defendants, and each of them, are subsequent to and inferior to Plaintiff's rights in the Property and the rents, issues and profits derived therefrom.

11.   HSBC as Trustee is informed and believes and thereon alleges that defendants Dara, the Individuals, the SBA, and Does 1 through 20, inclusive, and each of them, were the agents, servants, and employees or each of the other, and in doing and suffering the acts hereinafter alleged, each was acting in such capacity and within the relative scope of his or her authority.

## C.   The Real Property.

12.   Dara is the record owner of certain real property located in the County of Sacramento, State of California commonly known as 3449 El Camino Avenue, Sacramento, California 95821 (the "Property") and legally described as follows:

PARCEL 1:

The South 200 feet of the East 250 feet of Lot 245 of Del Paso Park View Tract No. 2 according to the official plat thereof, filed in the office of the Recorder of Sacramento County, California, on June 7,1913, in Book 14 of Maps, Map No. 33.

The Subdivision of said Lot 245 being made on the basis that the lot area included one-half of the adjoining roads.

PARCEL 2:

The North 10482 feet of the South 304.82 feet of the East 250 feet of Lot 245 of Del Paso View Tract No- 2, according to the official plat thereof filed in the office of the County Recorder of Sacramento County, California on June 7,1913, in Book 14 of Maps, at page 33.

EXCEPTING THEREFROM that portion thereof lying within that certain parcel described in the "Certification of Compliance-Lawfiul Parcel" issued by the County Surveyor of Sacramento County, dated September 14, 1988, and recorded September 16, 1988, in Book 880916, page I001,Official Records, more particularly described as follows:

Beginning at a point on the East line of said Lot 245 and the center line of Waft Avenue, located North 01 degrees 45 minutes 30 seconds

West 230.00 feet from the Southeast corner of said Lot 245 said Southeast corner being the intersection of the center lines of Waft Avenue and El Camino Avenue, as shown on said plat, thence from said point of beginning parallel with the South line of Lot 245, South 89 degrees 02 minutes 30 seconds West 250~00 feet; thence parallel with the East line of said Lot 245, North 01 degrees 46 minutes 30 seconds West 74.82 feet; thence parallel with the South line of said Lot 245 North 89 degrees 02 minutes 30 seconds East 250~00 feet to the East line of said Lot 245 arid the center line of said Watt Avenue; thence along said East line South 01 degrees 46 minutes 30 seconds East 74.82 feet to the point of beginning.

The subdivision of said Lot 245 being made on the basis that the lot area included one-half of the adjoining road.

## D.     The Letter Loan Agreement, Promissory Note, and Deed of Trust, Security Agreement, Fixture Filing and Assignment of Leases and Rents.

13.     On or about July 29, 2004, Dara executed and delivered to BLX a letter loan agreement (the "Loan Agreement") whereby BLX agreed to loan money to Dara in a principal sum not in excess of $800,000.00, a true and correct copy of which is attached hereto as Exhibit "A" and incorporated by reference herein.

14.     On or about July 29, 2004, Dara executed and delivered to BLX a written Promissory Note in the principal sum of $800,000.00 (the "Note"), a true and correct copy of which is attached hereto as Exhibit "B" and incorporated by reference herein.

15.     Pursuant to the Loan Agreement and Note, BLX made a loan to Dara in the sum of $800,000.00 (the "Loan"), and Dara agreed to repay the Loan, with interest, in monthly installments.

16.     To secure the obligations of Dara under the Note, on or about July 29, 2004, Dara executed a written Deed of Trust, Security Agreement, Fixture Filing, and Assignment of Leases and Rents (the "BLX Trust Deed") whereby Dara conveyed its interest in the Property and in the personal property collateral associated with the Property to Fidelity National Title Company, as trustee, for the

benefit of BLX, as beneficiary.  The BLX Trust Deed was recorded on August 2, 2004 in Book 20040802 on Page 0627 in the official Records of the County of Sacramento, State of California.  A true and correct copy of the BLX Trust Deed is attached hereto as Exhibit "C" and incorporated by reference herein.

17.   On or about July 12, 2004, Dara executed a written Deed of Trust with Assignment of Rents (the "EDF Trust Deed") whereby Dara conveyed its interest in the Property and associated collateral to Fidelity National Title Company, as trustee, for the benefit of EDF Resource Capital, Inc. ("EDF"), as beneficiary.  On or about July 28, 2004, EDF executed a Corporation Assignment of Deed of Trust whereby EDF granted, assigned, and transferred its interest in the EDF Trust Deed to the SBA.  The EDF Trust Deed and Corporation Assignment of Deed of Trust were recorded on August 2, 2004 in Book 20040802 in the official Records of the County of Sacramento, State of California.   True and correct copies of the EDF Trust Deed and Corporation Assignment of Deed of Trust are attached collectively hereto as Exhibit "D" and incorporated by reference herein.

18.   On or about August 2, 2004, BLX and EDF entered into a Third Party Lender Agreement pursuant to which EDF subordinated its interest in the Property and to the associated collateral to that of BLX.   The Third Party Lender Agreement was recorded on August 27, 2004 in Book 20040827 on Page 2118 in the official Records of the County of Sacramento, State of California.   A true and correct copy of the Third Party Lender Agreement is attached hereto as Exhibit "E" and incorporated by reference herein.

**E.     The Guarantees.**

19.   On or about July 29, 2004, Kang and Eghtesadi, each, in their individual capacities, executed unconditional written guarantees of the Loan (collectively, the "Guarantees"), pursuant to which each of the Individuals

1    unconditionally guaranteed payment to BLX of all amounts due and owing under

2    the Note.   True and correct copies of the Guarantees are attached collectively

3    hereto as Exhibit "F", and are incorporated by reference herein.

4        **F.    The Assignment to HSBC as Trustee.**

5        20.    On or about August 16, 2004, BLX executed an Allonge to

6    Promissory Note (the "First Allonge") and an Assignment of Mortgage/Deed of

7    Trust (the "First Assignment") transferring its interest in the Note and BLX Trust

8    Deed to BLC Capital Funding, LLC ("BLC").   True and correct copies of the First

9    Allonge and First Assignment are attached collectively hereto as Exhibit "G", and

10   are incorporated by reference herein.

11       21.    Also on or about August 16, 2004, BLC executed an Allonge to

12   Promissory Note (the "Second Allonge") and an Assignment of Mortgage/Deed of

13   Trust (the "Second Assignment") transferring its interest in the Note and BLX

14   Trust Deed to HSBC Bank USA, its successors and assigns, as indenture trustee

15   under that certain Indenture dated as of March 19, 2004, relating to BLX

16   Conventional Funding Trust II Notes (the "First Trustee").   True and correct

17   copies of the Second Allonge and Second Assignment are attached collectively

18   hereto as Exhibit "H", and are incorporated by reference herein.   BLX remained

19   the noteholder of record and continued to service the Loan on behalf of the First

20   Trustee.

21       22.    On or about June 10, 2005, BLC, as attorney-in-fact for Delaware

22   Trust Company, National Association, as successor trustee for the First Trustee,

23   executed an Allonge to Promissory Note (the "Third Allonge") and Assignment of

24   Mortgage/Deed of Trust (the "Third Assignment") by which it transferred the

25   interests under the Note and BLX Trust Deed to HSBC as Trustee.   True and

26   correct copies of the Third Allonge and Third Assignment are attached

27   collectively hereto as Exhibit "I", and are incorporated by reference herein.   BLX

28

1  remains the noteholder of record and continues to service the Loan on behalf of

2  HSBC as Trustee.

3      23.  BLX, BLC, the First Trustee and HSBC as Trustee have performed

4  all of their obligations, if any, pursuant to the Loan Agreement, Note, BLX Trust

5  Deed and Guarantees, except to the extent performance was waived, excused or

6  discharged by reason of the conduct of Dara and/or the Individuals.

7      **G.  The Demand for Payment.**

8      24.  On or about June 3, 2009, demand for payment letters (the "Demand

9  for Payment Letters") were sent by BLX on behalf of HSBC as Trustee to Dara

10  and to each of the Individuals stating that the Note and Guarantees were in default,

11  accelerating the amount due and owing under the Note and the Guarantees, and

12  demanding full payment of all amounts due and owing under the Note and the

13  Guarantees by or before June 17, 2009. True and correct copies of the Demand for

14  Payment Letters are attached collectively hereto as Exhibit "J", and are

15  incorporated by reference herein.

16      25.  Despite demand, neither Dara nor any of the Individuals have paid the

17  amounts due and owing to HSBC as Trustee.

18      **FIRST CAUSE OF ACTION**

19      **Judicial Foreclosure of Trust Deed**

20      **(Against All Defendants)**

21      26.  HSBC as Trustee repeats and realleges each and all of the allegations

22  of paragraphs 1 through 25, inclusive, as though set forth in full herein.

23      27.  HSBC as Trustee is the lawful owner and holder of the Note and the

24  Guarantees, and the beneficial interest holder of the BLX Trust Deed.

25      28.  Dara has defaulted under the Note in that, among other things, it has

26  failed to make any payments due and owing under the Note since October 20,

27  2008, in the aggregate amount of approximately $49,144.84.

28

29.     Pursuant to the Note and the Demand for Payment Letters, the entire indebtedness due and owing on the Loan has been accelerated and is now due and payable in full in the sum of $794,747.22 as of May 22, 2009, with interest accruing thereafter at the daily rate of $125.28 and with all fees, charges, and expenses due under the Note (the "Indebtedness").

30.     As a result of the default under the Note, HSBC as Trustee is entitled, among other things, to (a) foreclose on the BLX Trust Deed, (b) sell the Property and any of the associated collateral that may be sold therewith, (c) obtain a deficiency judgment against Dara and Does 1 through 10 for the unpaid sum of the Indebtedness, and (d) such other and further relief as is set forth in the Prayer for Relief as to this First Cause of Action.

31.     Plaintiff has been required to retain, and has retained the law firm of Levy, Small & Lallas, a Partnership Including Professional Corporations, to institute this action and enforce the obligations of Dara and the Individuals. As a result, HSBC as Trustee has incurred and will continue to incur attorney's fees and expenses and other costs.

32.     Pursuant to the Note, HSBC as Trustee is entitled to recover its attorney's fees and costs herein.

## SECOND CAUSE OF ACTION

### For Breach of Written Guarantee

### (Against Kang, Eghtesadi, and Does 11-20)

33.     HSBC as Trustee repeats and realleges each and all of the allegations of paragraphs 1 through 32, inclusive, as though set forth in full herein.

34.     On or about July 29, 2004, each of the Individuals executed and delivered a Guarantee to BLX in consideration of, among other things, the Loan that BLX made to Dara as reflected by the Note.

-8-

COMPLAINT

1      35.    HSBC as Trustee has performed all of its obligations, if any, pursuant

2  to the Guarantees, except to the extent performance was waived, excused or

3  discharged by reason of the Individuals' conduct.

4      36.    The Individuals, and each of them, have breached their obligations to

5  HSBC as Trustee under the Guarantees in that each of them has failed to pay the

6  Indebtedness.

7      37.    As a result of the Individuals' breach of the Guarantees, HSBC as

8  Trustee has been damaged in the amount of at least the amount of the

9  Indebtedness.

10      38.    Plaintiff has been required to retain, and has retained the law firm of

11  Levy, Small & Lallas, a Partnership Including Professional Corporations, to

12  institute this action and enforce the obligations of Dara and the Individuals.  As a

13  result, HSBC as Trustee has incurred and will continue to incur attorney's fees and

14  expenses and other costs.

15      39.    Pursuant to the Guarantees, HSBC as Trustee is entitled to recover its

16  attorney's fees and costs incurred herein.

17                    **PRAYER FOR RELIEF**

18      **WHEREFORE,** HSBC as Trustee prays for judgment against Defendants

19  as follows:

20      1.    On the First Cause of Action against Dara, the Individuals, and Does

21  1-10, (a) for damages in the sum of at least $794,747.22 as of May 22, 2009, with

22  interest accruing thereafter at the daily rate of $125.28 and with all fees, charges,

23  and expenses due under the Note, through the date of judgment, and (b) for a

24  judgment against all Defendants and Does 1-10:

25          i.    That all rights, claims, ownership, liens, titles and demands of

26  any or all of the Defendants are subsequent to and subject to the lien of the BLX

27  Trust Deed;

28

1          ii.     That (i) the BLX Trust Deed be foreclosed, (ii) the Property be

2     sold, together with such of the associated collateral as may be included in such

3     sale, according to law by a levying officer to be appointed by the Court,

4     (iii) HSBC as Trustee may become a purchaser at the sale, (iv) the proceeds of sale

5     be applied in payment of the Indebtedness, (v) all Defendants and Does 1-10, and

6     any or all persons claiming rights subordinate to Dara and Does 1-10, after

7     execution of the BLX Trust Deed, whether as lien claimant, judgment creditor,

8     claimant under a junior trust deed, purchaser, lienholder, or otherwise, be barred

9     and foreclosed from all rights, claims, interests, or equity of redemption in the

10    Property and every part of the Property when the time for redemption has elapsed,

11    (vi) the levying officer, after the time for redemption has elapsed, shall execute a

12    deed to the purchaser of the Property at the sale, and (vii) the purchaser shall be let

13    into possession of the Property on production of the levying officer's deed; and

14          iii.    That Dara and Does 1-10 are personally liable for payment of

15    the Indebtedness and that a deficiency judgment may be entered against Dara and

16    Does 1-10, jointly and severally.

17         2.     On the Second Cause of Action against the Individuals and Does 11-

18    20, for damages in the sum of at least $794,747.22 as of May 22, 2009, with

19    interest accruing thereafter at the daily rate of $125.28 and with all fees, charges,

20    and expenses due under the Note, through the date of judgment.

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28

**COMPLAINT**

1         3.      And on all causes of action alleged herein, for:

2                a.      Attorney's fees and costs of suit incurred herein; and

3                b.      Such other and further relief as the Court may deem just and

4 proper.

5

6 DATED: May 3, 2010            LEVY, SMALL & LALLAS
                                         A Partnership Including Professional

7                                          Corporations
                                         LEO D. PLOTKIN

8                                          JOHN P. MERTENS

9

10                                          By: _____

11                                          JOHN P. MERTENS
                                         Attorneys for Plaintiff

12                                          HSBC BANK USA, National
                                         Association, as Indenture Trustee for the

13                                          benefit of the Noteholders and the
                                         Certificateholders of Business Loan

14 24997-1                                 Express Business Loan Trust 2005-A

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LETTER LOAN AGREEMENT
(non construction)

_7-29_, 2004

BLX Capital, LLC
700 North Pearl
Suite 1850, LB 359
Dallas, Texas 75201-7524

Attention: W. David Jenkins

Re:  $800,000.00 Loan (the "Loan") by BLX Capital, LLC ("Lender") to Dara
Petroleum, Inc. dba Watt Ave Exxon ("Borrower") for the acquisition of the land
more particularly described on Exhibit "A" attached hereto and certain
improvements (the "Improvements") located thereon (collectively, the "Land")

Gentlemen:

In order to finance the acquisition of the Land and related costs, you, as Lender, have
agreed to loan to the Borrower, and the Borrower has agreed to borrow from the Lender, a
principal sum not in excess of $800,000.00 (the "Loan") subject to the terms and conditions
hereafter stated in this Letter Loan Agreement:

1.    It is understood and agreed that the Borrower will execute contemporaneously
herewith or immediately hereafter all of the documents involved in the Loan and Borrower agrees
to do all things necessary to insure that all of said documents remain outstanding and enforceable
in accordance with their terms during the full term of the Loan. The documents executed are all of
even date herewith and include a promissory note to Lender in the amount of $800,000.00 (the
"Note") a Deed of Trust (with Security Agreement, Assignment of Rents and Financing Statement)
securing the Note and other documents securing or relating to the Loan (the "Loan Documents").

2.    The obligation of the Lender to advance the loan proceeds hereunder is and shall be
subject to the prior or simultaneous occurrence or satisfaction of each of the following conditions:

(a)    Lender shall have received such instruments and documents as the
Lender may specify, and in such form and content and containing such
certifications, approvals and other data and information as the Lender may
reasonably require.



**EXHIBIT** A

(b)     Policies of insurance (completed value reporting form, including coverage, and, if requested, all risk coverages), comprehensive liability insurance, fire and extended coverage insurance in an amount acceptable to Lender, each with loss payable clauses in favor of the Lender, and workmen's compensation insurance, in such forms and amounts and issued by an insurer reasonably satisfactory to Lender, shall have been delivered to the Lender and shall be currently in force.

(c)     There shall currently exist no event of default under any of the Loan Documents securing the Loan.

(d)     The Improvements shall not have been materially injured, damaged or destroyed by fire or other casualty, nor shall the Improvements or any part of the Project be subject to condemnation proceedings or negotiations for sale in lieu thereof.

3.     The occurrence of any of the following shall constitute Events of Default hereunder.

(a)     Borrower shall fail to comply with the provisions of this Letter Loan Agreement.

(b)     If a default shall occur under any of the Loan Documents securing the Loan.

(c)     If the Borrower shall (i) apply for or consent to the appointment of a receiver, trustee, or liquidator, (ii) admit in writing his inability to pay his debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) be adjudicated a bankrupt or insolvent, or (v) file a voluntary petition in bankruptcy or file a petition or answer seeking reorganization or an arrangement with creditors or to take advantage of any insolvency law or an answer admitting the material allegations of a petition filed against Borrower in any bankruptcy or insolvency proceeding.

(d)     If an order, judgment or decree shall be entered, without the application, approval or consent of the Borrower or any guarantor of the Loan, by any court of competent jurisdiction appointing a receiver, trustee or liquidator of the Borrower or any guarantor or of all or a substantial part of the assets of the Borrower, or any guarantor, and such order, judgment or decree shall continue unstayed and in effect for a period of sixty (60) consecutive days.

