UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| HSBC BANK USA, National Association, as Indenture Trustee for the benefit of the Noteholders and the Certificateholders of Business Loan Express Business Loan Trust 2005-A,<br><br>            Plaintiff,<br><br>     v.<br><br>DARA PETROLEUM, INC. dba WATT AVENUE EXXON, a California corporation; SARBJIT S. KANG, an individual; NARGES EGHTESADI, an individual; EXXON MOBIL CORPORATION fka EXXON CORPORATION, a New Jersey corporation; U.S. SMALL BUSINESS ASSOCIATION, a United States government agency; and DOES 1 through 20, inclusive,<br><br>            Defendants,<br>_____/<br><br>AND RELATED CROSSCLAIMS AND COUNTERCLAIMS.<br>_____/ | NO. CIV. 2:09-2356 WBS EFB<br><br>MEMORANDUM AND ORDER RE: MOTION FOR JUDGMENT ON THE PLEADINGS |

1

Plaintiff HSBC Bank USA, National Association, as Indenture Trustee for the benefit of the Noteholders and the Certificateholders of Business Loan Express Business Loan Trust 2005-A brought this action against defendants Dara Petroleum, Inc. dba Watt Avenue Exxon ("Dara"), Sarbjit S. Kang, Narges Eghtesadi, Exxon Mobil Corporation ("Exxon") and the United States Small Business Association ("SBA") for judicial foreclosure and breach of written guarantee stemming from a default on a commercial loan plaintiff originated. Defendants Dara, Kang, and Eghtesadi then filed counterclaims against plaintiff for breach of contract and fraud. Before the court is plaintiff's motion for judgment on the pleadings on Dara, Kang, and Eghtesadi's counterclaims.

I. Factual and Procedural Background

Dara is the owner of real property located at 3449 El Camino Avenue, Sacramento, California. (Compl. ¶ 11.) On June 11, 2004, plaintiff sent Dara a letter with the terms for an $800,000 loan. (Dara/Kang Countercl. ¶ 6; Eghtesadi Countercl. ¶ 5.) This letter (the "letter loan agreement") indicated the loan's interest rate would be "[t]he 30-Day LIBOR equivalent to the Wall Street Journal Prime + 2.75% adjusted on the 1st day of each calendar month (Margin over 30-Day LIBOR will be determined at time of closing)."[1] (Dara/Kang Countercl. Ex. 1 at 1;

---

[1] LIBOR is the average interest rate paid on deposits of U.S. dollars in the London market on a given day, and is used as the interest rate at which lenders can borrow from other banks. This rate is published daily in publications such as the Wall Street Journal. The Wall Street Journal Prime is the rate banks charge their most creditworthy customers, published daily in the Wall Street Journal.

2

Eghtesadi Countercl. Ex. 1 at 1.)  Plaintiff then prepared an adjustable rate promissory note ("Note") with the section on the interest rate allegedly left blank at the time of signing. (Dara/Kang Countercl. ¶ 9; Eghtesadi Countercl. ¶ 8.)

On July 29, 2004, Dara and plaintiff entered into a loan agreement whereby plaintiff agreed to loan Dara a principal sum of not more than $800,000.  (Compl. ¶ 12.)  Plaintiff executed the Note in the amount of $800,000 to Dara and Dara agreed to repay the loan, with interest, in monthly installments. (Id. ¶¶ 13-14.)  The loan was secured by a Deed of Trust, in which Dara conveyed its interest in the subject property to Fidelity National Title Company as trustee for the benefit of plaintiff.  (Id. ¶ 15.)  Kang and Eghtesadi also individually executed unconditional written guarantees of the loan, guaranteeing plaintiff payment of all amounts due under the Note. (Id. ¶ 19.)

At the time of the signing of these documents, Aaron Hopkins, plaintiff's vice-president, allegedly explained that the loan was to bear interest at the LIBOR index rate plus 2.75%. (Dara/Kang Countercl. ¶ 10; Eghtesadi Countercl. ¶ 9.)  However, the Note indicates that the interest rate to be charged to Dara was 5.5% over the LIBOR index rate.  Dara, Kang, and Eghtesadi allege that plaintiff intentionally hand-wrote the rate of 5.5% into the Note after they signed a blank version of it and misled them into believing the interest rate on the loan would be 2.75% over the LIBOR rate under the terms of the letter loan agreement. (Dara/Kang Countercl. ¶ 14; Eghtesadi Countercl. ¶ 13.)

Dara, Kang, and Eghtesadi eventually defaulted on their

3

obligations under the loan and guarantees. (Compl. ¶ 21.) On June 3, 2009, plaintiff sent Dara, Kang, and Eghtesadi demand for payment letters stating that the Note and guarantees were in default and demanded full payment of the amount due under the agreements by June 17, 2009. (Id.) Defendants failed to pay the amount due on the loan.

In response, plaintiff brought this action to foreclose on the property and for breach of the guarantees in Sacramento County Superior Court on July 7, 2008. The SBA removed the action to this court on August 24, 2009. (Docket No. 1.) Dara and Kang filed an answer to the Complaint and counterclaims for breach of contract and fraud based on the alleged improprieties in the Note's interest rate on October 30, 2009. (Docket No. 22.) Eghtesadi filed an answer to the Complaint and almost identical counterclaims on November 24, 2009. (Docket No. 32.) After an initial hearing on plaintiff's motion on April 12, 2010, the court held a hearing on May 24, 2010, and heard testimony from expert witnesses on the definition of "the 30 Day LIBOR equivalent to the Wall Street Journal Prime."

II. Discussion

Judgment on the pleadings is appropriate after the pleadings have closed when, on the face of those pleadings, accepting the allegations of the non-moving party as true, no material issue of fact remains to be resolved. See Fed. R. Civ. P. 12(c); Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990). Under such circumstances, the moving party can obtain judgment as a matter of law. Hal Roach Studios, 896 F.2d at 1550. "Generally, district courts

have been unwilling to grant a Rule 12(c) dismissal 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984) (quoting 5A C. Wright & A. Miller, *Federal Practice and Procedure: Civil*, § 1368 at 690 (1969)).

On a motion for judgment on the pleadings, the factual allegations of the non-moving party are taken as true. Doleman, 727 F.2d at 1482 (citing Austad v. United States, 386 F.2d 147, 149 (9th Cir. 1967)).  A Rule 12(c) motion is therefore essentially equivalent to a Rule 12(b)(6) motion to dismiss and consequently, a district court may "dispos[e] of the motion by dismissal rather than judgment."[2] Sprint Telephony PCS, L.P. v. County of San Diego, 311 F. Supp. 2d 898, 902-03 (S.D. Cal. 2004).  "[D]ismissal can be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Sprint Telephony, 311 F. Supp. 2d at 902-03; see also Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

When an essential component of the contract uses

---

[2] The motions differ in only two respects:

(1) the timing (a motion for judgment on the pleadings is usually brought after an answer has been filed, whereas a motion to dismiss is typically brought before an answer is filed) . . . and (2) the party bringing the motion (a motion to dismiss may be brought only by the party against whom the claim for relief is made, usually the defendant, whereas a motion for judgment on the pleadings may be brought by any party).

Sprint Telephony PCS, L.P. v. County of San Diego, 311 F. Supp. 2d 898, 902-03 (S.D. Cal. 2004).

5

specialized, technical terms which are not understandable to a person outside the relevant field, the court may look to extrinsic evidence for guidance in defining and interpreting the terms at issue.  See 3 *Starkie on Evidence*, 1033 ("Where terms are used which are known and understood by a particular class of persons, in a certain special and peculiar sense, evidence to that effect is admissible for the purpose of applying the instrument to its proper subject-matter; and the case seems to fall within the same consideration as if the parties in framing their contract had made use of a foreign language which the courts are not bound to understand."); see also Yassin v. Solis, No. B215201, --- Cal. Rptr. 3d ----, 2010 WL 1802354, at *6 (Cal. App. 2 Dist. May 6, 2010) (using architecture dictionaries and treatises to interpret a complex term in an architecture contract).

"When considering a motion for judgment on the pleadings, [a] court may [also] consider facts that are contained in materials of which the court may take judicial notice." Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999) (internal citations omitted).  A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201. Additionally, "[a] copy of a written instrument which is an exhibit to a pleading is a part thereof for all purposes."  Fed. R. Civ. P. 10.

6

Plaintiff requests the court take judicial notice of two documents: (1) a copy of the letter loan agreement executed by Eghtesadi on behalf of Dara, attached as Exhibit 1 to both the Dara/Kang and Eghtesadi counterclaims, and (2) a copy of the published money index rates from the Wall Street Journal on July 29, 2004. (See Pl.'s Req. Judicial Notice at 1:6-18.) The court will take judicial notice of these documents because the letter loan agreement is attached to the pleadings and its accuracy has not in dispute, and the copy of the Wall Street Journal index rates from the Wall Street Journal itself is a source whose accuracy cannot be questioned. See, e.g., Stein v. JP Chase Morgan Bank, 279 F. Supp. 2d 286, 290 (taking judicial notice of interest rates of indexes published in the Wall Street Journal); Fed. R. Civ. P. 10.

### A. Breach of Contract

"Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." Monaco v. Bear Stearns Residential Mortgage Corp., 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (citation omitted). "A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations." Id. (citing Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 5 Cal. 4th 854 (1993)). The court must decide in the first instance "whether the contract language is clear or ambiguous[.]" Navarro v. Mukasey, 518 F.3d 729, 734 (9th Cir. 2008) (citing Bank of the W. v. Superior Court, 2 Cal. 4th 1254 (1992)). Contract interpretation is a solely judicial function if the contract's language is unambiguous and does not turn on the credibility of

extrinsic evidence.  See Powers v. Dickson, Carlson & Campillo, 54 Cal. App. 4th 1102, 1111 (1997).

Plaintiff argues it is entitled to judgment on the pleadings on defendants' breach of contract counterclaims because the terms of the letter loan agreement prove that it charged defendants the appropriate interest rate on the loan in the Note. The contract that defendants are suing on in their counterclaims is the letter loan agreement. While the Note states that the loan's interest rate shall be 5.5% over LIBOR, it is undisputed that this rate was handwritten in by plaintiff and was to be calculated according to the terms of the letter loan agreement. The letter loan agreement states that the interest rate of the loan will be "[t]he 30-Day LIBOR equivalent to the Wall Street Journal Prime + 2.75% adjusted on the first day of each calendar month (Margin over 30-Day LIBOR will be determined at time of closing)." (Dara/Kang Countercl. Ex. 1 at 1; Eghtesadi Countercl. Ex. 1 at 1.)

Plaintiff contends that the "30-Day LIBOR equivalent to the Wall Street Journal Prime + 2.75% adjusted on the first day of each calendar month" is an unambiguous term and can be determined mathematically. Specifically, plaintiff contends that the rate is calculated by "start[ing] with [the Wall Street Journal] Prime on the closing date of July 29, 2004, determin[ing] '[t]he 30-Day LIBOR equivalent' to that rate, and then add[ing] 2.75% to the result." (Pl.'s Mot. J. Pleadings at 4:6-8.) On July 20, 2004, the Wall Street Journal Prime rate was 4.25% and the LIBOR index rate was 1.48%. (Pl.'s Req. Judicial Notice Ex. 2.)  Plaintiff therefore contends that the "margin

8

over 30-Day LIBOR" at the time of closing was 2.77%, which was calculated by subtracting the July 20, 2004 LIBOR rate of 1.48% from the Wall Street Journal Prime rate of 4.25%. (Pl.'s Mot. J. Pleadings at 4:9-12.) As a result, plaintiff contends that the "30-Day LIBOR equivalent to the Wall Street Prime" is the LIBOR rate plus 2.77%. (Id.) Plaintiff then added 2.75% to the 2.77% rate, resulting in an interest rate of LIBOR plus 5.52%, which it claims it then rounded down to a rate of LIBOR plus 5.5% in the Note. (Id. at 4:12-13.) Plaintiff's expert, Dr. Roger Edelen, testified that this was the most reasonable interpretation of the term.

Dara, Kang, and Eghtesadi contend that the interest rate term of the loan letter agreement is ambiguous and that plaintiff's vice-president, Hopkins, indicated at closing that the loan's interest rate was to be LIBOR plus 2.75%. (See Dara/Kang Countercl. ¶¶ 10-16, Eghtesadi Countercl. ¶¶ 9-15.) Defendants' expert, Kevin Keeley, testified that the interest term is unintelligible.

The parol evidence rule "generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." Casa Herrera, Inc. V. Beydoun, 32 Cal. 4th 336, 343 (2004). However, "under California law courts must always admit extrinsic evidence to determine the meaning of disputed contract language." A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., Bumble Bee Seafoods Div., 852 F.2d 493, 497 n.2 (9th Cir. 1988); see also Trident Ctr. v. Conn. Gen. Life Ins. Co., 847 F.2d 564, 568-69 (9th Cir. 1988); Pac. Gas & Elec. Co. v. G.W. Thomas

1  Drayage & Rigging Co., 69 Cal. 2d 33, 37 (1968).

2       The Ninth Circuit articulated the broad nature of this standard in Trident, noting that under California law,

> it matters not how clearly a contract is written, nor how completely it is integrated, nor how carefully it is negotiated, nor how squarely it addresses the issue before the court: the contract cannot be rendered impervious to attack by parol evidence. If one side is willing to claim that the parties intended one thing but the agreement provides for another, the court must consider extrinsic evidence of possible ambiguity.

Trident, 847 F.2d at 569.  Accordingly, when faced with a California breach of contract claim, "courts may not dismiss on the pleadings when one party claims that extrinsic evidence renders the contract ambiguous.  The case must proceed beyond the pleadings so that the court may consider the evidence."  A. Kemp Fisheries, 852 F.2d at 497 n.2.  Once the court determines the terms of the contract, it may then evaluate "whether or not extrinsic evidence is being offered for a prohibited purpose." Pac. Gas, 69 Cal. 2d at 39.

     While plaintiff's interpretation of the interest rate term is not unreasonable, the phrase "the 30 Day LIBOR equivalent to the Wall Street Journal Prime," is unintelligible on its face. It is illogical that two different index numbers can be equivalent.  Neither defendants' expert, who has worked extensively in the lending industry, nor plaintiff's expert, a professor of economics, had *ever* seen the specific phrase the "30 Day LIBOR equivalent to the Wall Street Journal Prime" used to describe an adjustable interest rate.  The term is clearly ambiguous.  An ambiguous term such as this should be construed against plaintiff as the drafter of the contract.  See Cathay

10

Bank v. Lee, 14 Cal. App. 4th 1533, 1541 (1993).  The court cannot find the core term of the loan agreement--the interest rate--was unambiguous when the specific term is nonsensical on its face and, to the court's knowledge, has never been used in the financial industry before.  Accordingly, defendants' extrinsic evidence must be evaluated to determine the intent of the parties and meaning of the term.[3]  See A. Kemp Fisheries, 852 F.2d at 497 n.2.  At this stage of the proceedings, the court must deny plaintiff's motion for judgment on the pleadings on Dara, Kang, and Eghtesadi's breach of contract counterclaims. See id.

   B.   Fraud

Plaintiff argues that it is entitled to judgment on the pleadings on Dara, Kang, and Eghtesadi's counterclaims for fraud because California law does not recognize a fraud claim based on an oral promise that is directly inconsistent with the terms of a written contract.  "Parol evidence is always admissible to prove fraud," Richard v. Baker, 141 Cal. App. 2d 857, 863 (1956), unless the evidence is offered to show "a promise directly at variance with the written agreement."  Bank of Am. Nat'l Trust & Sav. Ass'n v. Pendergrass, 4 Cal. 2d 258, 263 (1935), see also

---

[3] Over the history of American jurisprudence, courts have been unclear as to whether contract interpretation using extrinsic evidence is a question for the court or a jury.  See, e.g., Loree v. Robert F. Driver Co., 87 Cal. App. 3d 1032, 1039 (1978) (interpretation of ambiguous contract language with extrinsic evidence is a question of fact for the jury); Walsh v. Walsh, 18 Cal. 2d 439, 441 (1941) (same); London Market Insurers v. Superior Court, 146 Cal. App. 4th 648, 656 (2007) (court may consider extrinsic evidence in deciding if contract term is ambiguous); Wolf v. Superior Court, 114 Cal. App. 4th 1343, 1350 (2004) (holding the court must consider extrinsic evidence to determine if a contract is susceptible to a particular meaning).

11

Stephen J. Cannell Prods., Inc. v. LJN Toys, Inc., 933 F.2d 1015 (9th Cir. 1991); West v. Henderson, 227 Cal. App. 3d 1578, 1583 (1991).  The "limited purpose" of this "exception to the fraud exception" is to "avoid[ ] . . . undermining . . . the parol evidence rule by permitting every breach of contract to be pleaded as the tort of fraud." Oak Indus., Inc. v. Foxboro Co., 596 F. Supp. 601, 607 (S.D. Cal. 1984)).

As previously discussed, the court is unable to determine if the statement allegedly made by Hopkins at closing is at variance with the terms of the letter loan agreement at this stage of the proceedings.  See A. Kemp Fisheries, 852 F.2d at 497 n.2.  Until the extrinsic evidence alleged in the counterclaims is considered, the court cannot conclude that Hopkins's allegedly fraudulent statement directly contradicts the letter loan agreement.  Defendants may be able to establish a counterclaim for fraud if plaintiff's allegedly "false promise is independent of or consistent with the written instrument" at issue, which in this case is the letter loan agreement. Continental Airlines, Inc. v. McDonnell Douglas Corp., 216 Cal. App. 3d 388, 419 (1989) (emphasis added); see LJN Toys, 933 F.2d at 1015.  Accordingly, taking the pleadings in a light most favorable to the defendants, plaintiff has not clearly shown that no material of issue of fact remains to be resolved on the pleadings of the counterclaims such that it is entitled to judgment as a matter of law.  See Doleman, 727 F.2d at 1482.
///
///
///

1    IT IS THEREFORE ORDERED that plaintiff's motion for
2  judgment on the pleadings be, and the same hereby is, DENIED.
3  DATED:  May 27, 2010

*[signature: William B. Shubb]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE