UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| HSBC BANK USA, N.A., as Indenture Trustee for the benefit of the Noteholders and the Certificateholders of Business Loan Express Business Loan Trust 2005-A,<br><br>        Plaintiff,<br><br>    v.<br><br>DARA PETROLEUM, INC., dba WATT AVENUE EXXON, a California Corporation; SARBJIT S. KANG, an individual; NARGES EGHTESADI, an individual; UNITED STATES SMALL BUSINESS ADMINISTRATION, a United States government agency; and DOES 1 through 20, inclusive,<br><br>        Defendants,<br><br>AND RELATED CROSSCLAIMS AND COUNTER-CLAIMS. | CIV. NO. 2:09-2356 WBS EFB<br><br><u>MEMORANDUM AND ORDER RE: MOTION TO APPOINT RECEIVER; MOTION FOR PRELIMINARY INJUNCTION IN AID OF RECEIVER</u> |

----oo0oo----

        Plaintiff HSBC Bank USA, N.A. brought this action

1

1  against defendant Dara Petroleum, Inc. ("Dara"), and several
2  other defendants arising out of Dara's default on a commercial
3  loan made by plaintiff's predecessor and secured by real property
4  located at 3499 El Camino Avenue, Sacramento, California ("the
5  property"). On January 30, 2013, the court entered an amended
6  judgment of $985,776.75 plus interest and costs against Dara,
7  ordered that the property be sold at a foreclosure sale, and
8  directed that the proceeds of that sale be used to satisfy the
9  judgment. (Docket No. 109.) Plaintiff now moves to appoint
10 Kevin Singer as a post-judgment receiver pursuant to Federal Rule
11 of Civil Procedure 66 and for a preliminary injunction in aid of
12 receivership.[1]

I.   Appointment of Receiver

Although "Rule 66 governs the appointment of a receiver in federal court," the appointment of a post-judgment receiver is also subject to Rule 69(a), which governs the enforcement of judgments. Office Depot, Inc. v. Zuccarini, 596 F.3d 696, 701 (9th Cir. 2010). Rule 69(a) provides that proceedings "in aid of judgment or execution . . . must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a); see also Zuccarini, 596 F.3d at 700 ("We have previously noted that 'state law has been applied under Rule 69(a) to . . . appointment of receivers,' when such actions are undertaken in aid of executing on a judgment." (citations omitted)).

California permits courts to "appoint a receiver . . .

---

[1] The United States Small Business Administration, which is a defendant and a junior lienholder on the property, filed a Statement of Non-Opposition. (Docket No. 112.) All other defendants oppose the motion.

to enforce a judgment for possession or sale of property." Cal. Civ. Proc. Code § 712.060. "The court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment." Id. § 708.620. The Ninth Circuit has cautioned, however, that receivership is an "extraordinary equitable remedy" and "should be applied with caution." Canada Life Assurance Co. v. LaPeter, 563 F.3d 837, 844 (9th Cir. 2009). While there is "no precise formula" that determines when a court should appoint a receiver, courts have identified several factors that guide this determination, including:

> (1) [W]hether the party seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and (7) whether the plaintiff's interests sought to be protected will in fact be well-served by receivership.

Id. (citations, alterations, and internal quotation marks omitted); accord N.Y. Life Ins. Co. v. Watt W. Inv. Corp., 755 F. Supp. 287, 292 (E.D. Cal. 1991) (Levi, J.). "Most important among the factors are the adequacy of the security and the financial position of the mortgagor." N.Y. Life, 755 F. Supp. at 292.

New York Life is instructive. There, the plaintiff

3

made a loan to the defendant that was secured by commercial real estate. Id. at 288. When the defendants defaulted, the plaintiff accelerated the amount due on the loan, sued the defendants, and moved to appoint a receiver. Id. at 289. The court found that the defendants were of "doubtful" financial strength and were "experiencing financial difficulties." Id. at 292. The court also found that the value of the property was less than the debt owed to the plaintiff, that rents from the property were being diverted from the repayment of the loan, that a major tenant was likely to depart, and that the value of the property was likely to diminish as a result of the defendants' mismanagement. Id. at 292-93. In light of these considerations, the court appointed a receiver. Id. at 293.

The facts here are even more extreme than those in New York Life. In February 2010, shortly after plaintiff initiated this foreclosure action, Dara leased the property, which is operated as a gas station, to Parjmit Singh. (See Dameron Decl. Ex. 1 (Docket No. 110-1).) Dara then sold the fuel tanks, pipes, dispensers, and inventory to Singh in August of that year. (See Dameron Decl. Ex. 2 (Docket No. 110-1).) In 2012, after the court initially entered judgment against Dara and ordered that the property be sold at a foreclosure sale, Dara conveyed its remaining interest in the property to Stars Holding Company. (See Dameron Decl. Ex. 3 (Docket No. 110-1).) Dara did not inform plaintiff of any of these transactions until after the court entered judgment. (See Dameron Decl. ¶ 7.) Although plaintiff has attempted to collect monthly rent from Singh, as authorized under the Deed of Trust securing plaintiff's loan to

Dara, Singh has missed approximately half of the rent payments.[2] (See Dameron Decl. ¶ 9; Dameron Decl. Ex. 4 (Docket No. 110-1).)

Dara has also failed to pay taxes on the property. In 2012, Dara was delinquent on over $31,000 in back property taxes. (July 30, 2012 Kravitz Decl. Ex. 1 (Docket No. 84-1).) Because that tax delinquency operates as a lien on the property, the court concluded in an earlier Order that "[p]laintiff's interest in the property is . . . threatened by Dara's failure to fully pay its property taxes by the agreed upon date." (Sept. 12, 2012 Order at 5:4-6 (Docket No. 92).) Although Dara negotiated a payment plan with the City of Sacramento, it has evidently not paid off the tax delinquency, which has ballooned to $49,371.14. (See Ramsaur Decl. ¶ 5; Ramsaur Decl. Ex. A (Docket No. 110-2).)

Between the delinquent property taxes, Singh's failure to pay rent, and Dara's unauthorized conveyance of the property, defendants' conduct threatens an orderly foreclosure sale and presents an "imminent danger that the property may be diminished

---

[2] Defendants appear to assert that plaintiff is not entitled to rental income on the property separate from the interest payments outlined in the court's Order granting judgment. (See Opp'n at 4:12-16.) Defendants are wrong. The Deed of Trust explicitly provides that plaintiff is entitled to collect rents on the property to the extent necessary to protect its security interest therein. (See First Am. Compl. Ex. C § 2.05(a).)

Defendants also contend that plaintiff wrongfully billed them for several interest payments at a rate of ten percent, as opposed to the 5.7 percent rate they previously paid. (See Opp'n at 3-4; Apr. 7, 2014 Kravitz Decl. Ex. C (Docket No. 113-1).) However, the ten percent interest rate was not applied until January 30, 2013, when the court ordered that post-judgment interest be calculated at an annual rate of ten percent. (See Docket No. 109.) In any event, defendants do not explain how plaintiff's calculation of the post-judgment interest bears on the question of whether the court should appoint a receiver.

in value." New York Life, 755 F. Supp. at 292-93.  Plaintiff estimates that a foreclosure sale could take up to 120 days, during which time there is a significant risk that Singh would fail to pay rent, continue to mismanage the property, and ultimately reduce its sale value.  (See Dameron Decl. ¶ 10.) Defendants' repeated failure to make payments also suggests that they may not have the financial means to pay a deficiency judgment in the event the property sells for less than $985,776.75 and that plaintiff would be irreparably harmed as a result of a diminished sale price.  See DuFour v. Be LLC, Civ. No. 09-3770 CRB, 2009 WL 4730897, at *3 (N.D. Cal. Dec. 7, 2009) (finding that the plaintiff was likely to suffer irreparable harm when the defendant "appear[ed] to be bankrupt" and "will be far less likely to be able to satisfy a judgment a few months down the road").

        The remaining factors also militate in favor of receivership.  Plaintiff has already prevailed on the merits, thereby demonstrating that it has a "valid claim." LaPeter, 563 F.3d at 844.  The proposed receiver, Kevin Singer, has over nineteen years of property and retail management experience, has been appointed as a receiver on twelve occasions, and has been involved in over two hundred receiverships.  (See Singer Decl. ¶ 3 (Docket No. 110-3).)  And while defendants contend that the receivership will harm them by imposing unnecessary costs, appointment of a receiver is likely to benefit defendants because it will improve the property value and thereby reduce the amount of any deficiency judgment against defendants.

        Accordingly, because plaintiff has shown that "the

appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment," Cal. Civ. Proc. Code § 708.620, the court will appoint Kevin Singer as a post-judgment receiver.

II. Preliminary Injunction in Aid of Receivership

"A court has the power to issue a preliminary injunction to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies." Republic of the Philippines v. Marcos, 862 F.2d 1355, 1364 (9th Cir. 1988); see also, e.g., Joe Hand Promotions v. Saddeldin, Civ. No. 1:09-2197 AWI GSA, 2011 WL 1806919, at *3 (E.D. Cal. May 10, 2011) (appointing receiver to sell defendant's alcoholic beverage licenses and enjoining defendant from the "sale, transfer, or other disposition" thereof). A plaintiff seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008).

While injunctive relief is an "extraordinary remedy," id. at 22, a preliminary injunction in aid of receivership is no more extraordinary than the appointment of a receiver itself. See Police & Fire Dep't Sys. of City of Detroit v. Orchard Park, LLC, Civ. No. 08-5316 PJH, 2009 WL 481266, at *5 (N.D. Cal. Feb. 24, 2009). Such an injunction "simply makes explicit that which is implicit in the judicial act of appointment itself; namely, that the receiver possess[es] and is entitled to exercise all powers, and perform all duties and responsibilities necessary to

1    accomplish the tasks of the receivership without interference
2    from [defendants] or any other third party." Id.
3           As explained above, plaintiff has satisfied the first
4    three prongs of this inquiry: it has already obtained a favorable
5    judgment, has established a likelihood that it will suffer
6    irreparable harm as a result of defendants' mismanagement of the
7    property, and has demonstrated that appointment of a receiver
8    would further the interests of all parties in the action.  To the
9    extent that an injunction would further the aims of the
10   receivership, plaintiff has demonstrated that it will serve the
11   public interest insofar as it will facilitate the transfer of the
12   property to a new owner and increase the likelihood that the
13   United States Small Business Administration will recover the
14   money owed to it under the terms of the judgment. See Orchard
15   Park, 2009 WL 481266, at *5 (finding that the public interest was
16   served by preventing interference with the receiver).
17   Accordingly, the court will grant plaintiff's motion for a
18   preliminary injunction in aid of receivership.
19          IT IS THEREFORE ORDERED that plaintiff's motion to
20   appoint a post-judgment receiver and for a preliminary injunction
21   in aid of receivership be, and the same hereby is, GRANTED.
22          IT IS FURTHER ORDERED that Kevin Singer of Receivership
23   Specialists is hereby APPOINTED as receiver (the "Receiver") to
24   take possession, custody and control of the property (sometimes
25   collectively referred to as the "Receivership Estate") for the
26   purposes of maintaining, managing and operating the property
27   pending the foreclosure sale, paying property taxes/insurance to
28   the extent that income is adequate and selling the

8

roperty.

IT IS FURTHER ORDERED that the Receiver may manage, preserve, protect and secure the Receivership Estate, in accordance with the following terms and conditions:

1. Before entering into his duties, the Receiver shall execute a Receiver's oath and file a bond with this court, from a surety acceptable to this court, in the amount of $10,000, conditioned upon the faithful performance of the Receiver's duties. Upon filing of the bond and oath, the Receiver shall be vested with all the powers and responsibilities of a receiver as specifically set forth herein.

2. Powers of Receiver: After so qualifying, the Receiver shall have the power and obligation to do the following:

(a) Collection of Rent, Income and Profits: The Receiver shall be vested with the authority to collect any and all rents, income and profits derived from the property. The Receiver shall also be vested with the authority to demand, collect and receive rents and other income and proceeds with respect to the property and account for all sums received under order of this court.

(b) Acquire Books and Records of the Property: The Receiver shall immediately acquire from defendants, all keys, all books and records, books of account, ledgers, operating statement, budgets, all banking records, real estate tax bills wherever located, applicable to the property, all lease and/or rental agreements (confirmed or in progress), leasehold interests, and all documents, records and accounts pertaining to the operation of the property, which shall include, but not be limited to, all information contained on computers and any and all software

9

relating thereto.

(c) Acquire Documents Relating to Debt on the Properties: The Dara Defendants shall immediately provide to the Receiver all documentation pertaining to utilities, mortgages, insurance, and other debts pertaining to the Property (the "Serviceable Debts");

(d) Sell the Property: The Receiver shall have the authority to sell the property in the manner provided for execution of judgments pursuant to California Code of Civil Procedure sections 729.010 to 729.090, without the right of redemption. The Receiver shall have the authority to market the property in any manner that in her discretion, and in consultation with plaintiff, will garner the highest price for the property and to incur and receive reimbursement for his costs for doing so from the proceeds of the sale of the property.

(e) Other Acts Requiring court Approval: The Receiver may also perform such acts as may be further ordered by this court.

3. Receiver's Hourly Rate: The Court hereby approves hourly rates of $250 per hour, plus expenses for the services of Kevin Singer as Receiver. The Receiver is authorized to pay ordinary and necessary expenses associated with operating and managing the property. The Receiver is further authorized to pay additional expenses which were necessarily incurred by him each month.

4. Receiver's Employment of Others: The Receiver is not authorized to employ other individuals to aid him in his duties except upon advance approval by this Court.

5. Expenses Prior to Receivership's Possession: The Receiver shall not be responsible for payment of any utility

bills, unpaid payroll expenses or other unpaid invoices for services or utilities incurred by, or for the benefit of, defendants or the Receivership Estate prior to the Receiver taking possession of the Receivership Estate.

6. Bank Accounts: The Receiver shall have the power to take control of and acquire all funds from any existing bank accounts held by the property or the Receivership Estate. The Receiver shall have the power to open new bank accounts or other financial instruments or accounts as necessary with an FDIC insured institution, which are not parties to this case, in any state or domain for the administration of the Receivership Estate. Monies coming into the possession of the Receiver and not expended for any purposes herein authorized shall be held by the Receiver.

7. Order of Disbursement of Revenues: The Receiver shall apply and disburse the revenues collected as follows, and in the following order:

(a) Serviceable Debt on Properties: Any and all accounts payable, insurance premiums, mortgages and/or taxes or associated reserves related to the property. So long as Receiver has fulfilled his obligation to collect all income, profits, rents and revenues from the property in a timely manner, Receiver shall not be responsible for any shortfall between the revenue collected and the Serviceable Debt on the properties.

(b) Ordinary and Necessary Expenses of Operating and Managing Property: Any and all expenses ordinarily incurred in the operation or management of the property, such as, without limitation: property taxes, insurance, utilities and other

expenses for maintaining common area maintenance, or any other services required to be provided under tenant leases.

    (c)   Receiver's Hourly Fees: Hourly fees incurred by the Receiver.

    (d)   Receiver's Necessary Expenses: Costs and expenses necessarily incurred by the Receiver in the fulfillment of duties as hereinabove provided.

    (e)   Disbursement of Proceeds Upon Sale. Upon the sale of any property of the Receivership Estate, the Receiver shall disburse, or if appropriate, instruct escrow to distribute all net funds resulting from said sale(s) in the following order:

    (i)   First, to the payment of all fees and expenses incurred by the Receiver and its professionals in managing the Receivership Estate;

    (ii) Second, to the expenses of administering the receivership;

    (iii) Third, to plaintiff to satisfy the judgment entered in this case.

    (f)   Other Costs: All expenses reasonably necessary to preserve and protect the property.

    8.   Monies Not Expended: All monies coming into the possession of the Receiver and not expended for any of the purposes authorized above shall be held by the Receiver in his trust account pending further order of this Court.

    9.   Parties' Right of Inspection:  Plaintiff, and its officers, employees and agents shall have access, upon one week notice, to inspect the Receivership Estate and the monies (upon reasonable advance notice to the Receiver) to enable them to

review the same from time to time during the pendency of this Receivership.

    10.   Termination of Receivership: Discharge of the Receiver shall require a court order after a properly noticed motion approving the Receiver's Final Report and Account and any exoneration of the Receiver's bond.

       IT IS FURTHER ORDERED that the Receiver and any of the parties may at any time, apply to this Court for further or other instructions or orders and for further powers necessary to enable the Receiver to perform the Receiver's duties properly on either an ex-parte basis or via noticed application or motion on regular or shortened time.

       IT IS FURTHER ORDERED that no individual or entity may sue the Receiver without first obtaining permission of the court.

       IT IS FURTHER ORDERED that defendants and all persons acting under, in concert with, or for them shall do the following:

    1.   <u>Provide Books and Records of the Property</u>: Defendants shall provide to the Receiver in a prompt and timely manner: the property, all keys, all books and records, books of account, ledgers, operating statement, budgets, all banking records, real estate tax bills wherever located, applicable to the Property, all lease and/or rental agreements (confirmed or in progress), leasehold interests, and all documents, records and accounts pertaining to the operation of the [roperty, which shall include, but not be limited to, all information contained on computers and any and all software relating thereto.

    2.   <u>Provide Documentation Regarding Serviceable Debt on</u>

Properties: Defendants shall provide to the Receiver in a prompt and timely manner all documentation pertaining to utilities, mortgages, insurance, and other debts pertaining to the property.

3. Insurance Information: Defendants shall immediately advise the Receiver as to the nature and extent of insurance coverage on the property.

4. Verification: Within ten (10) calendar dates of the date that this Order is served on Defendants, Defendants shall serve on the Receiver written verification of the source of all said monies being turned over as required by this Order.

5. Act in Accordance With This Order: Defendants shall cooperate in carrying out the terms of the Court's Order as described herein.

6. Order Not to Commit Waste or Interfere With Receiver's Duties Under This Order: Defendants and all other persons acting in concert with them who have actual or constructive knowledge of this Order, shall not, without prior Court authorization:

(a) Commit or permit any waste of the assets or any part thereof, or suffer or commit or permit any act or any part thereof in violation of law, or remove, transfer, encumber or otherwise dispose of any of the Receivership Estate or any part thereof;

(b) Demand, collect, receive, discount or in any other way divert or use any of the monies or accounts receivable of the property;

(c) Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Order;

(d) Expend, disburse, transfer, assign, sell, convey,

Case 2:09-cv-02356-WBS-EFB   Document 119   Filed 05/02/14   Page 15 of 15

1  devise, pledge, mortgage, create a security interest in,
2  encumber, conceal or in any manner whatsoever deal in or dispose
3  of the whole or any part of the assets of the property or the
4  Receivership Estate without prior Court Order;
5       (e)  Terminate or otherwise affect any of the utilities that
6  service the Receivership Estate prior the Receiver's appointment;
7       (f)  Accelerate the due date of any obligation or claimed
8  obligation, enforcing any lien upon, or taking or attempting to
9  take possession of, or obtaining possession of, the property or
10 the Receivership Estate, including, without any limitation, the
11 establishment, granting or perfection of any such security
12 interest, without prior Court order;
13      (g)  Do any act which will, or would tend to, materially
14 impair, defeat, divert, prevent or prejudice the preservation of
15 the assets of the Receivership Estate.
16           IT IS FURTHER ORDERED that Defendants and their
17 respective agents, servants, employees, assignees, successors,
18 representatives, attorneys, and all persons acting under their
19 direction or on their behalf, are restrained and enjoined from
20 violating the terms of this Order without obtaining prior
21 authorization from the court.
22 Dated:  May 2, 2014

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

15