1   Eric S. Pezold, Bar No. 255657
    Brett H. Ramsaur, Bar No. 281566
2   SNELL & WILMER L.L.P.
    600 Anton Blvd, Suite 1400
3   Costa Mesa, California  92626-7689
    Telephone:    714.427.7000
4   Facsimile:    714.427.7799
    Email:        epezold@swlaw.com
5                 bramsaur@swlaw.com

6   Attorneys for Plaintiff
    HSBC BANK USA, National Association, as Indenture
7   Trustee for the benefit of the Noteholders and the
    Certificateholders of Business Loan Express Business
8   Loan Trust 2005-A

9                       UNITED STATES DISTRICT COURT

10                      EASTERN DISTRICT OF CALIFORNIA

11

12  HSBC BANK USA, National Association, as        Case No. 2:09-CV-02356-WBS-EFB
13  Indenture Trustee for the benefit of the
    Noteholders and the Certificateholders of      **PLAINTIFF'S APPLICATION FOR**
14  Business Loan Express Business Loan Trust       **ISSUANCE OF ORDER DIRECTING**
    2005-A,                                         **STARS HOLDING CO. LLC, AZAD**
15                                                  **AMIRI AND SARBJIT S. KANG TO**
                    Plaintiff,                      **SHOW CAUSE WHY THEY SHOULD**
16                                                  **NOT BE HELD IN CIVIL CONTEMPT;**
              v.                                    **SUPPORTING MEMORANDUM OF**
17                                                  **POINTS AND AUTHORITIES**
    DARA PETROLEUM, INC. dba WATT
18  AVENUE EXXON, a California corporation;         [No hearing required]
    SARBJIT S. KANG, an individual; NARGES
19  EGHTESADI, an individual; U.S. SMALL
    BUSINESS ADMINISTRATION, a United
20  States government agency; and DOES 1
    through 20, inclusive,
21
                    Defendants.
22

23  **TO THE HONORABLE WILLIAM B. SHUBB, UNITED STATES DISTRICT JUDGE,**

24  **STARS HOLDING CO. LLC, AZAD AMIRI, SARBJIT S. KANG AND ALL OTHER**

25  **PARTIES ENTITLED TO NOTICE:**

26          HSBC Bank USA, National Association, as Indenture Trustee for the benefit of the

27  Noteholders and the Certificateholders of Business Loan Express Business Loan Trust 2005-A

28  ("HSBC"), by and through undersigned counsel Snell & Wilmer L.L.P., applies to the Court (the

APPLICATION FOR ORDER TO SHOW
CASE RE CIVIL CONTEMPT

1   "Application") for issuance of an order to show cause ("OSC") why Stars Holding Co. LLC

2   ("Stars"), Azad Amiri ("Amiri") and Sarbjit S. Kang ("Kang") should not be held in civil

3   contempt for violation of the *Memorandum and Order re: Motion to Appoint Receiver; Motion*

4   *for Preliminary Injunction in Aid of Receiver* (the "Receivership Order") entered on May 2, 2014

5   (docket no. 119).

6          This Motion is based upon the attached memorandum of points and authorities, the

7   Declaration of Eric S. Pezold, concurrently-filed request for judicial notice, the record in this

8   case, and any other pleadings or papers the Court may allow.

9          Pursuant to the Receivership Order, the Court appointed Kevin Singer of Receivership

10   Specialists as a post-judgment receiver to take possession, custody and control of the real and

11   personal property located at 3449 El Camino Avenue, Sacramento, California 95821 (the

12   "Property") for the purposes of maintaining, managing and operating the Property pending the

13   foreclosure sale, paying property taxes/insurance and selling the Property.

14          In conjunction with Federal Rule of Civil Procedure 65, the Receivership Order imposes

15   an injunction that allows the receiver to perform all duties and responsibilities necessary to

16   accomplish the tasks of the receivership without interference from defendants or any other third

17   party. *See* Receivership Order, 8:1-2. Indeed, Kang and all other persons acting in concert with

18   him—including Stars and Amiri—were and are enjoined from "directly or indirectly interfer[ing]

19   in any manner with the discharge of the Receiver's duties . . ." *Id.* at 14:14-27. Kang, Stars and

20   Mr. Amiri were and are further enjoined from "do[ing] any act which will, or would tend to,

21   materially impair, defeat, divert, prevent or prejudice the preservation of the assets of the

22   Receivership Estate." *Id.* at 15:13-15.

23          In violation of the injunction, Stars, Amiri and Kang facilitated, orchestrated and helped

24   prosecute three bad faith bankruptcy petitions on behalf of one of the named defendants herein,

25   Dara Petroleum, Inc. ("Dara"), solely for their own benefit. Specifically, because they stood to

26   gain financially, Stars, Amiri and Kang facilitated the bankruptcy cases to improperly tie up the

27   Property and prevent the receiver from carrying out his duties under the Receivership Order (i.e.,

28   sell the Property). As part of its memorandum decision dismissing the second bankruptcy case

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

- 2 -

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

1   for bad faith, the bankruptcy court explicitly found that "the filing of the bankruptcy case [was]

2   *clearly* an attempt to circumvent the Receivership Order and forestall Singer's efforts to sell the

3   Property to satisfy the Judgment, all for the benefit of a non-debtor party, Stars" (emphasis

4   added).

5          Accordingly, HSBC prays that this Court issue an OSC why Stars, Amiri and Kang should

6   not be held in civil contempt and ordered to pay HSBC's fees and costs in connection with the

7   bankruptcy cases in substantially the form of the Proposed Order to Show Cause attached hereto

8   as **Exhibit A**.

9

10

11  Dated: March __11__, 2015                    SNELL & WILMER L.L.P.

12                                               By: _____
                                                     Eric S. Pezold
13                                                   Brett H. Ramsaur
                                                     Attorneys for Plaintiff
14                                                   HSBC BANK USA, National Association,
                                                     as Indenture Trustee for the benefit of the
15                                                   Noteholders and the Certificateholders of
                                                     Business Loan Express Business Loan
16                                                   Trust 2005-A

17

18

19

20

21

22

23

24

25

26

27

28

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

- 3 -

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## <u>INTRODUCTION</u>

Because of Stars', Amiri's and Kang's violations of the injunction imposed by the Receivership Order, HSBC was necessarily forced to defend three bad faith bankruptcy filings in two separate federal judicial districts and bring the instant Application to recover the losses it suffered as a result.  Indeed, Stars, Amiri and Kang knowingly violated the Receivership Order numerous times by either directly prosecuting or aiding and abetting Dara in its bankruptcy filings.  Indeed, Stars, Amiri and Kang initiated, facilitated, orchestrated and financed Dara's bankruptcy filings solely to circumvent and undermine the legal effect of this Court's Receivership Order––despite never having appropriately appealed such order herein––and to materially prevent the foreclosure of the Property by the receiver.  As president, Kang directly consented to this conduct and has affirmatively signed each of the bankruptcy petitions.  Stars, Amiri and Kang undertook these actions despite their direct knowledge of the Receivership Order, their knowledge that Dara did not actually own the Property in question (indeed, Dara transferred ownership of the Property to Stars after entry of judgment in this case) and HSBC's insistence—and subsequent validation from three different bankruptcy judges—that the bankruptcy cases were clearly filed as blatant bad faith attempts to circumvent the Receivership Order.

## II.

## <u>FACTUAL BACKGROUND</u>

### A.    <u>The Appointment of the Receiver</u>

On May 2, 2014, the Court entered the Receivership Order which appointed Mr. Singer as post-judgment receiver to take possession, custody and control of the Property for the purposes of maintaining, managing and operating the Property pending the foreclosure sale, paying property taxes/insurance and selling the Property.[1]

---

[1]    *See* Request for Judicial Notice ("RJN"), Exh. 1.

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

- 4 -

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

1   Among other provisions, the Receivership Order explicit imposes an injunction that

2   allows the receiver to perform all duties and responsibilities necessary to accomplish the tasks of

3   the receivership without interference from defendants or any other third party.[2]  Indeed, Kang and

4   all other persons acting in concert with him—including Stars and Amiri—were and are enjoined

5   from "directly or indirectly interfer[ing] in any manner with the discharge of the Receiver's duties

6   . . ."[3]  Kang, Stars and Amiri were and are further enjoined from "do[ing] any act which will, or

7   would tend to, materially impair, defeat, divert, prevent or prejudice the preservation of the assets

8   of the Receivership Estate."[4]

9   **B.    The First Bad Faith Bankruptcy Filing**

10   In early May 2014—one week after entry of the Receivership Order—Dara filed a

11   voluntary chapter 7 petition in the United States Bankruptcy Court for the Eastern District of

12   California, Sacramento Division, thereby commencing case no. 14-24935-B-7.  Kang signed the

13   petition.  On its petition, Dara listed its street address as "3449 El Camino Avenue, Sacramento,

14   California 95821" and its county of residence as "Sacramento."[5]

15   Immediately thereafter, HSBC filed an emergency motion to dismiss which was set for

16   hearing on shortened time on May 20, 2014.  Stars, by and through counsel Richard Stoll, and

17   Amiri appeared at the hearing on HSBC's motion.  For the numerous reasons stated at the

18   hearing, the bankruptcy court granted HSBC's motion and dismissed Dara's case by order entered

19   May 29, 2014.[6]

20   **C.    The Second Bad Faith Bankruptcy Filing and Transfer to the Eastern District of**

21   **California**

22   Undeterred, only 12 days after Judge Holman dismissed the first bankruptcy case and

23   Singer resumed his duties, Dara and Kang—with the assistance of Stars and Amiri—filed yet

24   _____

25   [2]   *Id.* at Page 8, Lines 1-2.

25   [3]   *Id.* at Page 14, Lines 14-27.

26   [4]   *Id.* at Page 15, Lines 13-15.

27   [5]   *See* RJN, Exh. 2.

28   [6]   *See* RJN, Exh. 3.

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY        19623748        - 5 -        APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

1   another bankrupcy.  Shockingly, however, Dara commenced its case in the United States

2   Bankruptcy Court for the ***Northern District of California, Oakland Division***.

3          To facially support its filing in a completely different federal district, Kang changed

4   Dara's street address to "55 Oak Court, Suite 100, Danville, California 94526" and its county of

5   residence to "Contra Costa."  Curiously, Dara still listed the location of its principal assets at

6   "3449 El Camino Avenue, Sacramento, California 95821."[7]

7          Despite Dara's representations, its address of record with the California Secretary of State

8   remained 8994 Greenback Lane, Orangevale, California 95662.[8]

9          As it had done previously, HSBC immediately filed another emergency motion—this time

10  to transfer venue back to the Eastern District of California or, in the alternative, dismiss the case

11  with the imposition of sanctions—which was set for hearing on shortened time on June 19, 2014.

12         Among many other attendees, Stars, Stars' counsel, Amiri and Kang appeared at the June

13  19, 2014, hearing on HSBC's motion in front of Judge Hammond.  The representations made by

14  both Dara's counsel, Mr. Knight, and Stars' counsel, Mr. Portelo, during the hearing were

15  baffling and further supported Kang's, Stars' and Amiri's orchestration of Dara's bad faith

16  bankruptcy filing.  Indeed, Mr. Knight characterized Stars' relationship with Dara as its

17  "economic lifeline" and "financial lifeline in order to make proper payments to HSBC."[9]  Mr.

18  Portelo echoed Mr. Knight's representations and added not only did "Stars Holding [take] over

19  the operations of Dara Petroluem" but also that it "took over the [Property] and the debts . . ."[10]

20  Incredulous, the bankruptcy court further inquired if Stars had assumed all of Dara's liabilities.

21  In response, Mr. Portelo admitted that it had indeed assumed all liabilities and further explained

22  that "Stars is the entity that's kind of holding the bag."[11]

23

---

24  [7]      *See* RJN, Exh. 4.

25  [8]      *See* RJN, Exh. 5.  To be clear, Orangevale is a suburb of Sacramento, California and
    unquestionably within the boundaries of Sacramento County.

26  [9]      *See* Pezold Decl. ¶¶ 2-3, Exh. A, Page 8.

27  [10]     *Id.* at Pages 11-12.

28  [11]     *Id.* at Page 12.

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

- 6 -

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

1   Aside from the above mentioned representations, Mr. Knight struggled significantly to

2   answer simple, direct questions from Judge Hammond regarding the nature and scope of Dara's

3   business.  To illustrate, Mr. Knight and Judge Hammond engaged in the following exchange:

| | |
|---|---|
| The Court: | What does the debtor do? |
| Mr. Knight: | Again, the debtor deals in energy and gas operations. |
| The Court: | How so?  Deals in, how so?  Who do they enter into contracts with? |
| Mr. Knight: | Various parties, clients. |
| The Court: | Such as? |
| Mr. Knight: | Well, I don't have the names of those particular individuals. |
| The Court: | But there are no executory contracts listed on your schedules. |
| Mr. Knight: | That's correct, Your Honor, but the—he is through various parties doing these… |
| The Court: | Who is he? |
| Mr. Knight: | Well, the parties involved in Dara Petroleum, Your Honor.  I'll let—the parties involved in Dara Petroleum are doing these deals through various individuals and they are doing business here in this district. |
| The Court: | What business are they doing? |
| Mr. Knight: | They are doing various negotiations, gas stations, things of that nature, Your Honor. |
| The Court: | Seriously do they have a contract with anyone? |
| Mr. Knight: | Well, I would have to get back to the court. |
| The Court: | Do they, have they borrowed money from anyone?  With the authority here of HSBC and SBA? |
| Mr. Knight: | I would have to get back to the court. |
| The Court: | Did they owe money to anyone other than HSBC and SBA? |
| Mr. Knight: | Well, no, Your Honor, they don't owe any money to anyone else. |
| The Court: | Do they have any employees? |
| Mr. Knight: | They do have one or two employees, I don't have… |
| The Court: | Who is employed by Dara Petroleum? |
| Mr. Knight: | Various personalities, I don't have a… |
| The Court: | Doing what? |
| Mr. Knight: | Just dealing with trying to negotiate gas stations. |
| The Court: | Okay you keep talking about negotiating but what are they negotiating?  They don't own gas stations, correct? |
| Mr. Knight: | Right. |
| The Court: | They don't supply gas stations is that correct? |
| Mr. Knight: | That is correct, Your Honor, but they have… |
| The Court: | They don't…they are not operating gas stations is that correct? |
| Mr. Knight: | Not currently, Your Honor. |
| The Court: | So what are they doing? |
| Mr. Knight: | They are in the—in the kind of business that they are dealing with… |
| The Court: | These really aren't trick questions.  I'm trying to find out what it is that business that they are doing is.[12] |

---

[12] *Id.* at Pages 9-10.

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

1    Judge Hammond further questioned Mr. Knight regarding whether Dara even had legal

2    authorization to file a bankruptcy case:

3    | **The Court**: | Wait a minute, back up. Mr. Knight come back to the stand. You filed for
4    | | a corporation. A corporation has to normally do a corporate resolution authorizing the filing. Who voted for this filing?
5    | Mr. Knight: | I don't have that information, Your Honor. ***I'll let Stars speak to that***.
     | **The Court**: | Excuse me, Mr. Knight, this is your client.
6    | Mr. Knight: | It is, Your Honor, um, it is, Your Honor. I've been functioning on an emergency basis with regard to this activity and there is certain information
7    | | I don't have because of the focus that I've placed on this case.
8    | **The Court**: | And yet you have put your bar number and filed this case.
     | Mr. Knight: | This is correct, Your Honor.[13]

9    To reiterate, when directly asked whether the requisite parties executed a corporate

10   authorization for Dara to legally file bankruptcy, Mr. Knight ***deferred to Stars*** to answer the

11   question.

12   On June 24, 2014, the court transferred Dara's case back to the United States Bankruptcy

13   Court for the Eastern District of California.[14] Judge Hammond specifically found that Dara

14   engaged in forum shopping after experiencing adverse rulings in this Court and the United States

15   Bankruptcy Court for the Eastern District of California.[15]

16   **D.    The 341(a) Meeting of Creditors**

17   On July 21, 2014—shortly after the bankruptcy case was transferred back to the Eastern

18   District of California—the United States Trustee (the "UST") conducted the 341(a) meeting of

19   creditors. Among others, Amiri, Dara's accountant and treasurer, testified at the meeting.[16]

20   As expected, Dara's president, Kang, testified that Dara is completely controlled by

21   Stars.[17] Indeed, both Messrs. Amiri and Kang acknowledged that Dara has no assets (i.e., real or

22   personal property, including the subject gas station), no expenses, no income, no bank accounts,

23

24   ———————————————

25   [13]    *Id.* at Page 11.

26   [14]    *See* RJN, Exh. 6.

     [15]    Pezold Decl. at ¶ 4.

27   [16]    *Id.* at ¶¶ 5-7, Exh. B, Page 2.

28   [17]    *Id.* at Page 13.

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

- 8 -

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

1    no employees and no business operations.[18]   Kang even stated that he had never even been to the

2    address that he and Amiri had identified as Dara's principal place of business.[19]

3          Incredibly, Amiri testified that Stars pays all of Dara's expenses.[20]   Amiri simply passes

4    all liabilities—such as taxes—along to Stars for payment.   Kang knows nothing about the

5    business and even testified that Amiri solely runs Dara's "business" operations.   Kang even went

6    so far as to say that that he has *no* authority to make any decisions about the business.[21]

7          In addition, Stars is also paying Dara's attorneys' fees, yet Dara's counsel did not disclose

8    any of his connections with Stars.[22]   Without question, Stars hired Mr. Knight to represent Dara in

9    the bankruptcy case and paid all of Dara's counsel's attorneys' fees.[23]   Stars—not Dara—paid the

10   filing fee for the bankruptcy case.[24]

11   **E.    Dismissal of the Second Bankruptcy Case**

12         Immediately upon transfer, HSBC filed yet another motion to dismiss the bankruptcy

13   case.   After conducting a hearing on the motion, the bankruptcy court took the matter under

14   advisement.

15         On or about August 26, 2014, the bankruptcy court issued a lengthy memorandum

16   decision granting HSBC's motion to dismiss.[25]   In its decision, the bankruptcy court

---

[18]    *Id.* at Pages 1-35.

[19]    *Id.* at Pages 8-9.   In response to the question "And have you ever been [to 55 Oak Court, Suite 100]?" posed by Mr. Jason Blumberg, Kang responded "No, I never went there.   Ever."

[20]    *Id.* at Page 31.

[21]    *Id.* at Page 23.

[22]    *Id.*

[23]    *Id.*   In response to the question "Mr. Kang, did Dara hire Mr. Knight to represent Dara in this bankruptcy case?" posed by Mr. Eric Pezold, Kang responded "No. Stars did."   Amiri also answered the question by stating "Stars paid for it."   In the follow-up question "Is it your understanding, Mr. Kang, that Stars Holding paid Mr. Knight for his services in this case?", Kang responded "Yes."

[24]    *Id.*   In response to the question "Who paid the filing fee for this bankruptcy case?" posed by Mr. Eric Pezold, Kang responded that "Stars Holding paid it."   When pressed for details, Kang responded that the filing fee was neither a gift nor a capital contribution, and he had no idea whether the transaction would be reflected in Dara's books and records.

[25]    *See* RJN, Exh. 7.

1   unequivocally concluded that the bankruptcy case was filed in bad faith. [26]  The bankruptcy court

2   strongly articulated that because Dara did not appeal the Receivership Order, "the filing of the

3   bankruptcy case [was] clearly an attempt to circumvent the Receivership Order and forestall

4   Singer's efforts to sell the Property to satisfy the Judgment, all for the benefit of a non-debtor

5   party, Stars."[27]

6   **F.   The Latest Bad Faith Bankruptcy Filing**

7        After dismissal of the second bankruptcy case, Singer resumed his receivership duties and

8   has actively worked to notice the Property for sale.  Indeed, because of these efforts, the Property

9   was scheduled for sale on February 26, 2015.  However, on February 25, 2015, the eve of the

10  execution sale, Kang caused Dara to file yet another bankruptcy petition in the United States

11  Bankruptcy Court for the Eastern District of California, Sacramento Division, thereby

12  commencing case no. 15-21439.[28]

13       Similar to its previous filings, Kang signed the petition and listed Dara's street address as

14  "3449 El Camino Avenue, Sacramento, California 95821" and its county of residence as

15  "Sacramento."

16       HSBC immediately filed a motion to dismiss, which was set for hearing on shortened time

17  by the bankruptcy court on March 9, 2015.  At the hearing, the bankruptcy court adopted Judge

18  Holman's prior findings that the bankruptcy case was filed in bad faith solely to circumvent the

19  Receivership Order and dismissed Dara's case.  The bankruptcy court has not yet entered an order

20  memorializing that ruling.[29]

21

22

23

24

25  ───────────────

    [26]    *Id.*

26  [27]    *Id.*

27  [28]    *See* RJN, Exh. 8.

28  [29]    Pezold Decl. ¶ 8.

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

- 10 -

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

### III.

### THE COURT SHOULD HOLD STARS, AMIRI AND KANG IN CONTEMPT

### FOR VIOLATING THE RECEIVERSHIP ORDER

**A.**    **Kang, Stars and Amiri Are Bound by the Receivership Order**

Federal courts have the power to issue injunctions that require an individual to do or refrain from doing certain acts. *See e.g., Nken v. Holder*, 556 U.S. 418 (2009). Indeed, "[t]he sole function of an . . . injunction is to forestall future violations . . ." *See United States v. Oregon State Med. Soc.*, 343 U.S. 326, 333 (1952).

Under the Federal Rules of Civil Procedure, injunctions bind not only named parties, but also a party's "officers, agents, servants, employees, and attorneys" and "*other persons who are in active concert or participation*" with them. Fed. R. Civ. P. 65(d)(2) (emphasis added). Rule 65(d) is the codification of the common law rule that a nonparty to a legal proceeding can be held in civil contempt for violating a court-ordered injunction. *See Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945) (Rule 65(d) "is derived from the common-law doctrine that a decree of injunction binds the parties defendants but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control.").[30]  Indeed, nonparties "who are in active concert or participation with" a bound party are themselves bound and may be liable for aiding and abetting the party's contempt. Fed. R. Civ. P. 65(d); *see also Regal Knitwear*, 324 U.S. at 14 ("[D]efendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding . . ."). Persons may be

---

[30]    In conjunction with the rules, the Receivership Order required defendants ***and all third parties acting in concert with them*** to refrain from interfering in any manner with Singer's performance of his duties or other actions taken in furtherance thereof. Of course, the Receivership Order contains an explicit injunction that allows the receiver to perform all duties and responsibilities necessary to accomplish the tasks of the receivership without interference from defendants or any other third party. *See* Receivership Order, 8:1-2. Further, Kang and all other persons acting in concert with him—including Stars and Amiri—were and are enjoined from "directly or indirectly interfer[ing] in any manner with the discharge of the Receiver's duties . . ." Receivership Order, 14:14-27. Kang, Stars and Amiri were and are further enjoined from "do[ing] any act which will, or would tend to, materially impair, defeat, divert, prevent or prejudice the preservation of the assets of the Receivership Estate." *Id.* at 15:13-15.

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

- 11 -

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

1    deemed to have actual knowledge of the injunction if they knew of its existence and basic terms.

2    *United States v. Baker*, 641 F.2d 1311, 1316-17 (9th Cir. 1981).

3          Here, Kang, as a named party to this action, is indisputably bound by the Receivership

4    Order.  As discussed below, Stars and Amiri are bound by the Receivership Order as well.

5          1.    <u>Stars and Amiri Were in Active Concert and Participation with Kang and Dara</u>

6          Here, it is undisputed that Stars and Amiri acted in concert with and participated in the

7    bankruptcy filings with Dara.  Bluntly, Stars and Amiri were the drivers behind all of Dara's

8    actions.  Mr. Knight, Dara's bankruptcy counsel, explicitly characterized Stars—which he stated

9    was controlled solely by Amiri—as the "economic lifeline" of Dara.  Stars' own attorney, Mr.

10   Will Portelo, echoed similar sentiments to the bankruptcy court, specifically stating that "Stars

11   Holding took over the operations of Dara Petroleum," including all property subject to the

12   receivership estate and all of Dara's debts including but not limited to making payments to HSBC

13   on Dara's behalf.  Mr. Portelo flatly admitted that "Stars is the entity that's kind of holding the

14   bag."  Shockingly, when asked whether Dara even had authorization to file bankruptcy, Dara's

15   counsel **deferred to Stars to answer the question**.

16         Further, during the mandatory 341(a) meeting of creditors conducted in the second

17   bankruptcy case, Mr. Knight unequivocally stated that the bankruptcy case was not a sham

18   because it served, in part, to protect "Stars' interests" therein.  Incredibly, numerous times during

19   the same 341(a) meeting, Amiri admitted that Stars' office is located in the same building as

20   Dara's purported office, that he wants Stars to settle this case because it wants the subject

21   Property and that Stars obtained loans and paid liabilities all for the sole benefit of Dara.  Stars

22   not only paid Dara's filing fee but also paid Mr. Knight's retainer and the fees/costs incurred to

23   represent Dara in the bankruptcy case.

24         2.    <u>Stars and Amiri Knew of the Injunction and Its Basic Terms</u>

25         Because Mr. Knight admitted that all of these actions taken by Stars and Amiri were in

26   direct response to this Court's entry of the allegedly unlawful receivership order, Stars and Amiri

27   without question knew of the injunction and its basic terms (i.e., that no could interfere with the

28

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

- 12 -

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

1    receiver's ability to sell the property).  Of course, it has been Dara's entire goal during the

2    bankruptcy cases to reduce or eliminate the effect of the Receivership Order.

3          Despite knowledge of the injunction and the conduct it explicitly enjoined, Stars and

4    Amiri aided Dara in these actions solely to tie up the Property in bankruptcy and prevent Singer

5    from carrying out his duties under the Receivership Order.  Indeed, as part of its memorandum

6    decision dismissing the second bankruptcy case for bad faith, the bankruptcy court explicitly

7    found that "the filing of the bankruptcy case [was] ***clearly*** an attempt to circumvent the

8    Receivership Order and forestall Singer's efforts to sell the Property to satisfy the Judgment, all

9    for the benefit of a non-debtor party, Stars" (emphasis added).

10   **B.**    **A Finding of Civil Contempt is Appropriate Because Kang, Stars and Amiri Failed**

11         **to Abide by the Terms of the Receivership Order**

12         Generally, failure to obey the terms of an injunction constitutes contempt of court.  *See*

13   *Gon v. First State Ins. Co.*, 871 F.2d 863, 865 (9th Cir. 1989) (an injunction is "an order that is

14   directed to a party, enforceable by *contempt* . . .") (emphasis added); *see also United States .v*

15   *United Mine Workers of America*, 330 U.S. 258, 304 (1947) (outlining that courts compel

16   compliance with injunctions through contempt sanctions); *Chamberlain v. Watkins* (*In re*

17   *Citronelle-Mobile Gathering, Inc.*), 943 F.2d 1297, 1301 (11th Cir. 1991) (court held party liable

18   for civil contempt for violating the terms of a receivership order).  Of course, federal courts have

19   both inherent and statutory authority to punish such contempt and to coerce compliance with their

20   orders. *International Union, UMWA v. Bagwell*, 512 U.S. 821, 831-332 (1994); *see also* 18

21   U.S.C. §§ 401-402; *Young v. United States*, 481 U.S. 787, 793 (1987) ("[I]t is long settled that

22   courts possess inherent authority to initiate contempt proceedings for disobedience to their

23   orders."); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (a court's power to punish for

24   contempt is inherent in all courts and that "[t]his power reaches both conduct before the court and

25   that beyond the court's confines").

26         Nonparties bound by an injunction under Rule 65(d) can be held in civil contempt if they

27   violate a court's order.  *See Reich v. United States*, 239 F.2d 134, 137 (1st Cir. 1956).  As the

28   *Reich* court outlined:

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

- 13 -

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

[O]ne who knowingly aids, abets, assists, or acts in active concert with, a person who has been enjoined in violating an injunction subjects himself to civil as well as criminal proceedings for contempt even though he was not named or served with process in the suit in which the injunction was issued or even served with a copy of the injunction.

As articulated in *International Union*, one of the fundamental purposes of civil contempt is to compensate a party for losses caused by violation of the court order.  *International Union*, 512 U.S. at 827-29; *Koninklijke Philips Elec., N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1042 (9th Cir. 2008).  Further, civil contempt sanctions may be imposed in an ordinary civil proceeding upon notice and an opportunity to heard.  *International Union*, 512 U.S. at 831-32.[31]

To establish civil contempt, a party needs to show: (1) violation of a court order; (2) beyond substantial compliance; (3) not based on a good faith and reasonable interpretation of the order; and (4) by clear and convincing evidence.  *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010) (citing *Labor/Cmty. Strategy Center v. L.A. County Metro. Trans. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009).

Here, all elements for civil contempt are met.  The Court entered the Receivership Order on May 2, 2014, and it was—and remains—a valid and effective order of this Court.  Despite both the rules, well-established case law and the plain language of the Receivership Order itself— which expressly enjoined Kang, Stars and Amiri from interfering with Singer as the court-appointed receiver—Kang, Stars and Amiri violated the Receivership Order by prosecuting, aiding and abetting Dara in its multiple bankruptcy filings.  Indeed, with Kang's consent, Stars and Amiri facilitated, prosecuted and financed three bad faith bankruptcy filings on behalf of Dara *solely* to circumvent and undermine the legal effect of the Receivership Order and to materially impair the receiver's ability to perform his court ordered duties and prevent the preservation of the property subject to the receivership estate.  Of course, the bankruptcy court

---

[31] Civil contempt proceedings are generally initiated by an application for an order to show cause why a party should not be held in contempt for noncompliance with an injunction.  Where an application presents sufficient grounds for contempt, the court will issue an order to show cause and set a time and date for the hearing.  *See Reynolds v. Roberts*, 207 F.3d 1288, 1298, fn. 19 (11th Cir. 2000).

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

- 14 -

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

1   explicitly determined that the second bankruptcy case was filed in bad faith and that "the filing of

2   the bankruptcy case [was] clearly an attempt to circumvent the Receivership Order and forestall

3   Singer's efforts to sell the Property to satisfy the Judgment, all for the benefit of a non-debtor

4   party, Stars."

5   **C.    HSBC is Entitled to Damages for Kang's, Stars' and Amiri's Contempt**

6          Payment by the contemnor of attorneys' fees and costs to the complainant is a common

7   compensatory, remedial civil sanction. *See, e.g., Sheet Metal Workers Int'l Ass'n v. EEOC*, 478

8   U.S. 421, 444 n. 23 (1986). An award of attorneys' fees for civil contempt is within the district

9   court's discretion—no showing of willfulness is required. *Harcourt Brace Jovanovich Legal &*

10  *Prof. Pub., Inc. v. Multistate Legal Studies, Inc.*, 26 F.3d 948, 953 (9th Cir. 1994); *Perry v.*

11  *O'Donnell*, 759 F.2d 702, 704-05 (9th Cir. 1985) (court has direction to award reasonable fees

12  and costs as a remedial measure regardless of whether the contemnor acted willfully); *see also*

13  *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976) (attorneys' fees and costs

14  can be awarded for civil contempt relief); *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th

15  Cir. 1977) (holding that award of attorneys' fees compensation party prevailing on contempt

16  motion "for losses or damages" sustained because of noncompliance). Thus, the goal is to award

17  a party attorneys' fees actually incurred as a result of the contumacy, but the fees must be

18  appropriate and reasonable. *See General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380-81

19  (9th Cir. 1986).

20         In determining the reasonableness of fees, the court employs the "lodestar" method (i.e.,

21  multiplying the number of hours reasonably expended on the litigation by a reasonable hourly

22  rate). *See Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (citing *Jordan v.*

23  *Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) and *McGrath v. County of Nevada*, 67

24  F.3d 248, 252 (9th Cir, 1995)). The lodestar figure acts as the presumptively reasonable fee and

25  may be adjusted using the factors outlined in *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th

26  Cir. 1975) to the extent that such factors are not already subsumed in the initial lodestar

27  calculation. *Morales*, 96 F.3d at 363-64.

28

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

- 15 -

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

1    Here, the Court is authorized to award, and HSBC is entitled to recover, all of its actual

2    expenses incurred to defend the three bad faith bankruptcy filings as compensatory damages, plus

3    its attorneys' fees and costs in connection with prosecuting this Application.  As set forth in the

4    accompanying Pezold Declaration, HSBC seeks the reasonable amount of $84,955.56 in

5    attorneys' fees and costs herein.[32]

6    As of March 10, 2015, HSBC's counsel has expended approximately 209.0 hours at

7    $406.49 per hour in defending against the three bad faith bankruptcy filing and the prosecution of

8    this Application for total professional service fees (including costs) in the amount of $84,955.56.

9    These services included reviewing and analyzing each bankruptcy case and related documents,

10   preparing several necessary motions—including three motions to dismiss and one motion to

11   transfer venue—and attending various court mandated hearings and creditor meetings required

12   under the Bankruptcy Code.  HSBC's actions and litigation fees were a direct result of Kang's,

13   Stars' and Amiri's conduct and the fees are reasonable and justified.

14   Accordingly, HSBC respectfully requests that Kang, Stars and Amiri be held jointly and

15   severally liable for the base amount of $84,955.56 in reasonable attorneys' fees and costs.  Based

16   on the requisite factors, HSBC's requested attorneys' fees and costs are appropriate and

17   reasonable.

18                                            **IV.**

19                                      **CONCLUSION**

20   For the reasons set forth above, Plaintiff respectfully requests the Court issue an order to

21   show cause why Kang, Stars and Mr. Amiri should not be held in civil contempt for violation of

22   the Receivership Order.

23

24

---

25   [32]   Pezold Decl. at ¶¶ 9-15.  This figure represents the total amount of attorneys' fees and
     costs incurred through March 10, 2015.  HSBC respectfully requests the opportunity to
26   supplement the total damage figure with those attorneys' fees and costs incurred from March 11,
     2015, to the date of the hearing on the motion, which would include the time spent to prepare a
27   reply brief to any opposition to the motion and prepare for, and attend, any hearing set by the
     Court herein.

28

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

- 16 -

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

1    Dated: March ___, 2015                    SNELL & WILMER L.L.P.

2                                              By: _____
3                                                  Eric S. Pezold
                                                   Brett H. Ramsaur
4                                                  Attorneys for Plaintiff
                                                   HSBC BANK USA, National Association,
5                                                  as Indenture Trustee for the benefit of the
                                                   Noteholders and the Certificateholders of
6                                                  Business Loan Express Business Loan
                                                   Trust 2005-A
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SNELL & WILMER
ATTORNEYS AT LAW
ORANGE COUNTY

19623748

- 17 -

APPLICATION FOR ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT

# EXHIBIT A

1   Eric S. Pezold, Bar No. 255657
    Brett H. Ramsaur, Bar No. 281566
2   SNELL & WILMER L.L.P.
    600 Anton Blvd, Suite 1400
3   Costa Mesa, California 92626-7689
    Telephone:    714.427.7000
4   Facsimile:    714.427.7799
    Email:        epezold@swlaw.com
5                 bramsaur@swlaw.com

6   Attorneys for Plaintiff
    HSBC BANK USA, National Association, as Indenture
7   Trustee for the benefit of the Noteholders and the
    Certificateholders of Business Loan Express Business
8   Loan Trust 2005-A

9                    **UNITED STATES DISTRICT COURT**

10                   **EASTERN DISTRICT OF CALIFORNIA**

11

12  HSBC BANK USA, National Association, as        Case No. 2:09-CV-02356-WBS-EFB
13  Indenture Trustee for the benefit of the
    Noteholders and the Certificateholders of      **[PROPOSED] ORDER TO SHOW**
14  Business Loan Express Business Loan Trust       **CAUSE WHY STARS HOLDING CO.**
    2005-A,                                         **LLC, AZAD AMIRI AND SARBJIT S.**
15                                                  **KANG SHOULD NOT BE HELD IN**
                     Plaintiff,                     **CIVIL CONTEMPT**
16
         v.                                         Date:         _____ ___, 201__
17                                                  Time:         __:__0 __.m.
    DARA PETROLEUM, INC. dba WATT                   Courtroom:   5
18  AVENUE EXXON, a California corporation;         Judge:        Hon. William B. Shubb
    SARBJIT S. KANG, an individual; NARGES
19  EGHTESADI, an individual; U.S. SMALL
    BUSINESS ADMINISTRATION, a United
20  States government agency; and DOES 1
    through 20, inclusive,
21
                     Defendants.
22

23  **TO STARS HOLDING CO. LLC, AZAD AMIRI AND SARBJIT S. KANG:**

24       HSBC Bank USA, National Association, as Indenture Trustee for the benefit of the

25  Noteholders and the Certificateholders of Business Loan Express Business Loan Trust 2005-A

26  ("HSBC"), by and through undersigned counsel Snell & Wilmer L.L.P., having brought that

27  certain *Application for Issuance of Order Directing Stars Holding Co. LLC, Azad Amiri and*

28  *Sarbjit S. Kang to Show Cause Why They Should Not be Held in Civil Contempt* (the

SNELL & WILMER
———L.L.P.———
ORANGE COUNTY

20472665                                          [PROPOSED] ORDER TO SHOW CAUSE

1   "Application") requesting this Court to issue an order directing Stars Holding Co. LLC ("Stars"),

2   Azad Amiri ("Amiri") and Sarbjit S. Kang ("Kang") to show cause why they should not be held

3   in civil contempt for violation of the *Memorandum and Order re: Motion to Appoint Receiver;*

4   *Motion for Preliminary Injunction in Aid of Receiver* (the "Receivership Order") entered on May

5   2, 2014 (docket no. 119), and said Application having been considered by the Court and good

6   appearing,

7        **IT IS ORDERED** that Stars, Amiri and Kang shall show cause before the undersigned

8   United States District Judge on _____ _____, 201___, at __:__0__.m. in

9   Courtroom 5 of the United States District Court located at 501 I Street, Sacramento, California

10   95814, why they should not be held to be in civil contempt of court due to their violations of this

11   Court's Receivership Order.

12        At the hearing on this Order to Show Cause, if the Court holds Stars, Amiri and/or Kang

13   to be in civil contempt, the Court shall sanction Stars, Amiri and/or Kang for their contemptuous

14   acts.  Such sanctions may include ordering Stars, Amiri and/or Kang to pay compensatory

15   damages, including all reasonable attorneys' fees and costs.

16        **IT IS FURTHER ORDERED** that on or before _____, HSBC

17   shall serve a copy of this Order to Show Cause on Stars, Amiri and Kang via

18   _____.

19        **IT IS FURTHER ORDERED** that any opposition to this Order to Show Cause shall be

20   filed with the Court and served on HSBC by serving its counsel, Eric S. Pezold and Brett H.

21   Ramsaur, at the address listed in the upper left-hand corner of this Order to Show Cause no later

22   than _____ via _____.

23

24

25

26

27

28

1    **IT IS FURTHER ORDERED** that any response to any opposition shall be filed with the

2    Court and served by HSBC on the party who filed the opposition and counsel, if applicable, no

3    later than _____ via _____.

4

5    Submitted by:

6

7    /s/ Brett H. Ramsaur
     Attorneys for Plaintiff

8    Dated:  March 11, 2015

9

10

11

12

13   Dated: March _____, 2015                    _____

14                                               William B. Shubb
                                                 United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HSBC BANK USA v. DARA PETROLEUM, INC.
USDC CASE NO. 2:09-cv-02356-WBS-EFB

1

## PROOF OF SERVICE

2

    I am employed in the County of Orange, State of California.  I am over the age of
3
18 and not a party to the within action; my business address is 600 Anton Boulevard,
Suite 1400, Costa Mesa, CA 92626-7689.

4

    On March 11, 2015, I served, in the manner indicated below, the documents
5
described as

6

**PLAINTIFF'S APPLICATION FOR ISSUANCE OF ORDER DIRECTING
7
STARS HOLDING CO. LLC, AZAD AMIRI AND SARBJIT S. KANG TO
SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL
8
CONTEMPT; SUPPORTING MEMORANDUM OF POINTS AND
AUTHORITIES**

9

10
on the interested parties in this action by placing true copies thereof, enclosed in sealed
envelopes, at Costa Mesa, addressed as follows:

11

Stars Holding Co. LLC                    Stars Holding Co. LLC
12
1514 3rd Avenue                          P.O. Box 5728
Walnut Creek, CA  94597                  Concord, CA  94524
13

Parjmit Singh                            Kevin Singer
14
3449 El Camino Avenue                    RECEIVERSHIP SPECIALISTS
Sacramento, CA  95821                    980 9th Street
15                                       16th Floor
                                         Sacramento, CA 95814
16

17
☒   **BY U.S. MAIL:**  I caused such envelopes to be deposited in the United States
mail at Costa Mesa, California, with postage thereon fully prepaid.  I am readily
18
familiar with the firm's practice of collection and processing correspondence for
mailing.  It is deposited with the United States Postal Service each day and that
19
practice was followed in the ordinary course of business for the service herein
attested to  (C.C.P. § 1013(a)).
20

21
☒   **BY OVERNITE/FEDERAL EXPRESS**:  I caused such envelopes to be
delivered by courier, with next day service, to the offices of the addressees
22
below. (C.C.P. § 1013I(d)).

23
Senior Judge William B. Shubb
24
United States Bankruptcy Court, Eastern District
501 I Street, Courtroom 5, 14th Floor
25
Sacramento, CA  95814

26

27

28

16409375

*HSBC BANK USA v. DARA PETROLEUM, INC.*
*USDC CASE NO. 2:09-cv-02356-WBS-EFB*

☒    **BY ELECTRONIC TRANSMISSION:**  The following parties were served electronically by the Court:

Jeffrey S. Kravitz  …………kravitzlaw@aol.com
John Phillip Mertens ………jmertens@padrm.com,lbutler@padrm.com
Bobbie J. Montoya , cv ……bobbie.montoya@usdoj.gov,
paulette.tremblay@usdoj.gov,janet.bain@usdoj.gov,
usacae.ecfsaccv@usdoj.gov,pamela.beauvais@usdoj.gov,
monica.lee@usdoj.gov,cassie.christensen@usdoj.gov
Eric S. Pezold ……………..epezold@swlaw.com
Leo D. Plotkin ……………..lplotkin@lsl-la.com,hpetrilli@lsl-la.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **March 11, 2015**, at Costa Mesa, California.

/s/ Kimberly A. Collins
Kimberly A. Collins

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

PROOF/CERTIFICATE OF SERVICE

- 2 -

16409375