(e)     If any levy, attachment or garnishment be issued, or if any lien for the performance of work or the supply of materials be filed against the Land or the Project and remain unsatisfied or unbonded at the time of any request for an advance or for a period of forty-five (45) days after the date of filing thereof.

    (f)    If the Borrower is unable to satisfy any condition of Borrower's right to receive advances hereunder for a period in excess of thirty (30) days.

    (g)    If the Borrower fails to comply with any requirements of any Governmental Authority within thirty (30) days after notice in writing of such requirement shall have been given to the Borrower.

    (h)    If Borrower should dissolve.

4.    The Lender shall have the right, upon the happening of any of the foregoing Events of Default, in addition to any rights or remedies available to it under the deed of trust securing the Loan or any other instrument securing the Loan, to enter into possession of the Land and all sums so expended by the Lender shall be deemed to have been paid to the Borrower and secured by the deed of trust securing the Loan. For this purpose, Borrower hereby constitutes and appoints the Lender as Borrower's true and lawful attorney-in-fact with full power of substitution to complete the Project in the name of the Borrower, and hereby empowers said attorney or attorneys as follows:

    (a)    To use any funds of the Borrower, including any funds which may remain unadvanced hereunder, for the purpose of completing or maintaining the Improvements on the Land;

    (b)    To pay, settle or compromise all existing bills and claims which or may be liens against the Land, or may be necessary or desirable for the completion of the work or the clearance of title; and

It is understood that this power of attorney shall be deemed to be a power coupled with an interest which cannot be revoked until the Loan has been repaid to Lender in full. Said attorney-in-fact shall also have power to prosecute and defend all actions or proceedings in connection with the Land and to take such action and require such performance as is deemed necessary.

Thank you very much for your cooperation in this matter.

Dara Petroleum, Inc. dba Watt Ave Exxon

By: _____
Narges Eghtesadi, President

Attest: _____
Narges Eghtesadi, Secretary

Watt Avenue Exxon

## ADJUSTABLE RATE PROMISSORY NOTE

$800,000.00                           New York, New York                    (Loan No.: _____)

Maturity Date: 7-29-2029 (the "Maturity Date")                    Date: 7-29, 2004

1.   Promise to Pay.  FOR VALUE RECEIVED, Dara Petroleum, Inc. dba Watt Ave Exxon ("Maker")
promises to pay to the order of BLX Capital, LLC f/k/a BLC CAPITAL CORP. (sometimes referred to as "Lender"
and also sometimes referred to herein together with all subsequent holders hereof as "Holder") at its offices at 645
Madison Avenue, 19th Floor, New York, NY 10022, or such other place as Holder may from time to time specify in
writing, the sum of EIGHT HUNDRED THOUSAND and NO/100 DOLLARS ($800,000.00) in legal and lawful
money of the United States of America, together with interest thereon from the date of funding hereunder until
maturity at the rate set out below.

2.   Loan Agreement.  This Note is entered into as part of a loan transaction between Maker and
Lender evidenced by instruments of even date including without limitation, that certain Loan Agreement, Deed(s) of
Trust, Security Agreement, Guarantee Agreements and Other Security Documents. The term Other Security
Documents as used in this Note shall mean all and any of the documents, other than this Note, the Deed(s) of Trust,
Security Agreement, Guarantee Agreement(s) and Loan Agreement now or hereafter executed by Maker and/or
others by or in favor of Lender, which wholly or partially secure, evidence or guarantee payment of this Note. The
Loan Agreement, Deed(s) of Trust, Security Agreement, Guarantee(s) and Other Security Documents are
collectively referred to herein as the "Loan Documents". Capitalized terms used herein and not otherwise defined
shall have the meanings assigned to them in the Loan Documents.

3.   Interest Rate.  THIS NOTE CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE
INTEREST RATE.  Interest shall be computed on the basis of a 360 day year. This Note shall bear interest at the
variable rate of Five Fifty and One Hundredth percent (5.50 %) per annum over the LIBOR Rate, adjusted
monthly (the "Interest Period"). The term "LIBOR Rate" shall mean, for any interest accrual period, the highest rate
per annum (rounded upwards, if necessary, to the nearest 1/100 of 1%) appearing on Telerate Page 3750 (or any
successor page) as the "One Month" or "Thirty Day" London interbank offered rate for Dollars at approximately
11:00 a.m. (London Time) on the first business day of the calendar month ("Change Date") for said interest accrual
period. If the rate described above does not appear on the Telerate System on any applicable interest determination
date, the LIBOR rate shall be the rate (rounded upward, if necessary, to the nearest 1/100 of 1%) appearing on
Reuters Screen LIBOR Page as the highest London interbank One Month or Thirty Day rate for deposits in Dollars
at approximately 11:00 a.m. (London Time) on the first business day of the calendar month for said interest accrual
period.

a.   Unavailability of Deposits or Inability to Ascertain Libor.  Notwithstanding any other
provision of this Note, if prior to the commencement of any Interest Period, the Lender shall determine that deposits
in the amount of the Loan scheduled to be outstanding during such Interest Period are not readily available to the
Lender in the relevant market or by reason of circumstances affecting the relevant market and/or adequate and
reasonable means do not exist for ascertaining Libor or Adjusted Libor, then the Lender shall promptly give notice
thereof to the undersigned and the obligations of the Lender to create or continue a Libor based interest rate in such
amount and for such Interest Period shall terminate, and the interest rate of this Note shall be converted into a
floating rate equal to the Prime Rate, adjusted as of each change of the Prime Rate, plus 2.75%; provided, however,
that (i) upon the occurrence and continuance of an Event of Default, this Note shall bear interest at a rate 4% in
excess of the aforesaid rate; and (ii) when deposits in such amount and for the Interest Period selected by the
undersigned shall again be readily available in the relevant market and adequate and reasonable means exist for
ascertaining Libor, the undersigned then shall, after due notice to Lender, have the option of reconverting the
method of computing the interest rate on this Note into a Libor based interest rate.

b.   Taxes and Increased Costs.  If the Lender shall determine in good faith that any change in
any applicable law, treaty, regulation or guideline (including, without limitation, Regulation D of the Board of
Governors of the Federal Reserve System) or any new law, treaty, regulation or guideline, or any interpretation of

1



EXHIBIT_____ B

any of the foregoing by any governmental authority charged with the administration thereof or any central bank or other fiscal, monetary or other authority having jurisdiction over the Lender or its lending branch, or the Libor based interest rate contemplated by this Agreement (whether or not having the force of law) shall:

      (i)      impose, increase, or deem applicable any reserve, special deposit or similar requirement against assets held by, or deposits in or for the account of, or loans by, or any other acquisition of funds or disbursements by, the Lender which is not in any instance already accounted for in computing the Libor based interest rate;

      (ii)     subject the Lender, the Loan or this Note to any tax (including, without limitation, any United Stated interest equalization tax or similar tax however named applicable to the acquisition or holding of debt obligations and any interest or penalties with respect thereto), duty, charge, stamp tax, fee, deduction or withholding in respect of the Loan or this Note, except such taxes as may be measured by the overall net income or gross receipts of the Lender or its lending branches, and imposed by the jurisdiction, or any political subdivision or taxing authority thereof, in which the Lender's principal executive office or its lending branch is located;

      (iii)    change the basis of taxation of payments of principal and interest due from the undersigned to the Lender hereunder or under this Note (other than by a change in taxation of the overall net income or gross receipts of the Lender); or

      (iv)    impose on the Lender any penalty with respect to the foregoing or any other condition regarding this Note, or the disbursement of the Loan;

and the Lender shall determine that the result of any of the foregoing is to increase the cost (whether by incurring a cost or adding to a cost) to the Lender of creating or maintaining the Loan or to reduce the amount of principal or interest received or receivable by the Lender (with benefit of, or credit for, any prorations, exemption, credits or other offsets available under any such laws, treaties, regulations, guidelines or interpretations thereof), then the interest rate of this Note shall be converted into a floating rate equal to the Prime Rate, adjusted as of each change of the Prime Rate, plus 2.75%; provided, however, that upon the occurrence and continuance of an Event of Default, this Note shall bear interest at a rate 4% in excess of the aforesaid rate. If the Lender makes such a determination, the Lender shall provide to the undersigned a certificate setting forth the computation of the increased cost or reduced amount as a result of any event mentioned herein in reasonable detail and such certificate shall be conclusive if reasonably determined.

      c.     In the event that Holder is unable to obtain any such quotations as provided above, it will be deemed that the LIBOR Rate cannot be determined. In the event that the LIBOR Rate cannot be determined for any Interest Period, then the interest rate of this Note shall be converted into a floating rate equal to the Prime Rate, adjusted as of each change of the Prime Rate, plus 2.75%; provided, however, that upon the occurrence and continuance of an Event of Default, this Note shall bear interest at a rate 4% in excess of the aforesaid rate. The term Prime Rate shall mean the prime rate in effect on the first business day of the calendar month for said interest accrual period as published in the Wall Street Journal on the next business day.

      4.     Principal and Interest Payments. This Note shall be repaid in monthly installments. One payment of interest only shall be due and payable on the date hereof, for the period commencing on the date hereof and ending on the date deemed to be the 30th day of the month in which the date of this Note occurs. The initial payment of interest only shall be computed by multiplying the disbursed amount by the initial interest rate (as set forth in the prior paragraph 3.); this figure will then be divided by 360 days; finally, this amount shall be multiplied by the



number of days from the disbursement date to the deemed 30th day of the month. Thereafter, this Note shall be repaid in combined monthly payments of principal and interest commencing on the first day of the second full calendar month after the date of this Note and continuing monthly and regularly thereafter on the first day of each successive calendar month until ___7-29-2029___, unless otherwise accelerated (the "Maturity Date"), when the entire principal balance remaining unpaid, along with all accrued and unpaid interest, shall be due and payable in full. All payments shall be applied first to the payment of all fees, expenses and other amounts due Holder (excluding principal and interest), then to interest accrued to the date of receipt of said installment, and the balance, if any, to the principal, provided, however, that after an Event of Default, payments will be applied to such of the obligations of Maker to Holder as Holder determines in its sole discretion. If and when the interest rate is adjusted each month, the remaining principal balance will be re-amortized and payments adjusted accordingly to insure the loan balance will be repaid within the remaining life of the loan.

The Initial monthly payments of principal and interest will be in the amount of $5,528.00 until adjusted pursuant to the terms hereof. MAKER ACKNOWLEDGES AND AGREES THAT IF THE INTEREST RATE CHANGES, AS DESCRIBED HEREINABOVE, THE AMOUNT OF MONTHLY PAYMENTS WILL CHANGE. INCREASES IN THE INTEREST RATE MAY RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE MAY LOWER PAYMENTS.

    5.    Change Date. On each Change Date, the Holder will calculate the new interest rate. If there is a change in the interest rate, the new rate will be effective as of the first day of the calendar month in which a Change Date occurs, and the Holder will determine the amount of monthly payments sufficient to pay the balance of the principal plus accrued interest at the new interest rate in substantially equal payments by the Maturity Date.

    6.    Funding Indemnity. In the event Lender shall incur any loss of profit, and any loss, cost or expense (including, without limitation, any loss, cost or expense incurred by reason of the liquidation or reemployment of deposits or other funds acquired or contracted to be acquired by Lender to fund or maintain the Loan, or the relending or reinvesting of such deposits or other funds or amounts paid or prepaid to Lender) as a result of:

        a.    any payment under this Note on a date other than the last day of the then applicable Interest Period for any reason, whether before or after the occurrence of any Event of Default, and whether or not such payment is required by any provisions of this Note; or

        b.    any failure by the undersigned to create, borrow, continue or effect by conversion the Loan on the date specified in a notice given pursuant to this Note;

then upon the demand of Lender, the undersigned shall pay to Lender such amount as will reimburse Lender for such loss, cost or expense. Without limitation of the foregoing, any prepayment of the Loan on a date other than the last day of the then applicable Interest Period shall be accompanied by an interest surcharge equal to the loss Lender shall suffer as a result of Libor as calculated on the date of such prepayment for the period of time equal to the Interest Period for such portion of the Loan being prepaid being less than Libor applicable to such portion being prepaid. Maker recognizes that Holder would incur substantial additional costs and expenses in the event of such a prepayment of the indebtedness evidenced by this Note and that the interest surcharge compensates Holder for such costs and expenses (including without limitation, the loss of Holder's investment opportunity during the period from the date of prepayment until the Maturity Date). If Lender requests such a reimbursement Lender shall provide the undersigned with a certificate setting forth the computation of the loss of profit and any loss, cost or expense giving rise to the request for reimbursement in reasonable detail and such certificate shall be conclusive if reasonably determined.

    7.    Late Charges. Maker shall pay upon demand, a "Late Charge" equal to five percent (5%) of the amount of any payment of principal, interest or both, or any other amount due under this Note or the Loan Documents, which is not paid within ten (10) days of the due date thereof. Late Charges are: (a) payable in addition to, and not in limitation of, the Default Rate, (b) intended to compensate Holder for administrative and processing



costs incident to late payments, (c) are not interest, and (d) shall not be subject to refund or rebate or credited against any other amount due

8.     Default Rate.  Holder shall have the option of imposing, and Maker shall pay upon demand, an interest rate ("Default Rate") which is equal to four percent (4%) per annum above the interest rate otherwise payable: (a) while any monetary default exists under this Note or the Loan Documents and is continuing, during that period between the due date and the date of payment; (b) following any Event of Default until the Event of Default is either cured or waived by Holder; (c) after judgment has been rendered on this Note or under any Loan Documents and (d) after the Maturity Date.

9.     Prepayment Consideration.  Maker agrees that in the event any portion of this Note is paid in whole or in part prior to maturity, so as to constitute a "Prepayment", consideration will be tendered with the prepayment to the Holder ("Prepayment Consideration") based upon the following schedule:

Five percent (5.0%) of the outstanding loan principal balance prepaid if prepaid during the first Loan Year.

Four percent (4.0%) of the outstanding loan principal balance prepaid if prepaid within the second Loan Year.

Three percent (3.0%) of the outstanding loan principal balance prepaid if prepaid within the third Loan Year.

Two percent (2.0%) of the outstanding loan principal balance prepaid if prepaid within the fourth Loan Year.

One percent (1.0%) of the outstanding loan principal balance prepaid if prepaid within the fifth Loan Year or thereafter.

a.     It is understood and agreed that a "Prepayment" shall be any principal payment made ahead of schedule which when aggregated with all other Prepayments, exceeds five percent (5.00%) of the then outstanding principal balance of this Note.  A "Loan Year" is defined as the twelve (12) month period commencing on the date of this Note or any consecutive twelve (12) month period during the term hereof.  No Prepayment Consideration will be due for involuntary prepayments resulting from the proceeds of any casualty loss or condemnation.

b.     Maker acknowledges that the Prepayment Consideration is consideration to Holder for the privilege of prepaying the indebtedness evidenced by this Note prior to maturity, and Maker recognizes that Holder would incur substantial additional costs and expenses in the event of a prepayment of the indebtedness evidenced by this Note and that the Prepayment Consideration compensates Holder for such costs and expenses (including without limitation, the loss of Holder's investment opportunity during the period from the date of prepayment until the Maturity Date).   Maker agrees that Holder shall not, as a condition to receiving the Prepayment Consideration, be obligated to actually reinvest the amount prepaid in any manner whatsoever.

10     Event of Default.  At the option of the holder, this Note and the indebtedness evidenced hereby, together with any monies agreed to be paid by Maker pursuant to this Note and the Loan Documents, shall become immediately due and payable without further notice or demand, and notwithstanding any prior waiver of any breach or default, or other indulgence, upon the occurrence at any time of any one or more of the following events, each of which shall be an "Event of Default" hereunder and under the Loan Documents:  (i) default continuing uncured beyond the applicable grace period, if any, set forth in the Loan Documents, in making any payment of interest, principal, other charges or payments due hereunder or under the Loan Documents; (ii) an Event of Default as defined in or as set forth in the Loan Documents; or (iii) an event which pursuant to any express provision of the Loan Documents, gives Lender the right to accelerate the Loan.

11.     No Waiver.  No delay or omission on the part of the Holder in exercising any right hereunder or any right under the Loan Documents or any instrument or agreement now or hereafter executed in connection

4



herewith, or any agreement or instrument which is given or may be given to secure the indebtedness evidenced hereby, or any other agreement now or hereafter executed in connection herewith or therewith shall operate as a waiver of any such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed to be a bar to or waiver of the same or of any other right on any future occasion.

12.   Waiver.  Maker and each and every party liable hereon or for the indebtedness evidenced hereby whether as maker, endorser, guarantor, surety or otherwise hereby:  (a) waives presentment, demand, protest, suretyship defenses and defenses in the nature thereof; (b) waives any defenses based upon and specifically assents to any and all extensions and postponements of the time for payment, changes in terms and conditions and all other indulgences and forbearances which may be granted by the holder to any party now or hereafter liable hereunder or for the indebtedness evidenced hereby; (c) agrees to any substitution, exchange, release, surrender or other delivery of any security or collateral now or hereafter held hereunder or in connection with any of the Loan Documents, and to the addition or release of any other party or person primarily or secondarily liable; (d) agrees that if any security or collateral given to secure this Note or the indebtedness evidenced hereby or to secure any of the obligations set forth or referred to any of the Loan Documents, shall be found to be unenforceable in full or to any extent, or if Lender or any other party shall fail to duly perfect or protect such collateral, the same shall not relieve or release any party liable hereon or thereon nor vitiate any other security or collateral given for any obligations evidenced hereby or thereby; (e) agrees to pay all reasonable costs and expenses incurred by Lender or any other holder of this Note in connection with the indebtedness evidenced hereby, including, without limitation, all reasonable attorneys' fees and costs, for the implementation of the Loan, the collection of the indebtedness evidenced hereby and the enforcement of rights and remedies hereunder or under the Loan Documents, whether or not suit is instituted; (f) waives the right to assert, in any action brought by Lender or Holder for payment of this Note or to enforce any obligations under this Note and/or the Loan Documents, any right of recission, set-off, counterclaim or defense with respect to payment of this Note and/or enforcement of any obligations sought to be enforced under the Loan Documents and (g) consents to all of the terms and conditions contained in this Note and the Loan Documents.

13.   Usury/Stated Rate.  Maker and Lender intend to strictly comply with all applicable federal and New York laws, including applicable usury laws (or the usury laws of any jurisdiction whose usury laws are deemed to apply to the Note or any other Loan Document despite the intention and desire of the parties to apply the usury laws of the State of New York).  Accordingly, the provisions of this paragraph shall govern and control over every other provision of this Note or any other Loan Document which conflicts or is inconsistent with this Section, even if such provision declares that it controls.  As used in this paragraph, the term "interest" includes the aggregate of all charges, fees, benefits or other compensation which constitute interest under applicable law, provided that, to the maximum extent permitted by applicable law, (a) any non-principal payment shall be characterized as an expense or as compensation for something other than the use, forbearance or detention of money and not as interest, and (b) all interest at any time contracted for, reserved, charged or received shall be amortized, prorated, allocated and spread, in equal parts during the full term of the obligations.  In no event shall Maker or any other person be obligated to pay, or Holder have any right or privilege to reserve, receive or retain, (a) any interest in excess of the maximum amount of non-usurious interest permitted under the laws of the State of New York or the applicable laws (if any) of the United States or of any other state, or (b) total interest in excess of the amount which Holder could lawfully have contracted for, reserved, received, retained or charged had the interest been calculated for the full term of the obligations.  On each day, if any, that the interest rate (the "Stated Rate") called for under this Note or any other Loan Document exceeds the maximum non-usurious rate, the rate at which interest shall accrue shall automatically be fixed by operation of this sentence at the maximum non-usurious rate for that day.  Thereafter, interest shall accrue at the Stated Rate unless and until the Stated Rate again exceeds the maximum non-usurious rate, in which case, the provisions of the immediately preceding sentence shall again automatically operate to limit the interest accrual rate to the maximum non-usurious rate.  The daily interest rates to be used in calculating interest at the maximum non-usurious rate shall be determined by dividing the applicable maximum non-usurious rate by the number of days in the calendar year for which such calculation is being made.  None of the terms and provisions contained in this Note or in any other Loan Document which directly or indirectly relate to interest shall ever be construed without reference to this paragraph, or be construed to create a contract to pay for the use, forbearance or detention of money at an interest rate in excess of the maximum non-usurious rate.  If the term of any obligation is shortened by reason of acceleration of maturity as a result of any Default or by any other cause, or by reason of any required or permitted prepayment, and if for that (or any other) reason Holder at any time, including but not limited to, the stated maturity, is owed or receives (and/or has received) interest in excess of interest calculated at the maximum non-usurious rate, then and in any such event all of any such excess interest shall be cancelled



automatically as of the date of such acceleration, prepayment or other event which produces the excess, and, if such excess interest has been paid to Holder, it shall be credited pro tanto against the then-outstanding principal balance of Maker's obligations to Holder, effective as of the date or dates when the event occurs which causes it to be excess interest, until such excess is exhausted or all of such principal has been fully paid and satisfied, whichever occurs first, and any remaining balance of such excess shall be promptly refunded to its payor.

14.   Replacement Note.  Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of this Note or any Loan Document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon surrender and cancellation of such Note or other Loan Document, Maker will issue, in lieu thereof, a replacement Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

15.   Assignment.  Lender shall have the unrestricted right at any time or from time to time and without Maker's or Guarantor's consent, to assign all or any portion of its rights and obligations hereunder to one or more lenders or purchasers (each, an "Assignee"), and Maker and Guarantor agrees that it shall execute, or cause to be executed, such documents, including without limitation, the delivery of an estoppel certificate and such other documents as Lender shall deem necessary to effect the foregoing.

16.   Jurisdiction/Venue.  It is understood and agreed that this Note and all of the Loan Documents were negotiated and have been or will be delivered to Lender in the State of New York, which State the parties agree has a substantial relationship to the parties and to the underlying transactions embodied by this Note and the Loan Documents. Maker agrees to furnish to Lender at Lender's office in New York, N.Y., all further instruments, certifications and documents to be furnished hereunder.  The parties also agree that if collateral is pledged to secure the debt evidenced by this Note, that the state or states in which such collateral is located each have a substantial relationship to the parties and to the underlying transaction embodied by this Note and the Loan Documents.

17.   Governing Law.  MAKER AGREES THAT THE HOLDER OF THIS NOTE SHALL HAVE THE OPTION BY WHICH STATE LAWS THIS NOTE SHALL BE GOVERNED AND CONSTRUED: (A)  THE LAWS OF THE STATE OF NEW YORK; OR (B) IF COLLATERAL HAS BEEN PLEDGED TO SECURE THE DEBT EVIDENCED BY THIS NOTE, THEN BY THE LAWS OF THE STATE OR STATES WHERE THE COLLATERAL IS LOCATED, AT HOLDER'S OPTION.  THIS CHOICE OF STATE LAWS IS EXCLUSIVE TO THE HOLDER OF THIS NOTE.  MAKER SHALL NOT HAVE ANY OPTION TO CHOOSE THE LAWS BY WHICH THIS NOTE SHALL BE GOVERNED.  MAKER AGREES THAT MAKER, THIS NOTE AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH, REGARDLESS OF THE CHOICE OF LAW MADE BY HOLDER, SHALL BE GOVERNED BY THE PROVISIONS OF THE CREDIT AGREEMENTS ACT (AS ENACTED BY AND INTERPRETED IN THE STATE OF ILLINOIS)(815 ILCS 160 ET SEQ.)  AND AS THAT ACT MAY BE AMENDED FROM TIME TO TIME.  MAKER AND GUARANTORS HEREBY CONSENT TO THE EXERCISE OF JURISDICTION OVER IT BY ANY FEDERAL COURT SITTING IN NEW YORK OR ANY NEW YORK COURT SELECTED BY HOLDER, FOR THE PURPOSES OF ANY AND ALL LEGAL PROCEEDINGS ARISING OUT OF OR RELATING TO THE NOTE, THE LOAN AGREEMENT AND ALL OTHER LOAN DOCUMENTS.  MAKER AND GUARANTORS IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH PROCEEDING BROUGHT IN ANY SUCH COURT, ANY CLAIM BASED ON THE CONSOLIDATION OF PROCEEDINGS IN SUCH COURTS IN WHICH PROPER VENUE MAY LIE IN DIVERGENT JURISDICTIONS, AND ANY CLAIM THAT ANY SUCH PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  MAKER AND GUARANTORS HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY.

18   CONFESSION OF JUDGMENT.  The undersigned hereby irrevocably authorizes and empowers any attorney-at-law to appear in any of any court of record and to confess judgment against the undersigned for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees of fifteen percent (15%) of the total indebtedness or Five Thousand Dollars ($5,000.00), whichever is the larger amount, plus costs of suit, and to release all errors, and

6



waive all rights of appeal. The undersigned waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void; but the power will continue undiminished and may be exercised from time to time as lender may elect until all amounts owing on this Note have been paid in full. The undersigned hereby waives and releases any and all claims or causes of action which the undersigned might have against any attorney acting under the terms of authority which the undersigned has granted herein arising out of or connected with the confession of judgment hereunder.

19.    Holder's Right to Convey   This Note shall be binding upon Maker and its successors and assigns and shall inure to the benefit of Holder and its successors and assigns. Holder has full right and authority to sell, assign, pledge, hypothecate and transfer all or any portion of its rights and/or obligations under this Note and the Loan Documents; the Note and the Loan Documents and all information now or hereafter in its possession relating to the Maker and any or all Guarantors (all rights of privacy hereby being waived), and to retain any compensation received by Holder in connection with any such transaction.

20.    Unenforceability of Process   The invalidity or unenforceability of any provision hereof or of the Loan Documents, or of any other instrument, agreement or document now or hereafter executed in connection with the loan made pursuant hereto and thereto shall not impair or vitiate any other provision of any of such instruments, agreements and documents, all of which provisions shall be enforceable to the fullest extent now or hereafter permitted by law.

21.    Notices.  Any notices given with respect to this Note shall be given in the manner provided for in the Loan Documents.

22.    Extensions, Modifications and Releases. From time to time, Lender may, at its option, extend the time of payment of the outstanding principal sum, accept a renewal of this Note, modify the terms and time of payment of the outstanding principal sum or interest due, join in any extension or subordination agreement, release any security for the Note, take or release other or additional security, and agree in writing with Maker to modify the rate of interest of this Note or change the amount of the monthly payments payable under this Note, (a) without affecting the obligation of Maker to pay the outstanding principal balance of this Note and observe its covenants, (b) without affecting the guaranty of any person, corporation, partnership or other entity for payment of the outstanding principal sum, (c) without giving notice to or obtaining the consent of Maker, any guarantors or the successors or assigns of guarantors, and (d) without liability on the part of Lender.

Executed as of the date first written above.

WITNESS:

Name:

MAKER: Dara Petroleum, Inc. dba Watt Ave Exxon

By:
Name: Narges Eghtesadi
Title: President

Attest:
Name: Narges Eghtesadi
Title: Secretary

[CORPORATE SEAL]

STATE OF California

COUNTY OF Sacramento

7

The foregoing instrument was acknowledged before me this _27_ day of _July_, 20_04_, by _NARGES EGHTESADI_, _President_ of _DARA Petroleum Ink_ a _California_ corporation.

Witness my hand and official seal.

_____
Notary Public

My commission expires: _4/23/06_

M. A. BENNETT
Commission # 1353142
Notary Public - California
Sacramento County
My Comm. Expires Apr 23, 2006

8

WALLACE EXTON

BLCC2004/072985

Sacramento County Recording
Mark Norris, Clerk/Recorder
BOOK **20040802** PAGE **0627**
Monday, AUG 02, 2004   9:21:45 AM
Ttl Pd   $117.00       Nbr-0002967938

DLM/17/5-25

WHEN RECORDED MAIL TO:

Cheryl Surdick
BLX Capital, LLC
700 North Pearl St., Suite 1850
Dallas, Texas 75201-7724

# DEED OF TRUST, SECURITY AGREEMENT,
## FIXTURE FILING AND ASSIGNMENT OF LEASES AND RENTS

FROM

DARA PETROLEUM, INC.
TRUSTOR

TO

FIDELITY NATIONAL TITLE COMPANY
TRUSTEE

FOR THE BENEFIT OF

BLX CAPITAL, LLC
BENEFICIARY

i

EXHIBIT  C

J0025888 01

## DEED OF TRUST, SECURITY AGREEMENT,
## FIXTURE FILING AND ASSIGNMENT OF LEASES AND RENTS

THIS DEED OF TRUST ("Deed of Trust") is made as of _April, 29_, 2004 by DARA PETROLEUM, INC. dba WATT AVE EXXON, having an address of 3449 El Camino Avenue, Sacramento, California 95821 ("Trustor") to FIDELITY NATIONAL TITLE CO., whose address is 2180 Harvard Street, Suite 310, Sacramento, California 95815, as Trustee ("Trustee") and pertains to the real estate described in Exhibit "A" attached hereto and made a part hereof. The beneficiary of this Deed of Trust is BLX CAPITAL, LLC f/k/a BLC CAPITAL CORP. ("Beneficiary") with a mailing address 700 North Pearl St., Suite 1850, Dallas, Texas 75201-7724.

## I. DEFINITIONS

1.01 **Specific Terms.** In addition to terms defined elsewhere in this Deed of Trust, when used herein the following terms shall have the following meanings:

(a) "Business Day" shall mean any day other than a Saturday, Sunday, federal holiday or other day on which the New York Stock Exchange is regularly closed.

(b) "Documents" shall mean collectively the Loan Agreement, the Note, the Guaranties and any agreements documents, or instruments referenced in or contemplated by Loan Agreement or the Note.

(c) "Guaranty" means that certain Unconditional Guaranty executed by Kuldip S. Cheema and Ranbir S. Mann securing the Note and dated as of the date of this Deed of Trust, as the same may from time to time be or have been amended, restated, extended or supplemented.

(d) "Loan Agreement" shall mean that certain Letter Loan Agreement by and between Trustor and Beneficiary, dated as of the date of this Deed of Trust, as the same may from time to time be or have been amended, restated, extended or supplemented.

(e) "Note" shall mean that certain Adjustable Rate Promissory Note in the principal amount of $800,000.00 dated as of the date of this Deed of Trust given by Trustor to Beneficiary, as may from time to time be amended, restated, or extended.

(f) "Obligations" shall mean all indebtedness, obligations and liabilities of Trustor and any guarantor to Beneficiary relating to the Note and any other Document, howsoever created, arising or evidenced, whether now existing or hereafter arising, whether direct or indirect, absolute or contingent, due or to become due, primary or secondary, or joint and several, and without limiting the foregoing, shall include all present and future liabilities, indebtedness and obligations of Trustor under the Note.

(g) "Other Property" shall have the meaning set forth in Section 2.01 hereof.

30025353 01

(h) "Property" shall mean the Real Property and the Other Property, collectively.

(i) "Real Property" shall mean the real property commonly known as 3449 El Camino Ave., Sacramento, California 95821, and more fully described in Exhibit "A" attached hereto and made a part hereof, and all improvements thereon.

## II. THE GRANT: ASSIGNMENT OF RENTS AND LEASES

2.01 Grant. In order to induce Beneficiary to extend or continue to extend credit to Trustor, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to secure the payment and performance of the Obligations and the covenants and agreements herein contained, Trustor does hereby irrevocably bargain, sell, grant, transfer, assign and convey to Trustee, in trust, with power of sale and right of entry and possession, all of Trustor's estate, right, title and interest in, and grant to Beneficiary a security interest in and to the Real Property, together with the following described property (the "Other Property"):

(a) All building and other improvements of every kind and description now or hereafter erected or placed on the Real Property, and all materials intended for construction, reconstruction, alternation and repair of such improvements now or hereafter erected thereon, all of which materials shall be deemed to be included as part of the Other Property immediately upon the delivery thereof to the Real Property;

(b) All right, title and interest of Trustor, including any after-acquired title or reversion, in and to the rights-of-ways, streets, avenues, sidewalks, and alley adjoining the Real Property;

(c) Each and all of the tenements, hereditaments, easements, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties and privileges of the Real Property in any way now or hereafter appertaining thereto, including homestead and any other claim at law or in equity, as well as any after acquired title, franchise or license and the reversions and remainders thereof;

(d) All leases, rents, issues, deposits and profits accruing and to accrue from the Real Property and the avails thereof;

(e) All of Trustor's rights and claims, in and to all accounts, accounts receivable, security deposits, insurance premium rebates, writings evidencing a monetary obligation, contract rights and other creditor's interests existing in favor of, owned or acquired by Trustor with respect to the Real Property; all contracts relating to the use, operation, occupation, maintenance, repair or construction of the Real Property; all permits, licenses, franchises benefiting the Real Property, together with the benefit of any deposits or payments now or hereafter made by Trustor or on its behalf in connection with the foregoing; and all books and records, including but not limited to all lease documents, relating to the Real Property or Other Property;

2

(f) All machinery, equipment, fittings, apparatus, appliances, furniture, furnishings, tools, fixtures (including, without limitation, all heating, air conditioning, ventilating, waste disposal, sprinkler and fire and theft protection equipment, and all plumbing, lighting, communications and elevator fixtures) and other property of every kind and description now or hereafter owned by Trustor and located upon or in, and used or useful connection with, the operation, maintenance or occupancy of the Real Property or the other Property, and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are attached to such improvements; and

(g) All judgments, award of damages or settlements related to and all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including but not limited to proceeds or insurance and/or condemnation, and all products, additions, accessions, attachments, parts, replacements and substitutes therefor.

To Have and to Hold the same unto Trustee and Trustee's successors and assigns forever, for the purposes and uses hereinafter set forth.

2.02  **Special Terms Concerning This Deed of Trust.**  All of the Other Property is pledged hereunder primarily, on a parity with the Real Property, and not secondarily.  This Deed of Trust is given as equal security for all of the Obligations without preference or priority of any part of the Obligations for any reason whatsoever.

The Note this Deed of Trust secures contemplates a variable rate of interest.

2.03  **Other Property.**  Trustor acknowledges and agrees that all of the Other Property now and hereafter owned by Trustor and placed by Trustor on the Real Property or used in connection with the operation or maintenance thereof shall, so far as permitted by law, be deemed for the purposes of this Deed of Trust to be part of the real estate constituting and located on the Real Property and covered by this Deed of Trust, and as to any of the Other Property which is not part of such real estate or does not constitute a "fixture" as such term is defined in the Uniform Commercial Code, as enacted in the State in which the Property is located, this Deed of Trust shall be deemed to be, as well, a security agreement under such Uniform Commercial Code for the purpose of creating hereby a security interest in such property, which Trustor hereby grants to Beneficiary as "secured party," as such term is defined in such Code.  Upon its recording in the real property records of Sacramento County, California, this Deed of Trust shall be effective as a fixture filing.  In addition, a carbon, photographic or other reproduced copy of this Deed of Trust and/or any financing statement relating hereto shall be sufficient for filing and/or recording as a financing statement.  The filing of any other financing statement relating to any personal property, rights or interests described herein shall not be construed to diminish any right or priority hereunder.

2.04  **Other Amounts Secured.**  At all times, this Deed of Trust secures in addition to the Note all other Obligations and other amounts provided for herein.

2.05  **Assignment of Leases and Rents.**  (a)  Trustor hereby assigns, transfers, and sets over unto Beneficiary all the lease, rents, fees or payments now or hereafter due, under or by

3

virtue of any lease, whether oral or written, or any letting of, or any agreement for the use or occupancy of any part of the Property, whether heretofore, now or hereafter agreed to, and all leases and modifications thereof, now existing or hereafter made relating to the Property (the "Rents and Profits"); together with the right to let and relet the Property or any part thereof, in Beneficiary's sole discretion, and to do anything with respect to the Property as Trustor might do. Any proceeds received hereunder may be applied by Beneficiary as otherwise provided in Section 4.08 of this Deed of Trust. Trustor hereby directs all tenants, lessees and occupants of the Property to pay all rental payments or fees for use and occupancy of the Property in accordance herewith. Subject to the provisions of the immediately following sentence, Beneficiary agrees not to exercise its rights granted in this Section unless and until an Event of Default, as hereafter defined, shall have occurred and is continuing. Trustor shall execute, acknowledge, and deliver to Beneficiary, within 5 Business Days after any request by Beneficiary, such assignment of leases and rent documents as may be required by Beneficiary, in form and substance satisfactory to Beneficiary. Trustor further agrees to pay to Beneficiary all costs and expenses incurred by Beneficiary in connection with the preparation, execution and recording of any such documents. The Rents and Profits are hereby absolutely and unconditionally assigned, transferred, conveyed and set over to Beneficiary to be applied by it in payment of the Obligations. Nothing contained in this Section or elsewhere in this Deed of Trust shall be construed to make Beneficiary a mortgage in possession unless and until Beneficiary actually takes possession of the Property either in person or through an agent or receiver.

(b) Trustor will not (i) execute an assignment of any of the rights, title or interest in the Rents and Profits, or (ii) except where the lessee is in default thereunder, terminate or consent to the cancellation or surrender of any lease of the Property, or of any part thereof, now existing or hereafter to be made, or (iii) modify any lease of the Property or any part thereof so as to shorten the unexpired term thereof or so as to decrease the amount of the rent payable thereunder, or (iv) accept prepayments of any installments of rent to become due under any of said leases in excess of one month's rental or prepayments in the nature of security for the performance of the lessee's obligations thereunder in excess of an amount equal to one month's rental, or (v) in any other manner impair the value of the Property or the security of this Deed of Trust.

(c) Trustor will not execute any lease of all or a substantial portion of the Property, except for actual occupancy by the lessee thereunder, and will at all times promptly and faithfully perform, or cause to be performed, all of the covenants, conditions and agreements contained in all leases of the Property now or hereafter existing, on the part of the lessor thereunder to be kept and performed.

(d) Trustor shall furnish to Beneficiary, within 30 days after a request by Beneficiary to do so, a written statement containing the names of all lessees of the Property, the terms of their respective leases, the spaces occupied and the rentals payable thereunder and a copy of each such lease.

(e) To the extent not provided by applicable law, each lease of the Property or any part thereof, shall provide that, in the event of the enforcement by Trustee or Beneficiary of the

4

remedies provided for by law or by this Deed of Trust, the lessee thereunder will, if requested by Beneficiary or by any person succeeding to the interest of Trustor as the result of said enforcement, automatically become the lessee of any such successor in interest, without any change in the terms or other provisions of the respective lease; provided, however, that said successor in interest shall not be bound by (i) any payment of rent or additional rent for more than one month in advance, except prepayments in the nature of security for the performance by said lessee of its obligations under said lease not in excess of an amount equal to one month's rent, or (ii) any amendment or modification in the lease made without the consent of Beneficiary, or any successor in interest. Each lease shall also provide that, upon request by said successor in interest, the lessee shall execute and deliver an instrument or instruments confirming its attornment.

## III. GENERAL AGREEMENTS

3.01   **Payment of Obligations.**   Trustor shall pay or cause the payment on or before the applicable due date of each installment payable under the Note and all other Obligations, and Trustor shall timely perform or cause the performance of all of its other Obligations.

3.02   **Property Taxes.**   Trustor shall pay on or before the applicable due date, all taxes, assessments and other charges that may be asserted against the Property or any part thereof or interest therein. Trustor shall furnish to Beneficiary duplicate receipts or other evidence of payment of such taxes, assessments and other charges within 30 days after payment thereof.

3.03   **Right to Perform Obligations.**   If Trustor shall fail to do any act or thing which it has covenanted to do under the Documents or any representation or warranty on the part of Trustor contained in the Documents shall be breached, Beneficiary may, in its sole discretion, after 5 Business Days written notice is sent to Trustor (or such lessor notice, including no notice, as is reasonable under the circumstances), do the same or cause it to be done or remedy any such breach, and may expend its funds for such purpose. Any and all reasonable amounts so expended by Beneficiary shall be payable to Beneficiary by Trustor on demand, within interest at the "Interest Rate" (as that term is defined in the Note) during the period from and including the date funds are so expended by Beneficiary to the date of repayment, and all such amounts shall be additional Obligations.   The payment or performance by Beneficiary of any of Trustor's obligations hereunder shall not relieve Trustor of said obligations or of the consequences of having failed to pay or perform the same, and shall not waive or be deemed a cure of any Event of Default.

3.04 Insurance.

(a) Hazard. Trustor shall keep the improvements now existing or hereafter erected on the Real Property insured under a replacement cost form of insurance policy against loss or damage resulting from such hazards as may be reasonably required by Beneficiary (including, but not limited to, flood insurance in an amount necessary to comply with applicable law), and shall pay promptly, when due, all premiums on such insurance. Without limiting the foregoing, during construction of any improvements on the Real Property, Trustor shall maintain "Builders Risk" insurance with extended coverage over fire and other casualties using completed values for the amount of the full insurable value for all such improvements under construction at any time on the Real Property, including equipment and materials delivered to the Real Property for incorporation into the Property. All such insurance shall be in form and with insurers approved in writing by Beneficiary, shall name Beneficiary as an additional insured and shall have attached thereto, (i) standard non-contributing Deed of Trust clauses entitling Beneficiary, as its interest may appear, to collect any and all proceeds payable under such insurance, and (ii) standard waiver of subrogation endorsements, so long as such subrogation endorsements can be obtained without material additional cost to Trustor.

In the event of any casualty loss, Trustor shall give immediate notice thereof to Beneficiary. Trustor hereby authorizes Beneficiary, at Beneficiary's option, to adjust and compromise any such losses under any of the aforesaid insurance and, after deducting any of Beneficiary's reasonable costs of collection, to use, apply, or disburse the balance of such insurance proceeds, (i) toward repairing, restoring and rebuilding the aforesaid improvements, provided such repair, restoration or rebuilding is economically feasible and the security of this Deed of Trust is not thereby impaired, in which event Beneficiary shall not be obligated to see to the proper applicable thereof nor shall the amount so released for such purposes be deemed a payment on the indebtedness secured thereby; or (ii) as a credit upon any portion of the indebtedness secured hereby, with the excess, if any, paid to Trustor; provided however, that so long as no Event of Default shall then exist and no Event of Default shall exist at any time during the period of any repair, restoration and/or rebuilding of the aforesaid improvements, and subject to the provisions of the immediately following Section, upon Trustor's written request to Beneficiary made on or before the disbursement of such insurance proceeds to Beneficiary, such insurance proceeds shall be used to repair, restore and/or rebuild the aforesaid improvements. Unless Trustor and Beneficiary otherwise agree in writing, any such application of proceeds to the sums secured by this Deed of Trust shall not extend or postpone the due date of any portion of the indebtedness secured hereby or change the amount of any installment due on such indebtedness.

To the extent any such insurance proceeds are used toward repairing, restoring and rebuilding such improvements, such proceeds shall be made available, from time to time, upon Beneficiary being furnished with satisfactory evidence of the estimated cost of such repairs, restoration and rebuilding and with such architect's certificates, waivers of lien, certificates, contractor's sworn statements and other evidence of the estimated cost thereof and of payments as Beneficiary may reasonably require and approve, and if the estimated cost of the work exceeds 5% of the original principal amount of the indebtedness secured hereby, with

6

all plans and specifications for such plans, restoration and rebuilding as Beneficiary may reasonably require and approve. Payments made prior to the final completion of the work shall not exceed 90% of the value of the work performed, from time to time, and at all times the undisbursed balance of such proceeds remaining in the hands of Beneficiary shall be at least sufficient to pay for the cost of completion of the work, free and clear of any liens. In the event of foreclosure of this Deed of Trust or other transfer of title to the Real Property in extinguishment of the indebtedness secured hereby, all right, title and interest of Trustor in and to any such insurance policies then in force, and any claims or proceeds thereunder, shall pass to Beneficiary or any purchaser or grantee therefrom. Beneficiary may, at any time and in its sole discretion, procure and substitute for any and all of such insurance policies, such other policies of insurance, in such amounts, and carried in such companies, as it may select.

(b)  Liability.  Trustor shall carry and maintain such comprehensive public liability and worker's compensation insurance as may be reasonably required from time to time by Beneficiary in form and of content, in amounts, and with companies approved in writing by Beneficiary; provided, however, that the amounts of liability coverage shall not be less than One Million and no/100 Dollars ($1,000,000.00) single limit. Certificates of such insurance, premiums prepaid, shall be deposited with Beneficiary and shall contain provision for not less than 30 days' notice to Beneficiary prior to any cancellation thereof.

(c)  Proof of Insurance.  All insurance shall be in amount, form and content and with insurers approved in writing by Beneficiary and shall name Beneficiary as an additional insured. Trustor shall deliver to Beneficiary a copy or certificate of each policy or policies, with evidence of premiums prepaid, prior to any expiration or cancellation, each renewal or replacement thereof. Each policy shall contain provision for not less than 30 days' notice to Beneficiary prior to any cancellation thereof.

3.05   Condemnation and Eminent Domain.   Trustor hereby unconditionally and irrevocably waives all rights of a property owner under Section 1265.255(a) of the California Code of Civil Procedure or any successor statute providing for the allocation of condemnation proceeds between a property owner and a lien holder. Any and all awards heretofore or hereafter made or to be made to the present, or any subsequent owner of the Property, by any governmental or other lawful authority for the taking, by condemnation or eminent domain, of all or any part of the Property or any easement thereon or appurtenance thereof, are hereby assigned by Trustor to Trustee and Beneficiary, which awards Trustee and Beneficiary are hereby authorized to collect and receive from the condemnation authorities, and Trustee and Beneficiary are hereby authorized to give appropriate receipts therefor. Trustor shall give Beneficiary immediate notice of the actual or threatened commencement of any condemnation or eminent domain proceedings affecting all or any part of the Real Property, or any easement thereon or appurtenance thereof (including severance of, consequential damage to, or change in grade of streets), and shall deliver to Trustee and Beneficiary copies of any and all papers served in connection with any such proceedings. Trustor further agrees to make, execute and deliver to Beneficiary, at any time upon request, free, clear and discharged of any encumbrance of any kind whatsoever, any and all further assignments and other instruments deemed necessary by either Trustee or Beneficiary for the purpose of validly and sufficiently assigning all awards and other

7

compensation heretofore and hereafter made to Trustor for any taking, either permanent or temporary, under any such proceeding. In the event of any damage or taking by eminent domain of less than substantially all of the Property, Beneficiary shall make available the proceeds of any award received in compensation for any such damage or taking, less Beneficiary's reasonable costs of collection, for the purpose of rebuilding and restoring the Property, subject to the same terms and conditions as set forth in Section 3.04(a). If any of the foregoing conditions are not or cannot be satisfied, then Beneficiary may use or apply the award to the Obligations.

3.06  Use, Maintenance and Repair. (a) Trustor shall not desert or abandon the Property or, without the prior written consent of Beneficiary, cause or permit a material change in the use of the Property.

(b)  Trustor shall at its expense maintain the Property in good, safe and insurable condition and repair, and in compliance with all applicable laws and other governmental requirements. Trustor further agrees not to permit, commit or suffer any waste, impairment or deterioration of the Property or any part thereof, to effect such repairs as Beneficiary may reasonably require, and, from time to time, to make all necessary and proper replacements thereof and additions thereto so that all of the Property will, at all times, be in good condition and repair, and fit for the purpose for which originally erected or installed.

(c)  Trustor shall not, without the prior written consent of Beneficiary, cause or permit the demolition, removal, construction, restoration, addition or material alteration to the Property or any portion thereof, except that without such consent, (i) Trustor may in the ordinary course of its business or operations replace any worn, broken, unfit or obsolete personal property or fixtures included in the Other Property with like property which is new or substantially new and free of all liens other than the lien of the Deed of Trust, and (ii) Trustor may make non-structural interior alterations having an aggregate cost in any calendar year of not in excess of $100,000.00.

3.07.  Liens and Transfers. Except upon the prior written consent of Beneficiary, Trustor shall not sell, transfer, convey, assign, hypothecate, encumber or otherwise transfer the title to or any beneficial interest in all or any portion of the Property, whether by operation of law, voluntarily, or otherwise, and, if title to the Property or any part thereof is now or shall hereafter becomes vested in a trustee, including any sale, transfer, assignment, hypothecation or other transfer of the beneficial interest or power of direction therein, nor shall Trustor contract to do any of the foregoing, or create, suffer or permit to be created or filed against the Property or any part thereof hereafter any Deed of Trust lien or other lien upon the Property other than the lien of this Deed of Trust; provided, however, that without such consent Trustor may (i) permit the existence of a lien arising from any work performed, materials furnished, or other obligations incurred by Trustor but only if not later than 5 Business Days after the filing thereof, Trustor shall have furnished to Beneficiary security and indemnification satisfactory to Beneficiary for the final payment and discharge thereof, and (ii) Trustor may replace worn, broken, unfit or obsolete property to the extent permitted by Section 3.06 hereof.

3.08  Stamp Taxes.  If at any time the United States government, or any federal, state, county or municipal governmental subdivision, requires or imposes documentary stamps, levies, or any tax on this Deed of Trust or on the Obligations, then Trustor shall pay the same on or before the applicable due date, or to the extent Beneficiary has or will make any payment related thereto, then to the greatest extent permitted by law such indebtedness shall be and become due and payable by Trustor to Beneficiary within 5 Business Days after the receipt by Trustor of written notice of such indebtedness from Beneficiary.

3.09  Change in Laws.  In the event of the enactment, after the date of this Deed of Trust, of any law of the state in which the Real Property is located imposing upon Beneficiary the payment of all or any part of the taxes, assessments, charges, or liens hereby required to be paid by Trustor, or changing in any ways the laws relating to the taxation of mortgages or debts secured by mortgages or Trustor's interest in the Property, or the manner of collection of taxes, so as to affect this Deed of Trust or the indebtedness secured hereby or the holder thereof, then Trustor, upon demand by Beneficiary, shall pay such taxes, assessments, charges or liens or reimburse Beneficiary therefor; provided, however, that if, in the opinion of counsel for Beneficiary, it might be unlawful to require Trustor to make such payment or the making of such payment might result in the imposition of interest beyond the maximum amount permitted by law, then Beneficiary may elect, by notice in writing given to Trustor, to declare all the indebtedness secured hereby to become due and payable within 60 days after the giving of such notice; provided, further, that, nothing contained in this Section shall be construed as obligating Trustor to pay any portion of Beneficiary's federal income tax.

3.10  Inspection of Property.  Trustor shall permit Beneficiary and its representatives and agents to inspect the Property from time to time during normal business hours and as frequently as Beneficiary considers reasonable.

3.11  Environmental Conditions.  (a)  Trustor hereby represents and warrants to Trustee and Beneficiary that no Hazardous Substances (as defined in Section 3.11(b)) are presently stored or otherwise located on the Property and, to the best of its knowledge, on any adjacent parcel of real estate, except in accordance with all applicable Hazardous Substances Laws (as defined in Section 3.11(b)).

(b)  Neither Trustor nor any other persons from time to time present on the Real Property shall use, generate, manufacture, store, release, dispose of, or permit or suffer to exist in, on, under or about the Real Property or transport to or from the Real Property any flammable materials, explosives, petroleum products (including crude oil), radioactive materials, hazardous wastes, toxic substances or related materials, including, without limitation, any asbestos, asbestos containing materials, PCB's or any substances defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," or "toxic substances," (collectively, the "Hazardous Substances"), under Federal, state or local law, ordinance or regulation dealing with or otherwise pertaining to toxic or hazardous substances, wastes or materials or to occupational safety (collectively the "Hazardous Substances Laws"). Notwithstanding the foregoing, Trustor may bring necessary quantities of Hazardous Substances onto the Real Property in the ordinary course of the operation of the

9

Property and for their customary and ordinary application, storage and use for landscape purposes, janitorial services and pest control purposes.

Upon the written request of Beneficiary to Trustor, Beneficiary's attorneys, employees, agents or other persons or entities designated by Beneficiary shall, from time to time, and at any reasonable time, be allowed to enter upon the Real Property and conduct environmental examinations and environmental audits of the Real Property, all in form, manner and type as Beneficiary may then require in its sole discretion. Trustor shall fully cooperate and make the Real Property available to Beneficiary at such time as Beneficiary may reasonably request in order to conduct such environmental examinations and environmental audits.

(c)   Trustor hereby agrees to give immediate notice of any violation of any Hazardous Substances Laws affecting the Real Property.  Trustor convenants and agrees to promptly contain and clean up any and all releases of Hazardous Substances on the Real Property. Notwithstanding any language or provision of this Deed of Trust to the contrary, Trustor hereby unconditionally gives Beneficiary the right, but not the obligation, and Beneficiary does not so obligate itself, to undertake to contain and clean up releases of Hazardous Substances on the Real Property. Trustor hereby indemnifies and saves Beneficiary harmless of and from any and all loss, costs (including reasonable attorneys' fees), liability and damage whatsoever incurred by Beneficiary, by reason of any violation of any applicable Hazardous Substances Laws or by reason of the imposition of any governmental lien for the recovery of environmental clean-up costs related to the Real Property expended by reason of such violation; provided that, to the extent that Beneficiary is strictly liable under any Hazardous Substances Laws, Trustor's obligation to Beneficiary under this indemnity shall likewise be without regard to fault on the part of Trustor with respect to the violation of Hazardous Substances Laws that result in liability to Beneficiary. Trustor further agrees that this indemnity shall continue and remain in full force and effect beyond the term of Obligations and shall be terminated only when there is no further obligation of any kind whether in law or in equity or otherwise of Beneficiary in connection with any such Hazardous Substances involving the Real Property.

3.12  Security Instruments.  Trustor shall execute, acknowledge and deliver to Beneficiary, within 5 Business Days after request by Beneficiary, a security agreement, financing statements and any other similar security instrument required by Beneficiary, in form and of content satisfactory to Beneficiary, covering all property of any kind whatsoever owned by Trustor which, in the sole opinion of Beneficiary, is essential to the operation of the Property and concerning which there may be any doubt whether title thereto has been conveyed, or a security interest therein perfected, by this Deed of Trust under applicable law.

3.13  Interest Laws.  Trustor hereby warrants and represents that the proceeds of the Note will be paid to an entity and/or used for business purposes.  It being the intention of Beneficiary and Trustor to comply with the laws of the State of California and the laws of the State in which the Property is located, it is agreed that notwithstanding any provision to the contrary in any of the Documents, no provision of any of the Documents shall require the payment or permit the collection of any amount in excess of the maximum amount of interest permitted to be charged by law ("Excess Interest"). If any Excess Interest is provided for, or

10

is adjudicated as being provided for, in any of the Documents, then (a) Trustor shall not be obligated to pay any such Excess Interest; and (b) any Excess Interest that Beneficiary may have received hereunder shall, at the option of Beneficiary, be (i) applied as a credit against the then unpaid principal balance of the Note, or accrued and unpaid interest thereon not to exceed the maximum amount permitted by law, or both, (ii) refunded to the payor thereof, or (iii) any combination of the foregoing.

## IV. EVENTS OF DEFAULT AND REMEDIES

4.01  **Events of Default.**  Each of the following events shall constitute an Event of Default under this Deed of Trust.

(a)  Trustor shall fail to pay when due any amount owed by Trustor to Beneficiary under the Note, or other Documents or any other Obligations; or

(b)  Trustor shall default in the performance or observance of any term, covenant, condition or agreement to be performed by Trustor under this Deed of Trust (not constituting an Event of Default under any other clause of this Section 4.01); or

(c)  Any representation or warranty made by Trustor in this Deed of Trust shall at any time prove to have been incorrect in any material respect when made; or

(d)  Any default or Event of Default (howsoever such terms are defined) shall occur under the Documents; or

(e)  Any sale, transfer, conveyance, assignment, hypothecation, encumbrance or other transfer of the title to or any beneficial interest in all or any portion of the Property.

4.02  Sale of Property; Foreclosure.

(a)  Upon occurrence of any Event of Default, or at any time thereafter, in addition to any and all other remedies available to either Trustee or Beneficiary under applicable law, Trustee and/or Beneficiary, with or without entry, personally or by either of their agents or attorneys may:

> (i)  sell the Property to the extent permitted and pursuant to the procedures provided by law, and all estate, right, title and interest, claim and demand therein, and right of redemption thereof, at one or more sales as an entity or in parcels, and at such time and place upon such terms and after such notice thereof as may be required or permitted by law; or
>
> (ii)  institute proceedings for the complete or partial foreclosure of this Deed of Trust; or
>
> (iii)  take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant,

11

condition or agreement in the Note, in the Guaranties, in this Deed of Trust, or in the other Documents, or in and of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as the Beneficiary shall elect.

(b) In the event of any sale or foreclosure of the Property, the Property may be sold in one or more parcels and either Trustee or Beneficiary may be the purchaser at any such sale of the Property or any part thereof.

(c) Beneficiary may elect to cause the Property or any part thereof to be sold as follows:

(i)    Beneficiary may proceed as if all the Property were real property in accordance with subsection (iv) below, or Beneficiary may elect to treat any of the Property which consists of a right in action or which is property that can be severed from the Real Property or the improvements located thereon without causing structural damage thereto as if the same were personal property, and dispose of the same in accordance with subsection (iii) below, separate and apart from the sale of real property, the remainder of the Property being treated as real property.

(ii)   Beneficiary may cause any such sale or other disposition to be conducted immediately following the expiration of any grace period, if any, herein provided (or immediately upon the expiration of any redemption or reinstatement period required by law) or Beneficiary may delay any such sale or other disposition for such period of time as Beneficiary deems to be in its best interest. Should Beneficiary desire that more than one such sale or other disposition be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests.

(iii)  Should Beneficiary elect to cause any of the Property to be disposed of as personal property as permitted by Subsection (i) above, it may dispose of any part thereof in any manner now or hereafter permitted by the California Uniform Commercial Code or in accordance with any other remedy provided by law. Any such disposition may be conducted by an employee or agent of Beneficiary or Trustee. Trustor, Trustee and Beneficiary shall be eligible to purchase any part or all of such property at any such disposition. Any such disposition may be either public or private as Beneficiary may elect, subject to the provisions of the California Uniform Commercial Code. Beneficiary shall have all of the rights and remedies of a secured party under the California Uniform Commercial Code. Expenses of retaking, holding, preparing for sale, selling or the like shall include Beneficiary's reasonable attorneys' fees and legal expenses, and upon Event of Default, Trustor, upon demand of Beneficiary, shall assemble such personal property and make it

12

available to Beneficiary at the Real Property, a place which is hereby deemed reasonably convenient to Beneficiary and Trustor. Beneficiary shall give Trustor at least 5 days prior written notice of the time and place of any public sale or other disposition of such property or of the time at or after which any private sale or any other intended disposition is to be made, and if such notice is sent to Trustor, in the manner provided for the mailing of notices herein, it shall constitute reasonable notice to Trustor.

(iv)   Should Beneficiary elect to sell the Property or any part thereof which is real property or which Beneficiary has elected to treat as real property, upon such election, Beneficiary or Trustee shall give such notice of default and election to sell as may then be required by law. Thereafter, upon the expiration of such time and the giving of such notice of sale as may then be required by law, and without the necessity of any demand on Trustor, Trustee, at the time and place specified in the notice of sale, shall sell the Property or any portion thereof specified by Beneficiary, at public auction to the highest bidder for cash in lawful money of the United States, subject, however, to the provisions of subsection (d) below. Trustee may, and upon request of Beneficiary shall, from time to time postpone the sale by public announcement thereof at the time and place noticed therefor. If the Property consists of several lots or parcels, Beneficiary may direct that the same be sold as a unit or be sold separately and, if to be sold separately, Beneficiary may designate the order in which such lots or parcels shall be offered for sale or sold. Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale. Upon any sale, Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the property so sold, but without any covenant or warranty, whatsoever, express or implied; whereupon such purchaser or purchasers shall be let into immediate possession.

(v)    In the event of a sale or other disposition of the Property, or any part hereof, and the execution of a deed or other conveyance pursuant thereto, the recitals therein of facts, such as Event of Default, the giving of notice of Event of Default and notice of sale, demand that such sale should be made, postponement of sale, terms of sale, sale, purchase, payment of purchase money and other facts affecting the regularity or validity of such sale or disposition, shall be conclusive proof of the truth of such facts; and any such deed or conveyance shall be conclusive against all persons as to the facts recited therein.

(vi)   The acknowledgement of the receipt of the purchase money, contained in any deed or conveyance executed as aforesaid, shall be sufficient discharge to the grantee of all obligations to see the proper application of the consideration therefor as hereinafter provided. The purchase at any trustee's or foreclosure sale hereunder may disaffirm any easement granted or rental or lease contract made in violation of any provision of this Deed of Trust

13

and may take immediate possession of the Property free from, and despite the terms of, such grant of easement and rental or lease contract.

(vii)  Upon the completion of any sale or sales made by Trustee or Beneficiary, as the case may be, under or by virtue of this section, Trustee or any officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Trustee is hereby appointed irrevocably the true and lawful attorney-in-fact of Trustor, in Trustor's name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Property or any part thereof and the rights so sold and for that purpose Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, Trustor hereby ratifying and confirming all that said attorney or any substitute or substitutes shall lawfully do by virtue hereof. Nevertheless, Trustor, if so requested by Trustee or Beneficiary, shall ratify and confirm any such sale or sales by executing and delivering to Trustee or to such purchaser or purchasers all such instruments as may be advisable in the judgment of Trustee or Beneficiary, for the purpose as may be designated in such request. Any such sale or sales made under or by virtue of this section, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all of the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Trustor in and to the properties and rights so sold, and shall be perpetual bar, both at law and in equity, against Trustor and any and all persons claiming or who may claim the same, or any part thereof, from, through or under Trustor.

(viii) Trustor hereby expressly waives any right which Trustor may have to direct the order in which any of the Property shall be sold in the event of any sale or sales pursuant hereto.

(d)  Upon any sale or sales made under or by virtue of this section, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Property or any part thereof and, in lieu of paying cash therefor, may make settlement for the purchase price of crediting upon the indebtedness or other sums secured by this Deed of Trust the net sales price after deducting therefrom the expenses of sale and the costs of the judicial proceedings, if any, and any other sums which Trustee and Beneficiary is authorized to deduct under this Deed of Trust, and, in such event, this Deed of Trust, the Note and documents evidencing expenditures secured hereby shall be presented to the person or persons conducting the sale in order that the amount so used or applied may be credited upon said indebtedness as having been paid.

14

$600,000.00 Loan

4.03 No Limitation of Possession. Notwithstanding continuance in possession of the Property, or any part hereof, by Beneficiary, Trustee or a receiver, and the collection, receipt and application of rents, royalties, issues, profits, revenue, income or other benefits, Beneficiary shall be entitled to exercise every right provided for in this Deed of Trust or by law upon or after the occurrence of a Event of Default, including the right to exercise the power of sale.

4.04 Right of Possession. In any case in which, under the provisions of this Deed of Trust, Trustee and/or Beneficiary have a right to exercise any remedy, whether or not the entire principal sum secured hereby becomes immediately due and payable as aforesaid, or whether before or after the institution of proceedings to foreclose the lien hereof or before or after sale under any foreclosure or power of sale, Trustor shall, forthwith upon demand of Beneficiary and/or Trustee, surrender to Trustee and/or Beneficiary, and Trustee and Beneficiary shall be entitled to take actual possession of the Property or any part thereof, personally or by its agent or attorneys, and Trustee and Beneficiary, in their discretion, may enter upon and take and maintain possession of all or any part of the Property, together with all documents, books (or copies thereof), records (or copies thereof), papers, and accounts of Trustor or the then owner of the Property relating thereto, and may exclude Trustor, such owner, and any agents and servants thereof wholly therefrom and may, as attorney-in-fact or agent of Trustor or such owner, or in its own name as Beneficiary and under the powers herein granted:

    (a)   hold, operate, manage, and control all or any part of the Property and conduct the business, if any, thereof, either personally or by its agents, with full power to use such measures, legal or equitable, as in its sole and arbitrary discretion may be deemed proper or necessary to enforce the payment or security of the rents, issues, deposits, profits, and avails of the Property, including without limitation actions for recovery of rent, actions in forcible detainer and actions in distress for rent, all without notice of Trustor;

    (b)   cancel or terminate any lease or sublease of all or any part of the Property for any cause or any ground that would entitle Trustor to cancel the same;

    (c)   elect to disaffirm any lease or sublease of all or any part of the Property made subsequent to this Deed of Trust or subordinated to the lien hereof;

    (d)   extend or modify any then existing leases and make new leases of all or any part of the Property, which extensions, modifications and new leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the maturity date of the loans evidenced by the Note and the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such leases, and the options or other such provisions to be contained therein, shall be binding upon Trustor, all persons whose interests in the Property are subject to the lien hereof, and the purchaser or purchasers at any foreclosure sale,

notwithstanding any redemption from sale, discharge of the indebtedness secured hereby, satisfaction of any foreclosure decree, or issuance of any certificate of sale or deed of any such purchaser; and

(e) make all necessary or proper repairs, decorations, renewals, replacements, alterations, additions, betterments and improvements in connection with the Property as maybe reasonably necessary, to insure and reinsure the Property and all risks incidental to Beneficiary's possession, operation, and management thereof, and to receive all rents, issues, deposits, profits and avails therefrom.

4.05 Application of Deposits. Beneficiary may, at its option, without being required to do so, apply any money or securities that constitute deposits made to or held by either Trustee or Beneficiary or any depository pursuant to any of the provisions of this Deed of Trust toward payment of any of the Obligations in such order and manner as Beneficiary may elect. When the Obligations have been fully paid, any remaining deposits shall be paid to Trustor or its successors or assigns, or to the then owner or owners of the Property, or to whoever else may then be adjudged entitled thereto.

4.06 Exercise Rights of Secured Party. To the extent that this Deed of Trust may operate as a security agreement under the Uniform Commercial Code, Beneficiary may exercise any or all of the remedies of a secured party under said Code.

4.07 Appointment of Receiver. Upon or at any time after the filing of any complaint with respect to the lien of this Deed of Trust, the court may, upon application, appoint a receiver of the Property. Such appointment may be made either before or after exercise of the power of sale or foreclosure sale, without notice; without regard to the solvency or insolvency, at the time of application for such receiver, or the person or persons, if any, liable for payment of the indebtedness secured hereby; without regard to the value of the Property at such time and whether or not the same is then occupied as a homestead, and without bond being required of the applicant. Such receiver shall have the power to take possession, control and care of the Property and to collect all rents, issues, deposits, profits and avails thereof during the pendency of such foreclosure suit and, in the event of a sale and a deficiency where Trustor has not waived its statutory rights of redemption, during the full statutory period of redemption, was well as during any further times when Trustor or its devisees, legatees, heirs, executors, administrators, legal representatives, successors or assigns, except for the intervention of such receiver, would be entitled to collect such rents, issues, deposits, profits and avails and shall have all other powers that may be necessary or useful in such cases for the protection, possession, control, management and operation of the Property during the whole of any such period. To the extent permitted by law, such receiver may be authorized by the court to extend or modify any then existing leases and to make new leases of the Property or any part thereof, which extensions, modifications and new leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the maturity date of the indebtedness security hereby, it being understood and agreed that any such leases, and the options or other such provisions to be contained therein, shall be binding upon

16

Trustor and all persons whose interests in the Property are subject to the lien thereof, and upon the purchaser or purchasers at any such sale, notwithstanding any redemption from sale, discharge of indebtedness, satisfaction of foreclosure decree, or issuance of certificate of sale or deed to any purchaser. Any receiver shall be liable to account only for the rents actually received.

4.08  **Application of Proceeds.**  The proceeds of any sale of the Property, or any part thereof, shall be distributed and applied in the following order of priority.

(a)  first, on account of all costs and expenses incident to the foreclosure proceedings, including, without limitation, the items described in Section 4.13 hereof;

(b)  next, in any order as determined by Beneficiary in its sole discretion, on account of the outstanding balance of the Note, all other items that under the terms of this Deed of Trust, constitute secured indebtedness additional to that evidenced by the Note and all other unpaid Obligations; and

(c)  the balance, to Trustor or its successors or assigns, as their interests and rights may appear or whoever else may then be adjudged entitled thereto.

4.09  **Priority of Payments.**  Any rents, issues, deposits, profits, and avails of the Property receiver by Beneficiary after taking possession of all or any part of the Property, or pursuant to any assignment thereof to Beneficiary under the provisions of this Deed of Trust, shall (unless otherwise required by court order) be applied in payment of or on account of the following, in the order listed:

(a)  operating expenses of the Property (including reasonable compensation to Beneficiary, any received of the Property, any agent or agents to whom management of the property as been delegated, and also including lease commissions and other compensation for and expenses of seeking and procuring tenants and entering into leases, establishing claims for damages, if any, and paying premiums on insurance hereinabove authorized);

(b)  taxes, special assessments, and water and sewer charges now due or that may hereafter become a lien thereon prior to the lien of this Deed of Trust;

(c)  any and all reasonable repairs, decorating, renewals, replacements, alterations, additions betterments, and improvements of the Property (including, without limitation, the cost of placing the Property in such condition as will in the judgment of Beneficiary or any receiver, make it readily rentable or salable);

(d)  all indebtedness secured by this Deed of Trust and other Obligations, including, without limitation, any deficiency that may result from any foreclosure sale pursuant hereto; and

(e)  any remaining funds to Trustor or its successors or assigns, as their interests and rights may appear or to whoever else may then be adjudged entitled thereto.

17

4.10  Rent.  During the continuance of any Event of Default and if Trustee, Beneficiary or any judicially appointed representative has a right to exclude Trustor from all or any part of the Property, Trustor agrees to pay the fair and reasonable rental value for the use and occupancy of the Property, or any portion thereof which are in its possession and being occupied for such period and, upon default of any such payment, will vacate and surrender possession of the Property to Trustee, Beneficiary or to a receiver, if any, and in default thereof may be evicted by any summary action or proceeding for the recovery or possession of premises for non-payment of rent, however designated.

4.11  **Remedies are Severable and Cumulative.**  All rights and remedies of Beneficiary herein are severable and cumulative and in addition to all other rights and remedies available in the other Documents, at law or in equity, and any one or more of such rights and remedies may be exercised simultaneously or successively.

4.13  **Litigation Expenses.**  In any proceeding to enforce the power of sale, foreclose the lien of this Deed of Trust or enforce any other remedy of either Trustee or Beneficiary under this Deed of Trust or any of the other Documents, or in any other proceeding whatsoever in connection with any of the Property in which either Trustee or Beneficiary is named as a party, there shall be allowed and included, as additional indebtedness in the judgment or decree resulting therefrom, all expenses paid or incurred in connection with such proceeding by or on behalf of either Trustee or Beneficiary, including, but not limited to reasonable attorneys' fees and expenses.

4.14  **Performance by Beneficiary.**  During the continuance of any Event of Default, Trustee or Beneficiary may, but need not, make any payment or perform any act herein required of Trustor in any form and manner deemed expedient by Beneficiary, and either Trustee or Beneficiary may, but need not, make full or partial payments of principal or interest on encumbrances, if any; purchase, discharge, compromise, or settle any tax lien or other prior or junior lien or title or claim thereof; redeem from any tax sale or forfeiture affecting the Property, or contest any tax or assessment thereon.  All moneys paid for any of the purposes authorized herein and all expenses paid or incurred in connection therewith, including attorney's fees, and any other moneys advanced by Trustee or Beneficiary to protect the Property and the lien of this Deed of Trust, shall be additional indebtedness secured hereby, and shall become immediately due and payable by Trustor to Beneficiary without notice, with interest at the highest Interest Rate specified in the Note.  Inaction of Trustee or Beneficiary shall never be construed to be a waiver of any right accruing to it by reason of any Event of Default.

4.15  **Waiver of Statutory Rights.**  To the greatest extent permitted by law:  (a) Trustor hereby waives the benefit of, and agrees that it will not apply for or avail itself of any appraisement, valuation, redemption, stay, extension or exemption laws, or any so-called "moratorium laws," now existing or hereafter enacted, in order to prevent or hinder the enforcement or foreclosure of this Deed of Trust; and (b) Trustor, for itself, any and all persons or entities who may claim through or under it and each and every person or entity acquiring any interest in the Property or title to the Real Property subsequent to the date

of this Deed of Trust, hereby also waives (i) any and all rights to have the Property and estates comprising the Property marshaled upon any foreclosure of the lien hereof, and agrees that any court having jurisdiction to foreclose such lien may order the Property sold in its entirety; and (ii) any and all rights of (A) redemption from sale under any order or decree of foreclosure of the lien hereof pursuant to the rights herein granted; and (B) homestead in the Real Property which Trustor may now or hereafter have under the laws of the State in which the Property is located; and (iii) all rights to void liens under Section 506 of the United States Bankruptcy Code (11 U.S.C. §506), or any amendment or successor thereto.

## V. SMALL BUSINESS ADMINISTRATION PROVISIONS

5.01. _Declaration_. The Loan secured by this lien was made under a United States Small Business Administration ("SBA") nationwide program which uses tax dollars to assist small business owners. If the United States is seeking enforce this document, then under SBA regulations:

(a)   When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

(b)   Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

## VI. MISCELLANEOUS

6.01 Acceptance by Trustee. Trustee, by its acceptance hereof, covenants faithfully to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by it in accordance with the terms hereof.

6.02 Resignation by Trustee. Trustee may resign at any time upon giving thirty (30) days' notice in writing to Trustor and to Beneficiary.

6.03 Substitution of Trustee. In the event of Trustee's death, removal, resignation, refusal to act, or inability to act or, in the sole discretion of Beneficiary for any reason whatsoever, Beneficiary may, at any time or from time to time without notice and without specifying any reason therefor and without applying to any court, select and appoint a

19

$800,000.00 Loan

successor trustee, and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor without conveyance from the predecessor trustee. Such substitute trustee shall not be required to give bond for the faithful performance of its duties unless required by Beneficiary. Such substitute trustee shall be appointed by written instrument duly recorded in the county where the Real Property is located, which appointment may be executed by any authorized agent or Beneficiary and, if such appointment is executed on Beneficiary's behalf by one of its officers, such appointment shall be conclusively presumed to have been executed by authority and shall be valid and sufficient without proof of any action by Beneficiary's Board of Directors or any superior officer of Beneficiary. Trustor hereby ratifies and confirms any and all acts which Trustee, or its successor or successors in this trust, shall do lawfully by virtue hereof.

6.04   **Execution of Documents.** At any time and from time to time, without liability therefor and without notice, upon written request of Beneficiary, Trustee may (i) consent in writing to the making of any map or plat of the Property, (ii) join in granting any easement thereon, (iii) join in any extension agreement or any agreement subordinating the lien or charge hereof, or (iv) upon presentation of this Deed of Trust and the Note for endorsement, and without affecting the personal liability of any person for the payment of the indebtedness secured hereby or the effect of this Deed of Trust upon the remainder of the Property, reconvey any part of the Property. Trustor hereby agrees, on behalf of itself and its heirs, executors, administrators and assigns, that the recitals contained in any deed or deeds executed in due form by Trustee or any substitute trustee, acting under the provisions of this Deed of Trust, shall be prima facia evidence of the facts recited, and that it shall not be necessary to prove in any court, otherwise than by such recitals, the existence of the facts essential to authorize the execution and delivery of such deed or deeds and the passing of title thereby.

6.05   **Reconveyance of Property.** Upon written request of Beneficiary stating that all sums secured hereby have been paid and upon surrender to Trustee of this Deed of Trust and the Note for cancellation and retention and payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

6.06   **Further Assurances.** Trustor will execute and deliver to Beneficiary, upon demand, any additional instruments or security documents necessary to secure to Beneficiary or to Trustee any right or interest granted by this Deed of Trust. If any rights, easements or other hereditaments shall hereafter become appurtenant to the Property, or any part thereof, Trustor shall deliver to Beneficiary, upon demand, a supplemental Deed of Trust in the form approved by Beneficiary covering such rights and interests.

6.07   **Notices.** Except as expressly provided to the contrary in this Deed of Trust, every notice or other communication to be given by any party with respect hereto or to the

20

Documents or the Property, shall be in writing and shall not be effective for any purpose unless the same shall be served personally or by national air courier service, or United States certified mail, return receipt requested, postage prepaid, to the parties at the addresses set forth above, or such other address or addresses as the parties may from time to time designate for themselves by notice given as above provided. Every notice or other communication hereunder shall be deemed to have been given as of the third business day following the date of such mailing (or as of any earlier date evidenced by a receipt from such national air courier service or the United States Postal Service) or immediately if personally delivered. Notices not sent in accordance with the foregoing shall be of no force or effect until received by the foregoing parties at such addresses required herein.

6.08  **Covenants Run with Land.**  All of the covenants of this Deed of Trust shall run with the land constituting the Real Property.

6.09  **Governing Law.**  The validity and interpretation of this Deed of Trust shall be governed and construed in accordance with the laws of the State in which the Property is located.

6.10  **Severability.**  Whenever possible, each provision of this Deed of Trust shall be interpreted in such manner as to be effective and valid under applicable law.  Any provision of this Deed of Trust which is prohibited or unenforceable shall be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Deed of Trust.

6.11  **Non-Waiver.**  No failure or delay on the part of Beneficiary in exercising any right, power or remedy pursuant to this Deed of Trust or any of the other Documents shall operate as a waiver thereof, and no single or partial exercise of any such right, power or remedy shall preclude any other or further exercise thereof, or the exercise of any other right, power of remedy. Neither any waiver of any provision of this Deed of Trust or any of the other Documents, nor any consent to any departure by Trustor therefrom, shall be effective unless the same shall be in writing and signed by Beneficiary. Any waiver of any provision of this Deed of Trust or any of the other Documents and any consent to any departure by Trustor from the terms of this Deed of Trust or any of the other Documents shall be effective only in the specific instance and for the specific purpose for which given. Except as otherwise expressly provided herein, no notice to or demand on Trustor shall in any case entitle Trustor to any other or further notice or demand in similar or other circumstances. Acceleration of maturity, once claimed hereunder by Beneficiary, may at Beneficiary's option be rescinded by written acknowledgment to that effect by Beneficiary and shall not affect Beneficiary's right to accelerate maturity upon or after any future Event of Default.

6.12  **Headings.**  Captions and headings in Sections and Paragraphs of this Deed of Trust are inserted only as a matter of convenience and shall not affect the interpretation hereof.

6.13  Grammar.  As used in this Deed of Trust, the singular shall include the plural, and masculine, feminine and neuter pronouns shall be fully interchangeable, where the contexts so requires.

6.14  Deed in Trust.  If title to the Property or any part thereof is now or shall hereafter becomes vested in a trustee, any prohibition or restriction contained herein against the creation of any lien on the Property shall be construed as a similar prohibition or restriction against the creation of any lien on or security interest in the beneficial interest or power of direction of such trust.

6.15  Successors and Assigns.  This Deed of Trust and all provisions hereof shall be binding upon Trustor, and its successors, assigns, legal representatives and all other person or entities claiming under or through Trustor and the word "Trustor," when used herein, shall include all such persons and entities and any others liable for the payment of the Obligations or any part thereof, whether or not they have executed any of the Note or this Deed of Trust.   The word "Beneficiary," when used herein, shall include Beneficiary's successors, assigns, and legal representatives, including all other holders, from time to time, of the Note.

6.16  Release.  Beneficiary shall release this Deed of Trust and the lien thereof by proper instrument upon presentation of satisfactory evidence that all Obligations and other indebtedness secured by t his Deed of Trust have been fully paid.

6.17  Time of the Essence.  Time is of the essence to this Deed of Trust, and all provisions pertaining thereto shall be strictly construed.

6.18  Waiver of Jury Trial. IN THE INTEREST OF OBTAINING A SPEEDIER AND LESS COSTLY HEARING OF ANY DISPUTE, TRUSTOR AND BENEFICIARY HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER PARTY AGAINST THE OTHER ARISING OUT OF OR RELATING TO THIS DEED OF TRUST, THE OTHER LOAN DOCUMENTS, INCLUDING WITHOUT LIMITATION THE NOTE, OR THE PROPERTY.

22

$800,000.00 Loan

IN WITNESS WHEREOF, Trustor has caused this Deed of Trust to be executed as of the date hereinabove first written.

TRUSTOR:
Dara Petroleum, Inc. dba Watt Ave Exxon

By:_____
Narges Eghtesadi, President

By:_____
Narges Eghtesadi, Secretary

STATE   OF   CALIFORNIA   )
                                              )
County of _____ )

On _____, 2004, before me, _____, personally appeared Narges Eghtesadi known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted executed the instrument.

WITNESS my hand and official seal.

Signature:_____

(SEAL)

M A. BENNETT
Commission # 1353142
Notary Public - California
Sacramento County
My Comm. Expires Apr 23, 2006

$800,000.00 Loan

23

EXHIBIT A ATTACHED TO AND HEREBY MADE A PART OF
DEED OF TRUST, SECURITY AGREEMENT,
FIXTURE FILING AND ASSIGNMENT OF LEASES AND RENTS
AMONG TRUSTOR, TRUSTEE AND
BLX CAPITAL, LLC

---

Legal Description:

PARCEL 1:

The South 200 feet of the East 250 feet of Lot 245 of Del Paso Park View Tract No. 2 according to the official plat thereof, filed in the office of the Recorder of Sacramento County, California, on June 7, 1913, in Book 14 of Maps, Map No. 33.

The Subdivision of said Lot 245 being made on the basis that the lot area included one-half of the adjoining roads.

PARCEL 2:

The North 104.82 feet of the South 304.82 feet of the East 250 feet of Lot 245 of Del Paso View Tract No. 2, according to the official plat thereof filed in the office of the County Recorder of Sacramento County, California on June 7, 1913, in Book 14 of Maps, at page 33.

EXCEPTING THEREFROM that portion thereof lying within that certain parcel described in the "Certification of Compliance-Lawful Parcel" issued by the County Surveyor of Sacramento County, dated September 14, 1988, and recorded September 16, 1988, in Book 880916, page 1001, Official Records, more particularly described as follows:

Beginning at a point on the East line of said Lot 245 and the center line of Watt Avenue, located North 01 degrees 45 minutes 30 seconds West 230.00 feet from the Southeast corner of said Lot 245, said Southeast corner being the intersection of the center lines of Watt Avenue and El Camino Avenue, as shown on said plat, thence from said point of beginning parallel with the South line of Lot 245, South 89 degrees 02 minutes 30 seconds West 250.00 feet; thence parallel with the East line of said Lot 245, North 01 degrees 46 minutes 30 seconds West 74.82 feet; thence parallel with the South line of said Lot 245 North 89 degrees 02 minutes 30 seconds East 250.00 feet to the East line of said Lot 245 and the center line of said Watt Avenue; thence along said East line South 01 degrees 46 minutes 30 seconds East 74.82 feet to the point of beginning.

The subdivision of said Lot 245 being made on the basis that the lot area included one-half of the adjoining road

Property Address: 3449 El Camino Avenue, Sacramento, Sacramento County, California 95821

30085888 01

Order No.
Escrow No.
Loan No.

WHEN RECORDED MAIL TO:

Amy Pietrucha
EDF RESOURCE CAPITAL, INC.
7509 Madison Avenue, Ste. 111
Citrus Heights, CA 95610

Sacramento County Recording
Mark Norris, Clerk/Recorder
BOOK **20040802** PAGE **0631**
Monday, AUG 02, 2004  9:21:45 AM
Ttl Pd   $30.00        Nbr-0002967953
                            DLM/17/2-5

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST WITH ASSIGNMENT OF RENTS
### (This Deed of Trust contains an acceleration clause)

This DEED OF TRUST, made July 12, 2004, between Dara Petroleum, Inc., a California corporation, herein called TRUSTOR, whose address is 3449 El Camino Avenue, Sacramento  CA  95821, FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called TRUSTEE, and EDF RESOURCE CAPITAL, INC., herein called BENEFICIARY,

WITNESSETH: That Trustor grants to Trustee in Trust, with Power of Sale, that property in the, County of Sacramento, State of California, as described in Exhibit A incorporated herein by reference, together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits for the purpose of securing (1) payment of the sum of $578,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof, (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

If the Trustor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the Beneficiary being first had and obtained, Beneficiary shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note evidencing the same, immediately due and payable.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A, and it is mutually agreed that each and all of the terms and provisions set forth in subdivision B of the fictitious deed of trust recorded in Orange County August 17, 1964, and in all other counties August 18, 1964, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 167 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 5029 | 124 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego | SERIES 5 Book 1964, Page 149774 | | | | |

The lien of this deed of trust is junior and subordinate to the liens of those certain deeds of trust in the amounts of $800,000.00 and $560,000.00 in favor of BLX Capital, LLC f/k/a BLC Capital Corp. recording concurrently herewith.

EXHIBIT _D_

DEED OF TRUST
(Continued)

PAGE 2

Shall inure to and bind the parties hereto, with respect to the property above described. Said agreements, terms and provisions contained in said Subdivision A and B, (identical in all counties, and printed on pages 3 and 4 hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefor does not exceed the maximum allowed by law.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b) CDC or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

TRUSTOR: Dara Petroleum, Inc.

By: Narges Eghtesadi, President

By: Narges Eghtesadi, Secretary


STATE OF CALIFORNIA                    }ss.

COUNTY OF SACRAMENTO                    }

On _____7/29/04_____ before me, _____the undersigned_____
personally appeared Narges Eghtesadi, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

M. A. BENNETT
Commission # 1353142
Notary Public - California
Sacramento County
My Comm. Expires Apr 23, 2006

(Seal)

DEED OF TRUST
(Continued)

## EXHIBIT A

PARCEL 1:

The South 200 feet of the East 250 feet of Lot 245 of Del Paso Park View Tract No. 2 according to the official plat thereof, filed in the office of the Recorder of Sacramento County, California, on June 7, 1913, in Book 14 of Maps, Map No. 33.

The subdivision of said Lot 245 being made on the basis that the Lot area included one-half of the adjoining roads.

PARCEL 2:

The North 104.82 feet of the South 304.82 feet of the East 250 feet of Lot 245 of Del Paso View Tract No. 2, according to the official plat thereof filed in the office of the County Recorder of Sacramento County, California, on June 7, 1913, in Book 14 of Maps, at Page 33.

EXCEPTING THEREFROM that portion thereof lying within that certain parcel, described in the "Certification of Compliance - Lawful Parcel" issued by the County Surveyor of Sacramento County, dated September 14, 1988, and recorded September 16, 1988, in Book 880916, Page 1001, Official Records, more particularly described as follows:

Beginning at a point on the East line of said Lot 245 and the center line of Watt Avenue, located North 01° 46' 30" West 230.00 feet from the Southeast corner of said Lot 245, said Southeast corner being the intersection of the center lines of Watt Avenue and El Camino, as shown on said plat; thence from said point of beginning, parallel with the South line of said Lot 245, South 89° 02' 30" West 250.00 feet; thence parallel with the East line of said Lot 245 North 01° 46' 30" West 74.82 feet; thence parallel with the South line of said Lot 245 North 89° 02' 30" East 250.00 feet to the East line of said Lot 245 and the center line of said Watt Avenue; thence along said East line South 01° 46' 30" East 74.82 feet to the point of beginning.

The subdivision of said Lot 245 being made on the basis that the lot area included one-half of the adjoining road.

The following is a copy of Subdivisions A and B of the fictitious Deed of Trust recorded in each county in California as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

A.  To protect the security of this Deed of Trust, Trustor agrees:

(1)  To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)  To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary.  The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor.  Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)  To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney=s fees in a reasonable sum, in any action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)  To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all incumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior to or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any incumbrance, charge or lien which in the judgement of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)  To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B.  It is mutually agreed:

(1)  That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2)  That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3)  That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4)  That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey without warranty, the property then held hereunder.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.  The Grantee in such reconveyance may be described as Athe person or persons legally entitled thereto@.

(5)  That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable.  Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney=s fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.  The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6)  That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record.  Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.  Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.  Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(7)      Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.  Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8)      That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.  The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein.  In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(9)      That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

---

## REQUEST FOR FULL RECONVEYANCE
### (To be used only when obligations have been paid in full)

TO: _____, Trustee

The undersigned is the legal owner and holder of the note or notes, and all other indebtedness secured by the foregoing Deed of Trust.  Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidences of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated: _____

Please mail Deed of Trust,
Note and Reconveyance to

Order No.
Escrow No.
Loan No.

WHEN RECORDED MAIL TO:

Amy Pietrucha
EDF Resource Capital, Inc.
7509 Madison Ave., Ste. 111
Citrus Heights, CA  95610

Sacramento County Recording
Mark Norris, Clerk/Recorder
BOOK **20040802** PAGE **0632**
Monday, AUG 02, 2004    9:21:45 AM
Ttl Pd     $12.00         Nbr-0002967855

DLM/17/1-2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned grants, assigns and transfers to the **U.S. SMALL BUSINESS ADMINISTRATION** all beneficial interest under that certain Deed of Trust dated July 12, 2004, executed by Dara Petroleum, Inc., a California corporation, to **FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation**, Trustee, and recorded concurrently herewith as document No. _____ ✳ _____, in Book _____, Page _____, of Official Records in the office of the County Recorder of **Sacramento** County, California, describing land therein as shown in **Exhibit A** incorporated herein by reference.  *concurrent*

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: July 28, 2004

EDF RESOURCE CAPITAL, INC.

By: _____
Frank F. Dinsmore, Chief Executive Officer

STATE OF CALIFORNIA                )
                                                          )SS.
COUNTY OF SACRAMENTO     )

On ___July 28, 2004___ before me, _____the undersigned_____
personally appeared Frank F. **Dinsmore**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

LISA MORANDI
Commission # 1472537
Notary Public - California
Sacramento County
My Comm. Expires Feb 24, 2008

(Seal)

# EXHIBIT A

PARCEL 1:

The South 200 feet of the East 250 feet of Lot 245 of Del Paso Park View Tract No. 2 according to the official plat thereof, filed in the office of the Recorder of Sacramento County, California, on June 7, 1913, in Book 14 of Maps, Map No. 33.

The subdivision of said Lot 245 being made on the basis that the Lot area included one-half of the adjoining roads.

PARCEL 2:

The North 104.82 feet of the South 304.82 feet of the East 250 feet of Lot 245 of Del Paso View Tract No. 2, according to the official plat thereof filed in the office of the County Recorder of Sacramento County, California, on June 7, 1913, in Book 14 of Maps, at Page 33.

EXCEPTING THEREFROM that portion thereof lying within that certain parcel, described in the "Certification of Compliance - Lawful Parcel" issued by the County Surveyor of Sacramento County, dated September 14, 1988, and recorded September 16, 1988, in Book 880916, Page 1001, Official Records, more particularly described as follows:

Beginning at a point on the East line of said Lot 245 and the center line of Watt Avenue, located North 01° 46' 30" West 230.00 feet from the Southeast corner of said Lot 245, said Southeast corner being the intersection of the center lines of Watt Avenue and El Camino, as shown on said plat; thence from said point of beginning, parallel with the South line of said Lot 245, South 89° 02' 30" West 250.00 feet; thence parallel with the East line of said Lot 245 North 01° 46' 30" West 74.82 feet; thence parallel with the South line of said Lot 245 North 89° 02' 30" East 250.00 feet to the East line of said Lot 245 and the center line of said Watt Avenue; thence along said East line South 01° 46' 30" East 74.82 feet to the point of beginning.

The subdivision of said Lot 245 being made on the basis that the lot area included one-half of the adjoining road.

Recording Requested by and
When Recorded Mail to:

Amy Pietrucha
EDF REsource Capital, Inc.
7509 Madison Avenue, Suite 111
Citrus Heights, CA 95610

Sacramento County Recording
Mark Norris, Clerk/Recorder
BOOK **20040827** PAGE **2118**
Friday, AUG 27, 2004   2:44:17 PM
Ttl Pd   $24.00        Nbr-0003027177

SAH/45/1-6

---

TITLE OF DOCUMENT

## THIRD PARTY LENDER AGREEMENT

EXHIBIT ___E___

## THIRD PARTY LENDER AGREEMENT

This THIRD PARTY LENDER AGREEMENT, dated <u>August 2, 2004</u> by and between <u>BLX Capital, LLC</u>, whose address is <u>700 North Pearl Street, Suite 1850, Dallas, Texas 75201</u> (the "Third Party Lender") and <u>EDF RESOURCE CAPITAL, INC.</u>, whose address is 7509 Madison Avenue, Ste. 111, Citrus Heights CA 95610 (the "CDC"), recites and provides:

### RECITALS

<u>Dara Petroleum, Inc.</u> (the "Borrower") is the owner of the real estate and other collateral described on the attached <u>Exhibit A</u> (the "Collateral"). The Third Party Lender has made two loans, both of which have been fully advanced, one in the amount of <u>Eight Hundred Thousand</u> and 00/100 Dollars (\$<u>800,000.00</u>) (the "Term Third Party Lender Loan") and a second in the amount of <u>Five Hundred Sixty Thousand</u> and 00/100 Dollars (\$<u>560,000.00</u>) (the "Interim Third Party Lender Loan").

The Term Third Party Lender Loan is secured, among other things, by:
- a first lien deed of trust or mortgage dated <u>July 29, '04</u> and recorded <u>Aug. 2, '04</u>, in Book <u>20040802</u> Page <u>627</u> in the land records for <u>Sacramento County</u> (together with any modifications, extensions or amendments thereof) (the "Third Party Lender Deed of Trust/Mortgage"), as well as
- a security agreement granting the Third Party Lender a first lien security interest in the Collateral pursuant to the Uniform Commercial Code and is evidenced by financing statements filed in the records of CA Secretary of State ("Third Party Security Agreement").

The Interim Third Party Lender Loan is secured, among other things, by:
- a second lien deed of trust or mortgage dated <u>July 29, '04</u>, and recorded <u>Aug. 2, '04</u>, in Book <u>20040802</u> Page <u>629</u> in the land records for <u>Sacramento County</u> (together with any modifications, extensions or amendments thereof) (the "Third Party Lender Deed of Trust/Mortgage")

The CDC has agreed to make a loan in the amount of <u>Five Hundred Seventy Eight Thousand</u> and 00/100 Dollars (\$<u>578,000.00</u>) (the "504 Loan") to the Borrower. The 504 Loan will be secured, among other things, by:
- a deed of trust or mortgage (the "504 Deed of Trust/Mortgage") to be recorded among the aforesaid land records, and
- a security agreement granting the CDC a security interest (junior only to that of the Third Party lender) in the Collateral pursuant to the Uniform Commercial Code and will be evidenced by financing statements filed in the financing statement records of CA Secretary of State and Sacramento County

### AGREEMENT

NOW, THEREFORE, for and in consideration of the foregoing recitals, the mutual agreements set forth below and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Third Party Lender agrees as follows:

1.  Balance of the Term Third Party Lender Loan.  The balance of the Term Third Party Lender Loan is Eight Hundred Thousand and 00/100 Dollars ($800,000.00) , and has a maturity date of July 29, 202_ and an interest rate of 5.50% ____ as required under the Authorization. Following the making of the 504 Loan, the Third Party Lender will receive Five Hundred Sixty Thousand and 00/100 Dollars ($560,000.00) from the CDC, which the Third Party Lender will apply to pay off the principal balance of the Interim Third Party Lender Loan and, upon payment of any accrued, but unpaid interest on the Interim Third Party Lender Loan, The Third Party Lender shall release the Interim Third Party Lender Deed of Trust/Mortgage and release, cancel or mark as paid all other liens and documents securing the Interim Third Party Lender Loan.

2.  Subordination of Future Advances and Default Charges.  Except for advances made for reasonable costs of collection, maintenance and protection of the Third Party Lender's lien(s), the Third Party Lender hereby subordinates to the 504 Loan and the lien(s) securing the 504 Loan (a) any sum advanced to the Borrower by the Third Party Lender after the date of this Agreement and (b) any prepayment penalties, late fees, and increased default interest in connection with the Third Party Lender Loan.

3.  Compliance with 504 Loan Program Requirements.  The Third Party Lender confirms that the note and all other documents executed in connection with the Third Party Lender Loan (a) evidence a loan that does not exceed the principal amount permitted by the Authorization for Debenture Guarantee (SBA 504 Loan) issued by the U.S. Small Business Administration ("SBA") to CDC to assist Borrower, (b) have no open-ended features and allow only future advances for the reasonable costs of collection, maintenance and protection of the Third Party Lender's lien thereunder, (c) are not cross-collateralized with any other financing now or hereafter to be provided by Third Party Lender, (d) have no early call features, (e) are not payable on demand unless the Third Party Lender Loan is in default, (f) have a term of at least, and do not require a balloon payment prior to, ten years for a 20-year 504 loan or seven years for a 10-year 504 loan, (g) have a reasonable interest rate that does not, and will not, exceed the maximum interest rate for a Third Party Loan as published by SBA, and (h) do not establish a preference in favor of the Third Party Lender as compared to CDC or SBA other than the Third Party Lender's senior lien position.  The Third Party Lender agrees that if the note or any other document executed in connection with the Third Party Lender Loan or any provision therein does not comply with these requirements, then the Third Party Lender waives its right to enforce any such noncomplying document or provision unless the Third Party Lender has obtained the prior written consent of CDC and/or SBA permitting such enforcement.

4.  Waiver of Enforcement of Covenant Not to Encumber the Collateral.  If the Third Party Lender Loan contains any provision prohibiting the Borrower from further encumbering the Collateral, the Third Party Lender waives its right to enforce any such provision as it might apply to the lien arising from the 504 Deed of Trust/Mortgage securing or any other document securing or evidencing the 504 Loan.

5.  Notice of Default Under the Third Party Lender Loan.  If any default, event of default or delinquency, upon which the Third Party Lender intends to take action, occurs under the Third Party Lender Deed of Trust/Mortgage or any document executed in connection with the Third Party Lender Loan, then the Third Party Lender agrees to give the CDC and SBA written notice of such default, event of default or delinquency and the opportunity to cure or to purchase the Third Party Lender's note and the Third Party Lender Deed of Trust/Mortgage prior to foreclosure.  Such notice must be given within thirty (30) days after the default, event of default or delinquency upon which the Third Party Lender intends to take action and at least sixty (60) days prior to the date of any proposed sale and the Third Party Lender will not sell all or any portion of the Collateral without

giving the CDC and the SBA such notice.  Notice under this Agreement shall be deemed to have been given when sent by certified or registered mail, return receipt requested, addressed, as the case may be, to the CDC at 7509 Madison Avenue, Ste. 111, Citrus Heights, CA 95610, Attention: Servicing, and to the SBA at 650 Capitol Mall, Ste. 7-500, Sacramento CA 95814, Attention: District Counsel.

6.    Successors and Assigns.  This Agreement shall inure to the benefit of and bind the respective parties to this Agreement and their successors and assigns.

7.    The Third Party Lender certifies the following:

- The Third Party Lender has no knowledge of any unremedied substantial adverse change in the condition of the Borrower and Operating Company since the date of the loan application to the Third Party Lender, and

- The Third Party Lender will make no further disbursements on the Interim Loan, and

- The Interim Loan has been disbursed in reasonable compliance with the Authorization.


BLX Capital, LLC

By: _____

    Darlene F. Reagan, Senior Vice President

STATE OF TEXAS    )
                  )
COUNTY OF DALLAS  )ss:

The foregoing instrument was acknowledged before me this 2nd day of August, 2004, by Darlene F. Reagan, Senior Vice President of BLX Capital, LLC.

Witness my hand and official seal.


_____
Notary Public
My commission expires: 3-3-2005

M. CHERYL SURDICK
Notary Public
STATE OF TEXAS
My Comm. Exp. 03/03/2005


Page 3 of 3

EDF RESOURCE CAPITAL, INC.

By: _____

     Frank F. Dinsmore, Chief Executive Officer

## ASSIGNMENT TO SBA

CDC assigns this Third Party Lender Agreement to SBA.

EDF RESOURCE CAPITAL, INC.

By: _____

     Frank F. Dinsmore, Chief Executive Officer

STATE OF CALIFORNIA                     )ss.

COUNTY OF SACRAMENTO           )

On _August 10 2004_ before me, ___the undersigned___
personally appeared Frank F. Dinsmore, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

AMY L. PIETRUCHA
COMM. #1278463
NOTARY PUBLIC - CALIFORNIA
SACRAMENTO COUNTY
My Comm. Expires Sept. 26, 2004

(Seal)

## EXHIBIT A

PARCEL 1:

The South 200 feet of the East 250 feet of Lot 245 of Del Paso Park View Tract No. 2 according to the official plat thereof, filed in the office of the Recorder of Sacramento County, California, on June 7, 1913, in Book 14 of Maps, Map No. 33.

The subdivision of said Lot 245 being made on the basis that the Lot area included one-half of the adjoining roads.

PARCEL 2:

The North 104.82 feet of the South 304.82 feet of the East 250 feet of Lot 245 of Del Paso View Tract No. 2, according to the official plat thereof filed in the office of the County Recorder of Sacramento County, California, on June 7, 1913, in Book 14 of Maps, at Page 33.

EXCEPTING THEREFROM that portion thereof lying within that certain parcel, described in the "Certification of Compliance - Lawful Parcel" issued by the County Surveyor of Sacramento County, dated September 14, 1988, and recorded September 16, 1988, in Book 880916, Page 1001, Official Records, more particularly described as follows:

Beginning at a point on the East line of said Lot 245 and the center line of Watt Avenue, located North 01° 46′ 30″ West 230.00 feet from the Southeast corner of said Lot 245, said Southeast corner being the intersection of the center lines of Watt Avenue and El Camino, as shown on said plat; thence from said point of beginning, parallel with the South line of said Lot 245, South 89° 02′ 30″ West 250.00 feet; thence parallel with the East line of said Lot 245 North 01° 46′ 30″ West 74.82 feet; thence parallel with the South line of said Lot 245 North 89° 02′ 30″ East 250.00 feet to the East line of said Lot 245 and the center line of said Watt Avenue; thence along said East line South 01° 46′ 30″ East 74.82 feet to the point of beginning.

The subdivision of said Lot 245 being made on the basis that the lot area included one-half of the adjoining road.

# UNCONDITIONAL GUARANTEE

| Guarantor | Sarbjit S. Kang |
| --- | --- |
| Borrower | Dara Petroleum, Inc |
| Lender | BLX Capital, LLC |
| Date | ✓ 7-29-04 |
| Note Amount | $800,000.00 |

1. GUARANTEE:

   Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

   The "Note" is the promissory note dated __of even date herewith__ in the principal amount of __EIGHT HUNDRED THOUSAND AND NO/100 -------------------- Dollars__, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

   "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.
   "Loan" means the loan evidenced by the Note.
   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

4. LENDER'S GENERAL POWERS:

   Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:
   A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
   B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;
   C.   Release any Borrower or any guarantor of the Note;
   D.   Compromise or settle with the Borrower or any guarantor of the Note;
   E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;
   F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;



Page 1/4



EXHIBIT F

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release the obligations of Guarantor or create any rights or claims against Lender.

5.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:

1)   Require presentment, protest, or demand upon Borrower;

2)   Redeem any Collateral before or after Lender disposes of it;

3)   Have any disposition of Collateral advertised; and

4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:

1)   Any default under the Note;

2)   Presentment, dishonor, protest, or demand;

3)   Execution of the Note;

4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5)   Any change in the financial condition or business operations of Borrower or any guarantor;

6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:

1)   Lender failed to obtain any guarantee;

2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3)   Lender or others improperly valued or inspected the Collateral;

4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5)   Lender impaired the Collateral;

6)   Lender did not dispose of any of the Collateral;

7)   Lender did not conduct a commercially reasonable sale;

8)   Lender did not obtain the fair market value of the Collateral;

9)   Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10)  The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11)  Lender made errors or omissions in Loan Documents or administration of the Loan;

12)  Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13)  Lender impaired Guarantor's suretyship rights;

14)  Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15)  Borrower has avoided liability on the Note; or

16)  Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

6.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

7   SUCCESSORS AND ASSIGNS:

   Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

8   GENERAL PROVISIONS:

   A.   ENFORCEMENT EXPENSES.  Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

   B.   SUBROGATION RIGHTS.  Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

   C.   JOINT AND SEVERAL LIABILITY.  All individuals and entities signing as Guarantor are jointly and severally liable.

   D.   DOCUMENT SIGNING.  Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

   E.   FINANCIAL STATEMENTS.  Guarantor must give Lender financial statements as Lender requires.

   F.   LENDER'S RIGHTS OF CUMULATIVE, NOT WAIVED.  Lender may exercise any of its rights separately or together, as many times as it chooses.  Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

   G.   ORAL STATEMENTS NOT BINDING.  Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

   H   SEVERABILITY.  If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

   I   CONSIDERATION.  The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

9   STATE-SPECIFIC PROVISIONS:

NONE

10   GUARANTOR ACKNOWLEDGMENT OF TERMS:

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

11.   GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Sarbjit S. Kang, Individually

# UNCONDITIONAL GUARANTEE

| | |
|---|---|
| Guarantor | Narges Eghtesadi |
| Borrower | Dara Petroleum, Inc |
| Lender | BLX Capital, LLC |
| Date | 1-19-04 |
| Note Amount | $800,000.00 |

1.   GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note  This Guarantee remains in effect until the Note is paid in full.  Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor.  Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.   NOTE:

The "Note" is the promissory note dated __of even date herewith__ in the principal amount of __EIGHT HUNDRED THOUSAND AND NO/100 -------------------- Dollars,__ from Borrower to Lender.  It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.   DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.
"Loan" means the loan evidenced by the Note.
"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

4.   LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;
C.   Release any Borrower or any guarantor of the Note;
D.   Compromise or settle with the Borrower or any guarantor of the Note;
E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;
F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release the obligations of Guarantor or create any rights or claims against Lender

5.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:

1)   Require presentment, protest, or demand upon Borrower;

2)   Redeem any Collateral before or after Lender disposes of it;

3)   Have any disposition of Collateral advertised; and

4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:

1)   Any default under the Note;

2)   Presentment, dishonor, protest, or demand;

3)   Execution of the Note;

4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5)   Any change in the financial condition or business operations of Borrower or any guarantor;

6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:

1)   Lender failed to obtain any guarantee;

2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3)   Lender or others improperly valued or inspected the Collateral;

4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5)   Lender impaired the Collateral;

6)   Lender did not dispose of any of the Collateral;

7)   Lender did not conduct a commercially reasonable sale;

8)   Lender did not obtain the fair market value of the Collateral;

9)   Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10)  The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11)  Lender made errors or omissions in Loan Documents or administration of the Loan;

12)  Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13)  Lender impaired Guarantor's suretyship rights;

14)  Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15)  Borrower has avoided liability on the Note; or

16)  Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

6.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

7.   SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

8.   GENERAL PROVISIONS:

A.   ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.   SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

C.   JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

D.   DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

E.   FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

F.   LENDER'S RIGHTS OF CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

G.   ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

H.   SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

I.   CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

9.   STATE-SPECIFIC PROVISIONS:

NONE

N.G

10.   GUARANTOR ACKNOWLEDGMENT OF TERMS:

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

11   GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Narges Eghtesadi, Individually

<u>Allonge to Promissory Note</u>

Pay to the order of BLC CAPITAL FUNDING, LLC, and its successors and assigns, without recourse.

BLX CAPITAL, LLC

By: _____
Cynthia C. Herring
Vice President

BLX Loan Number: BLCCC20040729BS
Loan Name:        Dara Petroleum, Inc. dba Watt Ave Exxon

EXHIBIT___G___

RECORDATION REQUEST BY:
Business Loan Center
645 Madison Avenue
New York, New York 10022

WHEN RECORDED MAIL TO:
Business Loan Center
One Independence Pointe
Suite 102
Greenville, SC 29615
Attn: Nancy Revis

BLX Loan Number: BLCCC20040729BS
Loan Name:      Dara Petroleum, Inc. dba Watt Ave Exxon

## ASSIGNMENT OF MORTGAGE

**STATE OF SOUTH CAROLINA)**
                                                **:**
**COUNTY OF GREENVILLE  )**

    **FOR VALUE RECEIVED**, BLX Capital, LLC, ("Assignor"), having a corporate address of 645 Madison Avenue, 19th Floor, New York, New York 10022, has this day transferred, sold, assigned, conveyed and set over to BLC Capital Funding, LLC, ("Assignee"), all its rights, title and interest in and to a certain Mortgage/Deed of Trust, executed by Dara Petroleum, Inc. dated July 29, 2004, recorded on _____, in Book _____ at Page(s) _____, in the County of Sacramento, State of California.

    The Assignor herein specifically transfers, sells, conveys and assigns to the above Assignee, its successors, representatives and assigns, the aforesaid Mortgage, the property described on Exhibit A, the indebtedness secured thereby, and all the powers, options, privileges and immunities therein contained.

AO 619999.1

**IN WITNESS WHEREOF**, the Assignor has hereunto set its hand and seal this the 16th day of August, 2004.

Signed, Sealed and Delivered                     BLX Capital, LLC
in the Presence of:

By: _____
_____        Name: Cynthia C. Herring
                                        Title: Vice President

State of South Carolina
County of Greenville

    This the 16th day of August, 2004 personally came before me Cynthia C. Herring, who being duly sworn says that she is the Vice President of BLX Capital, LLC, and that this instrument was signed by her on behalf of said corporation, by its authority and the said Cynthia C. Herring acknowledged the said instrument to be the act and deed of said corporation.

Notary Public: _____

Allonge to Promissory Note

Pay to the order of HSBC Bank USA, and its successors and assigns, not in its individual capacity but solely as Indenture Trustee under that certain Indenture dated as of March 19, 2004, relating to BLX Conventional Funding Trust II Notes, without recourse"

BLC CAPITAL FUNDING, LLC

By: _Cynthia C. Herring VP_
Cynthia C. Herring
Vice President

BLX Loan Number:  BLCCC20040729BS
Loan Name:        Dara Petroleum, Inc. dba Watt Ave Exxon

EXHIBIT H

RECORDATION REQUEST BY:
Business Loan Center
645 Madison Avenue
New York, New York 10022

WHEN RECORDED MAIL TO:
Business Loan Center
One Independence Pointe
Suite 102
Greenville, SC 29615
Attn: Nancy Revis

BLX Loan Number: BLCCC20040729BS
Loan Name:         Dara Petroleum, Inc. dba Watt Ave Exxon

---

## ASSIGNMENT OF MORTGAGE

**STATE OF SOUTH CAROLINA)**
                               **:**
**COUNTY OF GREENVILLE)**

     **FOR VALUE RECEIVED,** BLC Capital Funding, LLC, ("Assignor"), having a corporate address of 645 Madison Avenue, 19th Floor, New York, New York 10022, has this day transferred, sold, assigned, conveyed and set over to HSBC Bank USA, ("Assignee") its successors and assigns, as indenture trustee under that certain Indenture dated as of March 19, 2004, relating to BLX Conventional Funding Trust II Notes, all its rights, title and interest in and to a certain Mortgage/Deed of Trust, executed by Dara Petroleum, Inc. dated July 29, 2004, recorded on _____, in Book _____ at Page(s) _____, in the County of Sacramento, State of California.

     The Assignor herein specifically transfers, sells, conveys and assigns to the above Assignee, its successors, representatives and assigns, the aforesaid Mortgage, the property described on Exhibit A, the indebtedness secured thereby, and all the powers, options, privileges and immunities therein contained.

AO 619999.1

**IN WITNESS WHEREOF,** the Assignor has hereunto set its hand and seal this the 16th day of August, 2004.

Signed, Sealed and Delivered                   BLC Capital Funding, LLC
in the Presence of:

_Nancy J Lewis_                    By: _Cynthia C. Herring VP_
                                        Name: Cynthia C. Herring
                                        Title: Vice President

State of South Carolina
County of Greenville

    This the 16th day of August, 2004 personally came before me Cynthia C. Herring, who being duly sworn says that she is the Vice President of BLC Capital Funding, LLC, and that this instrument was signed by her on behalf of said corporation, by its authority and the said Cynthia C. Herring acknowledged the said instrument to be the act and deed of said corporation.

Notary Public: _Jason Michael Berry_

Allonge to Promissory Note

Pay to the order of HSBC Bank USA, National Association and its successors and assigns, not in its individual capacity but solely as Indenture Trustee under that certain Indenture dated as of June 1, 2005, as the same may be amended from time to time, for the benefit of the Indenture Trustee and the holders of the Business Loan Express Business Loan-Backed Notes, Series 2005-A, as their respective interests may appear, without recourse.

<div style="text-align:center; margin-left:40%;">

DELAWARE TRUST COMPANY,
NATIONAL ASSOCIATION, as
Owner Trustee

By:   BLC CAPITAL FUNDING, LLC,
      Its attorney-in-fact

By: *Melinda Siefert, VP*
      Melinda Siefert
      Vice President

</div>

BLC Loan Number:  BLCCC20040729BS

Loan Name: Dara Petroleum, Inc. dba Watt Ave Exxon

EXHIBIT I

Loan No.: BLCCC20040729BS
Loan Name: Dara Petroleum, Inc. dba Watt Ave Exxon

---

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST

STATE OF SOUTH CAROLINA)
                    :

COUNTY OF GREENVILLE )

      **FOR VALUE RECEIVED**, HSBC Bank USA, National Association ("Assignor"), as Indenture Trustee under the Amended and Restated Indenture dated as of March 19, 2004, having an address of 452 Fifth Ave., New York, NY 10018-2706, has this day transferred, sold, assigned, conveyed and set over to HSBC Bank USA, National Association ("Assignee"), its successors and assigns, as Indenture Trustee under that certain Indenture dated as of June 1, 2005, as the same may be amended from time to time, for the benefit of the Indenture Trustee and the holders of Business Loan Express Business Loan-Backed Notes, Series 2005-A as their respective interest may appear, subject to the Indenture dated as of June 1, 2005, as the same may be amended from time to time, the Assignor herein specifically transfers, sells, conveys and assigns to the above Assignee, its successors, representatives and assigns, the aforesaid Mortgage/Deed of Trust, the property described on Schedule 1, the indebtedness secured thereby, and all the powers, options, privileges and immunities therein contained.

**IN WITNESS WHEREOF,** the Assignor has hereunto set its hand and seal this the 10th day of June, 2005.

Signed, Sealed and Delivered

in the Presence of:

BLX CONVENTIONAL FUNDING TRUST II

DELAWARE TRUST COMPANY, NATIONAL ASSOCIATION, as Owner Trustee
By: BLC CAPITAL FUNDING, LLC, its attorney-in-fact

_Jennie L. Williams_

By _Melinda Siefert_ VP
  Name: Melinda Siefert
  Title: Vice President

State of South Carolina
County of Greenville

This the 10th day of June, 2005 personally came before me Melinda Siefert, who being duly sworn says that she is the Vice President of BLC Capital Funding, LLC, and that this instrument was signed by her on behalf of said corporation, by its authority and the said Melinda Siefert acknowledged the said instrument to be the act and deed of said corporation.

Notary Public _Jason Michael Berry_

LAW OFFICES

# LEVY, SMALL & LALLAS

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

815 MORAGA DRIVE

LOS ANGELES, CALIFORNIA 90049-1633

TELEPHONE (310) 471-3000

CHARLES M. LEVY*
STEVEN G. SMALL*
TOM LALLAS*
LEO D. PLOTKIN*
WALTER R. MITCHELL
WILLIAM J. WIPPICH
ANGEL F. CASTILLO
RAYMOND T. SUNG
MARK D. HURWITZ
CAROL A. ENSALACO
BRADLEY I. KRAMER

*A PROFESSIONAL CORPORATION

FACSIMILE: (310) 471-7990

IN REPLY PLEASE REFER TO:

9008.4555

June 3, 2009

## VIA FIRST CLASS MAIL

Dara Petroleum, Inc. dba Watt Avenue Exxon
c/o Narges Eghtesadi
1785 Habitat Way
Concord, CA 94520

Narges Eghtesadi
Sarbjit S. Kang
1785 Habitat Way
Concord, CA 94520

Re:   Default on (a) Letter Loan Agreement dated July 29, 2004 by and between Dara Petroleum, Inc. dba Watt Avenue Exxon and BLX Capital, LLC; (b) Adjustable Rate Promissory Note dated July 29, 2004 by and between Dara Petroleum, Inc. dba Watt Avenue Exxon and BLX Capital, LLC f/k/a BLC Capital Corp.; (c) Unconditional Guarantee dated July 29, 2004 by and between Narges Eghtesadi and BLX Capital, LLC; (d) Unconditional Guarantee dated July 29, 2004 by and between Sarbjit S. Kang and BLX Capital, LLC; and (e) associated loan documents.

Dear Mr. Eghtesadi:

This firm represents BLX Capital, LLC ("BLX") and its successor-in-interest Ciena Capital, LLC in connection with the above referenced matter.

As of the present date, Dara Petroleum, Inc. dba Watt Avenue Exxon ("Dara") is in default of its obligations to BLX under, among other documents, the Letter Loan Agreement (the "Loan Agreement") dated July 29, 2004 by and between Dara and BLX in the principal amount of $800,000 and the Adjustable Rate Promissory Note (the "Note") dated July 29, 2004 by and between Dara and BLX in the identical principal amount. Events of Default under the Loan Agreement and the Note have occurred as defined by Section 3(a) of the Loan Agreement and Section 10 of the Note including, but not limited to, Dara's failure to repay the amounts due and owing under the Note.

Accordingly, pursuant to its authority under Section 10 of the Note, BLX hereby accelerates and declares that all obligations due and owing by Dara to BLX under the Loan Agreement and Note are immediately due and payable, and hereby demands that you immediately pay to BLX the full amount due and owing by Dara to BLX under the Note, which, as of May 22, 2009, totals $794,747.22 plus all accruing fees, charges, and interest accruing thereafter and including all attorneys' fees and expenses incurred by BLX in connection with the above from April 1, 2009 to the present.

EXHIBIT __J__

LAW OFFICES

LEVY, SMALL & LALLAS

Narges Eghtesadi
Sarbjit S. Kang
Dara Petroleum, Inc. dba Watt Avenue Exxon
June 3, 2009
Page 2

     In the event that Dara fails to pay the foregoing amount to BLX in its entirety **by the close of business on June 17, 2009,** BLX will exercise all of its rights and remedies available under the Loan Agreement, the Note, and all other associated loan documents, all of which are expressly reserved. Please direct any and all payments to our office at the above indicated address.

                Very truly yours,

                Bradley I. Kramer

BIK/23701

LAW OFFICES

# LEVY, SMALL & LALLAS

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

815 MORAGA DRIVE

LOS ANGELES, CALIFORNIA 90049-1633

TELEPHONE (310) 471-3000

CHARLES M. LEVY*
STEVEN G. SMALL*
TOM LALLAS*
LEO D. PLOTKIN*
WALTER R. MITCHELL
WILLIAM J. WIPPICH
ANGEL F. CASTILLO
RAYMOND T. SUNG
MARK D. HURWITZ
CAROL A. ENSALACO
BRADLEY I. KRAMER

*A PROFESSIONAL CORPORATION

FACSIMILE: (310) 471-7990

IN REPLY PLEASE REFER TO:

9008.4556

June 3, 2009

## VIA FIRST CLASS MAIL

Narges Eghtesadi
Sarbjit S. Kang
1785 Habitat Way
Concord, CA 94520

Dara Petroleum, Inc. dba Watt Avenue Exxon
c/o Narges Eghtesadi
1785 Habitat Way
Concord, CA 94520

Re:   Default on (a) Letter Loan Agreement dated July 29, 2004 by and between Dara Petroleum, Inc. dba Watt Avenue Exxon and BLX Capital, LLC; (b) Adjustable Rate Promissory Note dated July 29, 2004 by and between Dara Petroleum, Inc. dba Watt Avenue Exxon and BLX Capital, LLC f/k/a BLC Capital Corp.; (c) Unconditional Guarantee dated July 29, 2004 by and between Narges Eghtesadi and BLX Capital, LLC; (d) Unconditional Guarantee dated July 29, 2004 by and between Sarbjit S. Kang and BLX Capital, LLC; and (e) associated loan documents.

Dear Mr. Eghtesadi and Mrs. Kang:

This firm represents BLX Capital, LLC ("BLX") and its successor-in-interest Ciena Capital, LLC in connection with the above referenced matter.

As of the present date, Dara Petroleum, Inc. dba Watt Avenue Exxon ("Dara") is in default of its obligations to BLX under, among other documents, the Letter Loan Agreement (the "Loan Agreement") dated July 29, 2004 by and between Dara and BLX in the principal amount of $800,000 and the Adjustable Rate Promissory Note (the "Note") dated July 29, 2004 by and between Dara and BLX in the identical principal amount. Events of Default under the Loan Agreement and the Note have occurred as defined by Section 3(a) of the Loan Agreement and Section 10 of the Note including, but not limited to, Dara's failure to repay the amounts due and owing under the Note.

Based on Dara's default, and your failure to repay the amounts due and owing to BLX by Dara, you are in default of (a) the Unconditional Guarantee dated July 29, 2004 by and between Narges Eghtesadi and BLX; and (b) Unconditional Guarantee dated July 29, 2004 by and between Sarbjit S. Kang and BLX (collectively, the "Unconditional Guarantees").

Accordingly, pursuant to Section 1 of the Unconditional Guarantees, BLX hereby makes this written demand that you immediately pay to BLX the full amount due and owing by Dara to

LAW OFFICES

LEVY, SMALL & LALLAS

Narges Eghtesadi
Sarbjit S. Kang
Dara Petroleum, Inc. dba Watt Avenue Exxon
June 3, 2009
Page 2

BLX under the Note, which, as of May 22, 2009, totals $794,747.22, plus all accruing fees, charges, and interest accruing thereafter and including all attorneys' fees and expenses incurred by BLC in connection with the above from April 1, 2009 to the present.

In the event that you fail to submit payment of the foregoing amount to BLX in its entirety by the close of business on **June 17, 2009**, BLX will exercise all of its rights and remedies available under the Note, the Unconditional Guarantees, and all other associated loan documents, all of which are expressly reserved. Please direct any and all payments to our office at the above indicated address.

Very truly yours,

Bradley I. Kramer

BIK/23701

# PROOF OF SERVICE

*STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:*

  I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 815 Moraga Drive, Los Angeles, California 90049.

  On May 3, 2010 I served the foregoing document entitled **FIRST AMENDED COMPLAINT FOR: 1. JUDICIAL FORECLOSURE; 2. BREACH OF WRITTEN GUARANTEE** on the interested parties in this action by placing a true copy thereof in sealed envelopes addressed as follows:

### *See Attached Service List*

☒ (By Email) I had such document electronically submitted pursuant to the email addresses attached on the service list with no system administrator error returned.

☒ (**Federal**) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed May 3, 2010 at Los Angeles, California.


       <u>/s/ Heidi Gray</u>
        Heidi Gray

## <u>SERVICE LIST</u>

1

2   Jeffrey S. Kravitz, Esq.
3   KRAVITZ LAW OFFICE
    2310 J. Street, Suite A
4   Sacramento, CA 95816
5   Kravitzlaw@aol.com

6

7   Lawrence G. Brown
    United States Attorney
8   Bobbie J. Montoya
9   Assistant U.S. Attorney
    501 I. Street, Suite 10-100
10  Sacramento, CA 95814-2322
11  Bobbie.Montoya@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE