1 | Eric S. Pezold, Bar No. 255657
Brett H. Ramsaur, Bar No. 281566
2 | SNELL & WILMER L.L.P.
600 Anton Blvd, Suite 1400
3 | Costa Mesa, California  92626-7689
Telephone:     714.427.7000
4 | Facsimile:      714.427.7799
Email:          epezold@swlaw.com
5 |                bramsaur@swlaw.com

6 | Attorneys for Plaintiff
HSBC BANK USA, National Association, as Indenture
7 | Trustee for the benefit of the Noteholders and the
Certificateholders of Business Loan Express Business
8 | Loan Trust 2005-A

9 |

10 | **UNITED STATES DISTRICT COURT**

11 | **EASTERN DISTRICT OF CALIFORNIA**

12 |

13 | HSBC BANK USA, National Association, as Indenture Trustee for the benefit of the Noteholders and the Certificateholders of Business Loan Express Business Loan Trust 2005-A,

Case No. 2:09-CV-02356-WBS-EFB

**DECLARATION OF ERIC S. PEZOLD IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ISSUANCE OF ORDER DIRECTING STARS HOLDING CO. LLC, AZAD AMIRI AND SARBJIT S. KANG TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT**

Plaintiff,

v.

DARA PETROLEUM, INC. dba WATT AVENUE EXXON, a California corporation; SARBJIT S. KANG, an individual; NARGES EGHTESADI, an individual; U.S. SMALL BUSINESS ADMINISTRATION, a United States government agency; and DOES 1 through 20, inclusive,

[No hearing required]

Defendants.

23 | I, Eric S. Pezold, declare as follows:

24 | 1.     I am over the age of 18 years old and am an attorney licensed to practice law

25 | before all courts of the State of California and all federal districts in California.  I am a partner

26 | with the law firm Snell & Wilmer L.L.P. ("Snell") and one of the primary attorneys handling this

27 | matter on behalf of plaintiff HSBC BANK USA, National Association, as Indenture Trustee for

28 | the benefit of the Noteholders and the Certificateholders of Business Loan Express Business Loan

SNELL & WILMER
—— L.L.P. ——
ORANGE COUNTY

20323411

DECLARATION OF ERIC S. PEZOLD

Trust 2005-A ("HSBC").  I make this declaration in support of HSBC's *Application for Issuance of Order Directing Stars Holding Co. LLC, Azad Amiri and Sarbjit S. Kang to Show Cause Why They Should Not be Held in Civil Contempt* (the "Application").  Unless otherwise indicated, I state the following of my own personal knowledge, and if called upon to testify, I could and would competently testify thereto.

2.      Along with Stars, Stars' counsel, Amiri and Kang, I personally appeared at the June 19, 2014, hearing in front of Judge Hammond in Oakland, California on HSBC's motion to transfer venue in front of Judge Hammond.

3.      Although the audio recording of the hearing on the June 19, 2014, motion is accessible on the docket, I—with the help of staff at my firm—transcribed the hearing.  A true and correct copy of the transcription of the June 19, 2014, hearing is attached hereto as **Exhibit A**.

4.      In deciding to transfer venue back to the United States Bankruptcy Court for the Eastern District of California, Judge Hammond specifically found that Dara engaged in forum shopping after experiencing adverse rulings in this Court and the United States Bankruptcy Court for the Eastern District of California.

5.      On or about July 21, 2014, I personally attended the 341(a) meeting of creditors conducted by the United States Trustee in Dara's second bankruptcy case.

6.      Immediately following the conclusion of the 341(a) meeting of creditors, I—with the help of staff at my firm—requested an audio recording of the 341(a) meeting from the UST's office.  Subsequently, I—again with the help of staff at my firm—transcribed the hearing.  A true and correct copy of the transcription of the 341(a) meeting of creditors is attached hereto as **Exhibit B**.

7.      Among others, Kang, Dara's president, and Amiri, Dara's accountant and treasurer, testified at the meeting of creditors.

8.      On March 9, 2015, I attended the hearing on HSBC's motion to dismiss the third bankruptcy case.  The bankruptcy court adopted the prior court's findings that the bankruptcy

1   case was filed in bad faith and granted HSBC's motion to dismiss.  As of the execution of this

2   declaration, the bankruptcy court has not yet entered an order reflecting that ruling.

3       9.      Snell has incurred certain fees and costs on behalf of HSBC to defend and litigate

4   the three bad faith bankruptcy filings.  Specifically, HSBC has incurred $84,955.56 in attorneys'

5   fees and costs owed to Snell for litigation services rendered herein through March 10, 2015.  Brett

6   H. Ramsaur, an associate in the Bankruptcy and Reorganization practice group, Sandra Berumen,

7   a paralegal in the Bankruptcy and Reorganization practice group and I were the only

8   professionals who worked on these matters.  Ms. Berumen, whose work is billed at $160 per hour

9   ($150 per hour in 2014), spent 4.5 hours on these matters for HSBC providing the within

10   litigation services through March 10, 2015.

11       10.     I received my law degree from Rutgers University School of Law in 2004.  I am a

12   partner in the Bankruptcy & Reorganization and Foreclosure & Collection practice groups at

13   Snell where I focus on bankruptcy, creditors' rights and business litigation matters.  The rate I

14   charged HSBC for these matters was $495 per hour which represents the regular billing rate I

15   charge my clients.  I spent 82.7 hours on these matters for HSBC providing the within litigation

16   services through March 10, 2015.

17       11.     Brett H. Ramsaur received his law degree from Chapman University School of

18   Law in 2009.  Following graduation, Mr. Ramsaur clerked for a federal bankruptcy judge in

19   Riverside, California before entering private practice.  He is an associate in the Bankruptcy &

20   Reorganization practice group at Snell where he focuses on bankruptcy, creditors' rights and

21   business litigation matters.  The rate he charged HSBC for these matters was $375 per hour ($335

22   in 2014) which represents the regular billing rate he charges his clients.  Mr. Ramsaur spent 121.8

23   hours on this case for HSBC providing the within litigation services through March 10, 2015.

24       12.     Snell uses a software program to store its attorneys' and paralegals' billable time.

25   Attorneys and paralegals are required to enter their billable time into the computer program

26   contemporaneously with the work they are doing.  Each billable time entry should be entered with

27   a corresponding description of the task completed and "block billing" is not permitted.  From my

28

1   experience with the computer program and electronic records, I know them to be accurate and

2   trustworthy.

3       13.   In this case, HSBC defended and actively litigated three bad faith bankruptcy

4   filings, including filing multiple emergency motions to dismiss, a motion to transfer venue,

5   multiple requests for hearings on shortened time, attending multiple hearings and the 341(a)

6   meeting of creditors, and this Application.  As a result of this legal work, HSBC incurred

7   $78,938.50 in attorneys' fees through March 10, 2015.

8       14.   In addition to attorneys' fees, HSBC spent $6,017.06 on filing fees and other costs

9   associated with the above-described legal work through March 10, 2015.

10      15.   The total attorneys' fees and costs incurred by HSBC through March 10, 2015,

11  equals $84,955.56.

12

13      I declare under penalty of perjury under the laws of the United States that the foregoing is

14  true and correct.  Executed this __11th__ day of March 2015, at Costa Mesa, California.

15

16

17  _____
    Eric S. Pezold

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

| Woman (clerk) | Line item number 3 Your Honor, Dara Petroleum, Inc. |
| Maggie McGee | Good morning Your Honor, Maggie McGee for the U.S. Trustee. |
| Mr. Knight | Good morning Your Honor, Noel Knight for Dara Petroleum. |
| Will Portelo | Good morning Your Honor, Will Portelo appearing on behalf of creditors Stars Holding. |
| Judge | Okay. |
| Eric Pezold | Good morning Your Honor, Eric Pezold, Snell & Wilmer, on behalf of HSBC Bank the movant. |
| Judge | I'm sorry, and state your last name again. |
| Eric Pezold | Sorry, Pezold, P-E-Z-O-L-D. |
| Judge | Okay, thank you. Alright, parties are welcome to sit or stand wherever you choose. This is a hearing on HSBC's emergency motion to transfer venue or alternatively to dismiss, and then information regarding it, and then to not require turn over from the receiver. So, I've seen the motion, I've seen the response, have you had an opportunity to see the debtor's response? |
| Eric Pezold | Yes Your Honor. |
| Judge | Okay. So I need some background information from both parties to start and then I'll allow you to make your case but these are some pieces of information I'm looking for. I need some more information on the Danville address and Dara Petroleum's presence in Danville and that history. I also need some information on what actions the receiver has taken as yet. Have they begun taking over control of the property, books and records, has it been listed for sale, what's the status of that? So with that Mr. Pezold it's your motion, I'll let you start. |
| Eric Pezold | Thank you Your Honor. This case I think it does warrant some period of time for me to introduce the facts to the court. They are in the motion, but if I could just briefly summarize the most salient facts for the court it would be very helpful I think.

This loan was originated, it was an $800,000 loan that was originated to Dara Petroleum back in 2004. About five years later the note went into default and a lawsuit was filed by HSBC in state court. The SBA, Small Business Administration was named as a party to that lawsuit because they have a junior lien on the property and they removed it to the federal court in the eastern district.

After a number of years of litigation, so the file was made in July of 2009, the parties in an effort to resolve the litigation entered into a settlement agreement a couple of years later. It required that the debtor make payments including the payment of property taxes. The debtor performed for a period of time but defaulted on paying property taxes. As part of the settlement that the parties reached they stipulated, Dara stipulated to have a judgment entered upon default of the settlement agreement. So the stipulated judgment was lodged I believe in January 2011 and the debtor Dara litigated that with the federal court. Said that they didn't have notice, they didn't default, and after about nine months of briefing the court entered a decision in late 2011 and said hey |

|  | look it, the agreement said if you default, you default, and we are not going to get into the middle of whether there is a material default and immaterial default. It doesn't matter. The court is not going to be in a position to reword or interpret the language of the settlement agreement so the court entered an order sustaining the entry of the judgment over Dara's objection.<br><br>A period of time went by where the SBA then asked the court to amend the judgment because the judgment was one for foreclosure. This was not just a monetary judgment; it was a judgment to direct the bank to foreclose on the property. The SBA did not believe that the order protected their interest so the SBA asked the court to amend the order to which Dara opposed and the court again amended the judgment in January of 2013, in the middle of January 2013 to basically the judgment was amended to say the SBA gets the proceeds of the sale if there are sufficient proceeds after paying HSBC.<br><br>The moment that judgment was entered or shortly thereafter Dara in an attempt, in a clear attempt to avoid the effectiveness of this foreclosure judgment transferred its interest to Stars Holding who is here today. Stars Holding as we understand it owns all the interests in Dara. So there is a complete identity of interest between Stars and Dara. Dara is controlled by Stars, Stars controls Dara. So the property at issue is now owned by Stars, not Dara. Dara has admitted this, in fact when you look at the schedules of assets and liabilities they identify no property, they identify no income, they identify no assets and they have no money. They have nothing, they transferred everything out. There is nothing, this is just a shell company, a puppet of Stars. So that was in January of 2012. |
|---|---|
| Judge | 2012 or 2013? |
| Eric Pezold | 2012 was when the original judgment was entered shortly after Dara transfers the property to Stars. January 2013 an amended judgment is entered protecting the SBA's interest in the proceeds of the sale. |
| Judge | Okay. |
| Eric Pezold | My client HSBC not having been paid for five years makes a demand on the tenant of the property which we were told there was a lease agreement entered into with this tenant, his name is Parshmit Singh. Unbeknownst to us at the time the lease agreement was entered into, we found out about it and we made demand on the tenant to make payments to us. We want the lease money and they did comply to that to some extent, they started making some payments. Not the full amount of payment that we were demanding. The HSBC gave Stars and Dara some time to figure out what they wanted to do with the judgment; HSBC did not immediately move to foreclose on the judgment. It became clear that Stars and Dara were not going to attempt to liquidate the property or to facilitate any kind of sale with the cooperation with the bank and so in March of 2014 HSBC Bank, I filed a motion in the federal district court in Sacramento asking for the appointment of a post-judgment receiver. Dara opposed the motion, not Stars, Dara opposed the motion. We wanted again to give Dara the opportunity to find some way of paying our debt off so |

| | we agreed to extend the hearing date and the court granted that stipulation. It came time about 4 or 5 days before the continued hearing date where Dara said look we are trying to work on getting you guys taken care of, would you continue the hearing date again and we said yeah we can do that. So we prepared a stipulation and filed it with the federal court and the federal court said don't bother filing your stipulation I'm going to enter an order and I want you to appear at the hearing in a couple of days. The court entered an order granting our receivership application. The court entered an order on May 2, 2014 directing a Mr. Kevin Singer to take possession of the property for the purposes of managing it to liquidate it in a judicial foreclosure action. I think it's important to note that Stars never appeared in that action. They have never; they didn't oppose the motion at all. And in fact it's also important to note Your Honor that Dara has never asked the court to reconsider its decision. |
|---|---|
| Judge | And let me verify, there is no appeal that's been taken? |
| Eric Pezold | There has been no appeal of that order. It's an order that is currently effective. The receiver took possession of the property; I believe his bond was filed, the order requesting to post his bond. I believe he took possession of the property somewhere around May 7, May 8 when he posted his bond. I could be wrong on those dates Your Honor, around that time period. And the receiver has to my knowledge, to your question about what the receiver has done so far, he has met with the tenant on the property. |
| Judge | Who is Singh. |
| Eric Pezold | Mr. Singh. |
| Judge | Okay. |
| Eric Pezold | Has engaged a company to help him operate it. He has, I believe he is in the process of obtaining an appraisal to determine what the appropriate sale price would be. I believe he is working with the tenant to collect whatever income there is from the property, etc.

But immediately upon the receiver taking his, filing his oath, Dara files a Chapter 7 bankruptcy case in the eastern district. The petition lists the real property address on El Camino Drive. It also identifies it's residence as Sacramento. So in two different places on the petition it identifies Sacramento as it's place of business and its residence. The immediately upon filing of that bankruptcy petition, the bank asked me to file a motion to dismiss. File the motion to dismiss because Dara doesn't own the property and it seemed to us that it was a blatant attempt to try and circumvent the receiver order. The reason why it's an attempt – and I think the Dara will tell you that they are intending to circumvent the receiver order; I think they have even said that in their papers. They have told the court in their most recent filing they don't want this court to hear this motion because they are afraid that the bankruptcy court will actually give deference to the federal court receivership order. So they are bringing this to you because they don't want the bankruptcy court in Sacramento to honor this federal court decision. |

Not once in that – albeit it was a limited time that they were in bankruptcy, did they advise the court that this was the wrong venue. That they shouldn't have filed there. That in their haste to file a Chapter 7 no asset case they identified the wrong venue. They didn't do that. They opposed the motion, they filed a written opposition and then the night before the hearing counsel files a document with the court saying he is unavailable. Then he files a written opposition a week before and then tells the court I can't be there. So we have a hearing, the court hears from the Chapter 7 trustee, hears from the United States trustee, hears from the bank and the court after I think a fairly decent amount of argument dismisses the case because again Dara has no assets, has no income, has no money and it's only creditors are four: 1) the bank, 2) the Sacramento County Property Collector, which I actually don't believe they are a creditor of Dara because Dara doesn't own the property, 3) Stars Holding which again Stars controls Dara, the complete identity of interest and 4) the SBA. But if the court will recall, I just can't emphasize enough the SBA debt, the HSBC debt, and the Sacramento County debt all relate to a property to which they don't own anymore.

The debtor then files, so the court dismisses the case at that hearing mid-May and the order is entered in late May. Not two weeks later Dara comes to this court and tells this court forget it. All of the information I put in front of the bankruptcy court under penalty of perjury is wrong. Never clarified it, never asked the court to reconsider the motion to dismiss. Just simply comes to this court, walks away from all of the information that it represented by counsel that is accurate in the Sacramento Court and files this one. Not a Chapter 7, a Chapter 11. No assets, no income, no property, yet they somehow want to file a Chapter 11 case.

Interestingly, prior to the bankruptcy case which we advise, prior to the Sacramento bankruptcy case this debtor was not active with the Secretary of State. It had not done something; either filed a document or had not updated its records. And so it reflected on the Secretary of State as inactive. Your Honor, the address at the Secretary of State is in Sacramento. Now the debtors having seen that we had raised that argument to the court go to the California Secretary of State, they have now activated their status; their address is still in Sacramento. They have never told California Secretary of State that their address is now in this county. In summary Your Honor with respect to the facts, the property is in Sacramento, all the litigation is in Sacramento. Dara filed a cross-complaint against my client. Never once asked the venue issue to be brought to this court. All of the parties are in Sacramento. The SBA's counsel is in Sacramento. The property tax division is in Sacramento and all of the information until just a couple of days ago refer to Sacramento as this debtor's principal place of business and residence.

Your Honor if I may just address, I think those are the facts. And there are some other facts. Mr. Knight will argue that there was a settlement agreement

entered into between the bank and his client. He has attached a document that the parties signed around May 7. What Mr. Knight has not told the court, and to be honest with you Your Honor we believe those are settlement communications and not admissible at all and we reserve the right to strike those. But attached to that settlement agreement was some correspondence from me where I said to Mr. Noel, "attached is the signed stipulation. I changed some of the defined terms; I added the sentence on remedies for default. As we discussed on the phone," this is important Your Honor, "we need to have Kevin Singer, the receiver, sign off on any stipulation that requires him to stand down on the May 2 order. The attached stipulation does not have a signature block for the terms of what he would like filed with the court. As such please treat the attached stipulation as a term sheet. It is not intended to be filed with the court; I think the court will not be pleased if we file a document that contravenes what the court has ordered, i.e., directing Kevin to take possession of the receivership estate. I will draft up a short stipulation that we can provide to Kevin for review and then file with the court. I will also draft up a short settlement agreement for the parties to sign."

Your Honor Mr. Knight wants to argue that there was a settlement agreement. There was not. There was a discussion and a term sheet that was signed that was subject to Mr. Kevin Singer's review and also subject to court consent. There was no settlement agreement. There was a term sheet, that's it. Now with respect to the debtor's arguments about venue, they miss the mark Your Honor. Under the local rules when we are talking about, when the rules say where appropriate venue is and local rule 1014 says this, local rule 1014 says: "If a petition is filed in a proper district and on timely motion of parting interest and after notice to the petitioners, the United States trustee and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties."

Now Dara wants to argue – has spent a great deal of time briefing the issue on the interest of justice or the convenience of the parties. But that – there is a sine qua known to that analysis and that is, is the petition filed in the proper district. And what we have briefed for the court is that it's not. It's not for two reasons, they have maintained in papers in federal court and papers in bankruptcy court which is also federal court, Sacramento is the proper venue. We have also argued Your Honor that what's happening here is a blatant attempt at forum shopping. They even say that in their papers. They say I'll quote Your Honor from their opposition – now this is found on page 8 of their opposition starting at line 25. They say, "the bankruptcy court located in eastern district may have some deference to the May 2, 2014 receivership order improperly entered by the district court in the eastern district. As if the bankruptcy court has the ability to overturn a federal district court decision. They are telling this court we don't want to go to back to Sacramento because we are afraid that Sacramento, this sister court will do its job, will enforce a

|  | higher court receivership order.  I don't think I could say it better myself Your Honor that what they are doing is forum shopping. |
|  | Your Honor we have – what's also I think interesting here Your Honor is the debtors also filed a statement of disputed facts.  And in the statement of disputed facts the debtor also says they dispute that that May 2 order was entered improperly – properly, they claim that the proper is disputed. |
| Judge | You disagree that that order was properly entered correct? |
| Mr. Knight | The district court's order Your Honor? |
| Judge | Yes. |
| Mr. Knight | That we do Your Honor. |
| Judge | Okay but it's an order. |
| Mr. Knight | I understand that Your Honor. |
| Judge | Okay. |
| Eric Pezold | Your Honor with respect to our -- we would – our primary request of this court is to transfer it back to Sacramento because that's where the district court is with respect to the receivership order, that's where the bankruptcy court heard all of this before and we are going to move that court for sanctions.  We are asking this court for sanctions but we think that court is the one that can properly enforce, can honor the litigation, can work with the receiver to get the receiver the sale completed, etc.  This bankruptcy is a sham.  It is a collusion between Stars and Dara.  They are desperately trying to stop the receivership sale.  They can do that, they can try to do that in the proper avenue and that's in federal district court.  Ask the federal court to set aside the receivership order.  They are not doing that.  They have not done that, there is just absolutely no legitimate purpose for this case. |
|  | The second request that we would ask Your Honor if Your Honor would simply, is disinclined to transfer is to simply dismiss it.  Again Your Honor the petition speaks loudly.  There is nothing to reorganize.  In their most recent papers they argue that they have this term sheet is what I'm calling it, they consider it a settlement agreement.  And they think, they have argued to the court that -- so what I am trying to respond to Your Honor is we are asking the court to dismiss the case, they say keep the case alive because we have a settlement agreement and we want to use 365 to enforce a settlement agreement.  But the clear weight of authority says settlement agreements aren't executory.  Why is that?  Because under a settlement agreement where what is happening is one party is paying another, the party receiving the money has no unperformed duties to perform.  It's a unilateral deal.  We have a judgment, a federal court judgment that says you are liable to me; you have to pay me a million dollars.  It's not executory to simply receive the million dollars. |
|  | And we cited some cases Your Honor in the eastern district but if the court would like to review some of these cases, one is *In Re Peralta Food Corp.*, the cite is 2008 Westlaw 190503 and there is actually a third circuit case *In re* |

|  | *Columbia Gas Systems Inc.* that's 50 F.3d 233 and if I could just read part of this decision, the court says: "the right to collect money under a settlement agreement is not enough to make an agreement executory." It goes on "with respect to agreements where one party's obligation is to collect money, the majority of courts have concluded that such agreements are not executory contracts." And in this case there was a settlement agreement that a party had entered into prior to bankruptcy and a debtor filed a Chapter 11 to try and assume it. So Dara wants this court to keep this case alive in order to assume a settlement agreement because they claim it's executory. I noticed they did file an emergency motion last night, clearly didn't cite the case, that is the majority rule. So there is no reason to keep this open. So if the court isn't going to transfer it we are asking the court today to dismiss it. And we are not only asking the court to dismiss it, we are asking the court to enter the extraordinary relief to bar future filings. They don't need to come to this court to get relief from the receivership court if it's warranted. Receivership order, they can go to federal court, that's where they should be, not in bankruptcy. And the truth is Your Honor we will probably file a motion in federal court to withdraw the reference because that's where this dispute needs to be. It's already been litigated over four years. They are trying to without filing motions to set aside or reconsider or appeal, they are here. Quite simply Your Honor there is nothing for this court to do even if the court kept it. There is just no assets other than this term sheet and they can't assume it.<br><br>Your Honor in an abundance of caution if the court isn't inclined to dismiss it we are asking the court to give my client stay relief and to have the 543 turnover excused. They have already admitted they don't own the property, this property is not part of this bankruptcy case, it's clearly on the face of the petition, it's not there, in all the declarations they admit it's not, so if they are going to prosecute this bankruptcy case we would ask the court to enter a stay relief for us to go ahead and enforce that receivership order and this bankruptcy will have no effect, absolutely no effect on that receivership order. Your Honor it is this procedure, this circus that they are creating is costing thousands and thousands of dollars for my client because they don't want the receivership order to be entered. We just, it is just completely inappropriate for them to keep coming back to bankruptcy court. This court can do nothing for them. It can do nothing for them. So we would ask the court to enter appropriate sanctions. |
| Judge | Okay. |
| Eric Pezold | Bar relief, fees and costs, a referral to the United States Trustee's Office to investigate this sham case and this stuff about changing addresses. One final point Your Honor on this address thing. I actually did some, and I filed a declaration to this effect, we tried to serve, per this court's order requiring us to serve the order to shorten time, we sent it to this court at the Oak Street, Oak Court address. It was returned to sender because there is no Dara Petroleum at that address. There is a Stars Holding Your Honor but not Dara. |

| | |
|---|---|
| | Thank you Your Honor. |
| Judge | Okay Mr. Knight. |
| Mr. Knight | Thank you Your Honor for having me in your courtroom this morning. I'm just going to try to reduce this to the fundamentals of what's going on here. Yes we did file an emergency petition in Sacramento because that's where the action was taking place at that time and that's where we were. Nevertheless, venue is appropriate here for several reasons. The debtor's principal address is in this district and has been for quite some time and it is operational. Also the principal creditor of the debtor is located here in this district. That makes the venue in keeping with 28 USC 1408 and the principals that make a venue district, a venue location proper. Additionally, there is no compelling reason to transfer. |
| Judge | But when you say the debtor's principal address is in this district, how, because it's not on the California Secretary website. |
| Mr. Knight | That's where the locus is where the debtor is doing business and that's the address they have been using Your Honor on Oak Street. |
| Judge | What business are they doing? |
| Mr. Knight | They do gas and real estate holdings, they do business dealings out of that address, things of that nature. |
| Judge | Okay, back up, what's the relationship between Dara and Stars Holding? |
| Mr. Knight | Dara reached out, Dara originally had the property, Dara reached out to Stars Holding as kind of an economic lifeline, a financial lifeline in order to make proper payments to HSBC. That's the agreement that they created between the two of them when they assigned the property. So, in essence, Dara still has an interest on the property although because of its economic resources Stars is making payments, was making payments to HSBC. I don't know how you would characterize that, a financial buddy, a financial partner? |
| Judge | Okay and who owns Dara? |
| Mr. Knight | Dara is owned by Mr. Amiri. |
| Judge | Okay. And who owns Stars? |
| Mr. Knight | Stars is owned by a different entity, Your Honor. |
| Judge | Who? |
| Mr. Knight | I don't have the principal individual's name. I would like the comment to be made on that by Stars' counsel. |
| Judge | Okay and they are, so is Stars owned by individuals or corporations? |
| Mr. Knight | It's owned by a group of individuals, Your Honor. |
| Judge | Okay. They can address that in a bit. And does Stars own any other assets other than Dara Petroleum? |
| Mr. Knight | I don't have information to that. |
| Judge | Okay I'll expect Stars' counsel to address that. Continue. |
| Mr. Knight | Thank you, Your Honor. Again I don't believe there is any compelling reason to transfer venue to the Eastern District using the various tests under *Baltimore Food Systems,* the venue in question should offer the greatest convenience to the situation and in this instance it's both the debtor's location and its principal place of operation and the locus of its principal creditors which is here in this district. |

| | |
|---|---|
| Judge | But wait a minute. But your principal creditors are two large entities that are equally sided at either place. HSBC and the Small Business Administration. |
| Mr. Knight | That is correct, Your Honor, but there is also Stars, there is also Stars. |
| Judge | But Stars isn't a creditor right? |
| Mr. Knight | No I'm sorry, there is also, there is also, I'm sorry, _____ Your Honor. |
| Judge | Who? I'm sorry are they on a list? |
| Mr. Knight | I'm going to accept comment on that from Stars' counsel as well. Because my focus on this matter is strictly been on focusing on getting the settlement agreement accepted . . . |
| Judge | Hold on. Just sit down, I'll get to you. |
| Mr. Knight | Thank you. |
| Judge | So your focus has been on what? |
| Mr. Knight | My focus is trying to get the settlement agreement around the receiver Your Honor and getting the paperwork filed with both the eastern district and this court as far as keeping venue here and getting their motion to dismiss disregarded. So let me just focus on again the location for the debtor. The principal location of the debtor is in this district, period. Fundamentally that makes an acceptable venue under the various case law and that's what we are seeking Your Honor is that this district remain as the venue. |
| Judge | Are you challenging that the Eastern District is also an acceptable venue? |
| Mr. Knight | I'm not challenging that fact, obviously we filed the emergency petition there but what I'm saying is that this district is a primary and preferential venue to the eastern district in this particular situation, Your Honor. |
| Judge | Because? |
| Mr. Knight | Because the debtor is here in this district. |
| Judge | But the debtor does nothing. |
| Mr. Knight | Well the debtor does do quite a lot of things. |
| Judge | What does the debtor do? |
| Mr. Knight | Again the debtor deals in energy and gas operations. |
| Judge | How so? Deals in, how so? Who do they enter into contracts with? |
| Mr. Knight | Various parties, clients. |
| Judge | Such as? |
| Mr. Knight | Well I don't have the names of those particular individuals. |
| Judge | But there are no executory contracts listed on your schedules. |
| Mr. Knight | That's correct, Your Honor, but the -- he is through various parties doing these |
| Judge | Who is he? |
| Mr. Knight | Well the parties involved in Dara Petroleum, Your Honor. I'll let - the parties involved in Dara Petroleum are doing these deals through various individuals and they are doing business here in this district. |
| Judge | What business are they doing? |
| Mr. Knight | They are doing various negotiations, gas station things of that nature, Your Honor. |
| Judge | Seriously do they have a contract with anyone? |
| Mr. Knight | Well I would have to get back to the court. |
| Judge | Do they, have they borrowed money from anyone? The authority here with |

| | HSBC and SBA? |
|---|---|
| Mr. Knight | I would have to get back to the Court? |
| Judge | Did they owe money to anyone other than HSBC and SBA? |
| Mr. Knight | Well no Your Honor they don't owe any money to anyone else. |
| Judge | Do they have any employees? |
| Mr. Knight | They do have one or two employees I don't have . . . |
| Judge | Who is employed by Dara Petroleum? |
| Mr. Knight | Various personalities, I don't have a . . . |
| Judge | Doing what? |
| Mr. Knight | Just dealing with trying to negotiate gas stations. |
| Judge | Okay you keep talking about negotiating but what are they negotiating?  They don't own gas stations correct? |
| Mr. Knight | Right. |
| Judge | They don't supply gas stations is that correct? |
| Mr. Knight | That is correct Your Honor but they have . . . |
| Judge | They don't . . .they are not operating gas stations is that correct? |
| Mr. Knight | Not currently, Your Honor. |
| Judge | So what are they doing? |
| Mr. Knight | They are in the – in the kind of business that they are dealing with . . . |
| Judge | These really aren't trick questions.  I'm trying to find out what it is this business that they are doing is. |
| Mr. Knight | Your Honor, I guess in the terms of not trying to get around your question but they are kind of like a middle person, a negotiator, a fixer, that type of thing in regard to the gas stations and things in Northern California. |
| Judge | So how do they do their business?  Do they do it by phone? |
| Mr. Knight | In person, a lot of it takes place in person. |
| Judge | Where are those locations? |
| Mr. Knight | Again that's in Oak Street address, Your Honor, in Danville. |
| Judge | Who are they meeting with? |
| Mr. Knight | Various personalities, Your Honor, just the type of business that they do. |
| Judge | Okay.  I think we have gotten as far as we can on this.  Do you have anything further you want to add?  This is addressed to venue.  Do you want to address anything more? |
| Mr. Knight | No, Your Honor, just again that it's my impression and according to the case law that this venue is a superior place for this particular action. |
| Judge | Why?  Okay so your reason that you think it's superior is because it's the, it's where Dara does its nebulous business operations? |
| Mr. Knight | Yes, Your Honor, that's correct. |
| Judge | And how do you address this long history of what is clearly essentially a two party dispute elsewhere? |
| Mr. Knight | It did occur, Your Honor.  I'm not going to deny that it occurred.  Nevertheless, the principal debtor has taken the opportunity to file in this district based on its principal address. |
| Judge | Got any letterhead with that on it? |
| Mr. Knight | I don't have it available at the moment, Your Honor.  I'm not sure we can |

| | |
|---|---|
| | supply it to the Court. |
| Judge | Okay. |
| Mr. Knight | Your Honor. |
| Judge | Thank you. Let me hear from Stars Holding because they are dying to talk. |
| Mr. Knight | Yes. |
| Eric Pezold | I'd like to address briefly those comments. |
| Judge | You may. I'll let you address both of them after they are done. |
| Eric Pezold | Okay. |
| Will Portelo | Your Honor, there appears to be several fundamental misunderstandings. Number one, Stars Holding is a station owner and wholesale supplier wholly owned by Nazir Amiri. |
| Judge | Hold on a second. So it owns gas stations? |
| Will Portelo | It owns gas stations, it engages in wholesale supplying of oil and gas to various, to those stations. |
| Judge | Okay. |
| Will Portelo | It is wholly owned by Nazir Amiri. Dara Petroleum, Nazir Amiri has no ownership interest in and. |
| Judge | Wait a minute; I thought I was just told that Mr. Amiri owns Dara. |
| Will Portelo | There are some misunderstandings that are going around, no. Mr. Nargas and Mr. Eghtesadi. |
| Judge | Wait a minute back up. Mr. Knight come back to the stand. You filed for a corporation. A corporation has to normally do a corporate resolution authorizing the filing. Who voted for this filing? |
| Mr. Knight | I don't have that information Your Honor; I'll let Stars speak to that. |
| Judge | Excuse me, Mr. Knight, this is your client. |
| Mr. Knight | It is, Your Honor, um, it is Your Honor, I've been functioning on an emergency basis with regard to this activity and there is certain information I don't have because of the focus that I've placed on this case. |
| Judge | And yet you have put your bar number and filed this case. |
| Mr. Knight | That is correct, Your Honor. |
| Judge | Okay. Alright, back to Stars. |
| Will Portelo | So in essence, Your Honor, there is a separate entity. Yes, Stars Holding took over the operations of Dara Petroleum. |
| Judge | So wait a minute, let me back up. So you are saying that Mr. Amire owns Stars? |
| Will Portelo | No. I'm saying Nasire, Mr. Amire's ex-wife is the owner of Stars. Asad Amire does not have an ownership in Stars. |
| Judge | Hold on. So I need to back up. Azad Amiri is who? |
| Will Portelo | Azad Amire is, he is a, let's call it, he is a consultant, he is involved in various . . . |
| Judge | Is he in the room? |
| Will Portelo | He is right here. |
| Judge | Thank you Mr. Amiri. Okay. |
| Will Portelo | However, |
| Judge | And what does Mr. Amiri own? |

| Will Portelo | Mr. Amire doesn't own anything. |
| Judge | Okay. |
| Will Portelo | So Nassiri Amiri, his ex-wife owns Stars Holding. |
| Judge | Hold on. Is she the only holder of Stars? |
| Will Portelo | She is the only holder at this point. Previously his daughter owned a portion of Stars Holding, however she divested from Stars Holding approximately six months ago. |
| Judge | And are you aware who owns Dara Petroleum? |
| Will Portelo | Yes. |
| Judge | Who? |
| Will Portelo | Mr. Narges owns 81% of |
| Judge | Who's Mr. Narges? |
| Will Portelo | I believe he is in the room. |
| Man | No he is not. |
| Will Portelo | And Mr. Kang owns 19%. |
| Judge | And is Mr. Tang in the room? |
| Will Portelo | Kang. |
| Mr. Kang | Yes. |
| Judge | Kang. Okay. Alright. Thank you. |
| Will Portelo | In 2012 when Dara Petroleum no longer had the ability to make the payments, when Dara Petroleum no longer had the ability to financially operate the station, let's phrase it that way; and there was the issue of the money owed to HSBC and the judgment, Stars Holding took over the property and the debts including a $218,000 debt that was owed to a supplier, Aria Oil. That is the fundamental issue for Stars Holding. In addition, since January 2012, Stars Holding has been paying the debt, or the, making the payment on the loan to Ciena Bank. So that, with the exception of the old judgment that is held by HSBC for the last 2 ½ years Stars Holding has made the payments. So at this point it's over $100,000. The total that Stars Holding, the total of Stars Holding interest in this entire thing is the $218,000 it owes Aria Oil on behalf of Dara Petroleum plus the money it's put out to service the debt. |
| Judge | So wait a minute, so Stars owes money to Dara? |
| Will Portelo | Stars owes no amount of money to Dara. Stars has assumed . . . |
| Judge | Stars owes money to HSBC on behalf of Dara? |
| Will Portelo | Essentially. Stars owes the current, the ongoing Ciena payments on behalf of Dara. Stars owes Aria Oil for Dara's prior purchases that it did not pay for. Stars was never named in this lawsuit. |
| Judge | So Stars has assumed the liabilities? |
| Will Portelo | Yes. |
| Judge | ...of Dara. |
| Will Portelo | Correct so while we understand there is a receiver, right now Stars is the entity that's kind of holding the bag. Stars was prepared to move forward and fund the settlement and have the $100,000 in hand. That Stars understood if that money was transmitted, the settlement would proceed and they would have until 2015 to pay the balance. That's – to the extent that Stars was not |

|  | fully aware that there is a term sheet, I'm new to the party. However, what they did was there were some extensive communications where they were going to fund the settlement. They had the $100,000, it was ready to be wired as soon as they received the signed settlement agreement, they received the, or, whatever they received that they thought they needed they received it 7 minutes after the deadline. |
|---|---|
| Judge | Okay. That stipulation if it is a valid one requires $725,000 by the end of July. |
| Will Portelo | I believe it's $100,000 initially. |
| Judge | It's $100,000 by May 6 and $725,000 by July 31. The declarations that were submitted are that they are talking to banks—which is not the same as $725,000 in hand. |
| Will Portelo | So it would appear that the – had they been able to make the initial $100,000 payment they would have until the end of July to fully perform the settlement. But that's been cut off at this point Stars Holding is in the position of losing every payment it's made to Ciena Bank on behalf of Dara Petroleum as part of the assignment. That's why we are here as a creditor. |
| Judge | But you're not . . . is there some reimbursement agreement? |
| Will Portelo | I haven't gotten to the bottom of that, Your Honor. |
| Judge | Okay. Anything, well wait a minute. What other assets? Does Stars own other assets other than Dara Petroleum? |
| Will Portelo | Absolutely, Your Honor. They own six other gas stations. |
| Judge | Okay. |
| Will Portelo | It's in the local sale, oil and gas business. |
| Judge | Okay. Anything else? |
| Will Portelo | No, Your Honor. |
| Judge | Alright thank you. You wanted to respond? |
| Mr. Knight | Your Honor, I'd like to discuss some final commentary on the motion to dismiss if I may. |
| Judge | Sure. |
| Mr. Knight | We again in following what Stars was saying are asking the court to treat, it wasn't a term sheet it was an actual settlement agreement that was ready to take place. They were prepared to tender the $100,000 and it was the bank's own negligence in not submitting the signed agreement in time that didn't allow for the transfer of the funds. As this is a court of equity we are asking the court to assume that settlement agreement as an executory contract under 365 because again the property involved is fundamental to the debtor and its creditors and also SBA will lose its lien in the situation if the settlement agreement isn't assumed as well. So we have put a motion on file with this court I believe for July the 10th on this matter and we are asking the court to have both the motion to dismiss and that motion heard on the same day. |
| Judge | Okay give me a second I want to look up something before I respond. [inaudible] the stipulation attached to one of your declarations, do you happen to know which one is attached here. [inaudible] |
| Mr. Knight | Can I consult my law clerk, Your Honor? Thank you. Your Honor, it's Exhibit D to the declaration of Jeff Kravitz. [inaudible] |

| Judge | The third declaration that was filed? |
|---|---|
| Mr. Knight | That's correct, Your Honor. |
| Judge | Mr. Pezold. |
| Eric Pezold | Your Honor, I just briefly with respect to the venue arguments, on June 6 of 2014, Mr. Kang filed on behalf of the debtor his statement of financial affairs in response to question number 1, income from employment: None. Question 2, income from other than employment: None. Payments to creditors: None. And more telling, Your Honor – repossessions, foreclosures and returns: None. Assignments: None. Most importantly, with respect to the venue, question 18, nature, location and name of business, identify any business, if it's a corporation list the names, addresses, ID numbers, nature of the business, and beginning dates of all businesses in which the debtor is a partner owned 5% or more within the last six years: None. Books and records: None. This is just, this is a sham, Your Honor. Dara's counsel can't identify a single shred of business that this debtor is doing ever. I know more about Dara than Dara's counsel because I've been involved in litigation for the last four years. And I know also, Your Honor, with respect to who owns, who the property is owned by its Dara Petroleum according to this grant deed that was filed with Sacramento Recorder's Office that is attached to a declaration that we filed. This court, the court can just from the comments today and the number of parties involved, there is so much information here, Your Honor. There has been so many disputes that have already been resolved in the Eastern District. All of these arguments that they want to make, if they want to hold on to the property because they think the receivership order is improper, take it to the federal district court if you can, don't come to this court and circumvent a federal district court receivership order that not only allows the receiver to take possession of the property, but contains an injunction against interfering with the receivership order and the receivers' ability to carry out the receivership order. That injunction applies to Dara, it applies to Stars, and from the court you can tell from the dynamic today that Mr. Noel isn't running this case, it's Stars Holding that's running the case. If Stars Holding wants relief, file its own bankruptcy petition, go back to federal district court. They just have no business being here. This is a, Your Honor, I just can't say it another way, it's a complete sham; it's a fraud on the court. And we would ask Your Honor to dismiss this, either to transfer it today so we can get sanctions somewhere else or dismiss it with sanctions. |
| Mr. Knight | May I comment, Your Honor? |
| Judge | Briefly. |
| Mr. Knight | Thank you, Your Honor. There is no sham here, Your Honor. As you can tell from both Stars' interests in this as well as the debtor's interest in this, there is no sham here. There shouldn't have been a receiver in the first place. They had agreed to – I understand there is an order, Your Honor. |
| Judge | I am not an appellate court on the district court. |
| Mr. Knight | I understand that, Your Honor. |
| Judge | So the receiver order is in. |
| Mr. Knight | It is, Your Honor. |

| Judge | And as long as it's in I will respect it and abide by it. Is there anything else you want to add? |
|---|---|
| Mr. Knight | No, Your Honor. |
| Judge | Ms. McGee are you an observer or do you have . . . |
| Maggie McGee | Yeah, Your Honor I do, we do have a position with respect to this case. We are not taking a position with regard to venue but we do think the case is a bad faith case. We don't see that there is a settlement agreement here that needs to be enforced. And settlement agreements aren't executory, that's our position regardless, but Mr. Knight seems to concede that this is an agreement to agree at some future date. He is saying that the – that they are ready to take place is the phraseology that he uses. If there is no – the debtor has no assets, there is no settlement, there is no lease, there is no income, we do think it's a bad faith case and just should be dismissed. |
| Mr. Knight | Your Honor I did not concede on that point I said there was an agreement, there was an agreement, it wasn't just an agreement to agree, there was an agreement and as a result of HSBC's bad faith and unclean hands it did, the first transfer of monies did not take place. Nevertheless, there is an agreement with regard to this and we are asking the court to treat it again under 365 an executory contract which is pivotal, incremental to the survival of both the debtor and some of its major creditors. |
| Maggie McGee | Just one final point, Your Honor, if this is apparently already been litigated and decided by the Eastern District so I don't see why the court should not just follow the eastern district's decision on this. It's the same case, the same people, and apparently the same motion was motion to dismiss was heard there. |
| Judge | Alright thank you, I'm going to take a brief recess. I will return in a few minutes. |
|  |  |

# EXHIBIT B

| | **Transcript of 341(a) Hearing** |
|---|---|
| Mr. Blumberg: | Alright, this is the first meeting of creditors for Dara Petroleum, Inc., Case No, 14-26608, the chapter 11 petition in this case was filed on June 9, 2014, today's date is July 21st, 2014.  My name is Jason Blumberg; I am an attorney with the Office of the United States Trustee.  I believe we need a translator in this case, so what I'm going to do now is try to procure one. |
| Interpre-Talk Operator: | Thank you for calling Interpre-Talk.  Calls may be monitored or recorded.  Good evening, this is Ashely.  May I have your location or district office, please? |
| Mr. Blumberg: | Sure.  It's Sacramento, California. |
| Interpre-Talk Operator: | And may I have your last name? |
| Mr. Blumberg: | It's Blumberg.  B-L-U-M-B-E-R-G. |
| Interpre-Talk Operator: | And your first name? |
| Mr. Blumberg: | It's Jason.  J-A-S-O-N. |
| Interpre-Talk Operator: | And the language I can help you with? |
| Mr. Blumberg: | Punjabi. |
| Interpre-Talk Operator: | Thank you.  Hold on just a moment, please.  Thank you for holding.  Madam interpreter, ID No. 320206 is now on the line. |
| Mr. Blumberg: | Hello? |
| Interpreter: | Hello, good afternoon. |
| Mr. Blumberg: | Can I have your first name, please? |
| Interpreter: | Harinder. |
| Mr. Blumberg: | Harinder. |
| Interpreter: | H-A-R-I-N-D-E-R. |
| Mr. Blumberg: | Can you spell that again? |
| Interpreter: | H-A-R-I-N-D-E-R. |
| Mr. Blumberg: | Okay.  I appreciate that.  Okay, Harinder, we are doing a meeting of creditors in a bankruptcy case and we need your assistance with Punjabi; can you help us with that? |
| Interpreter: | Sure, I can. |
| Mr. Blumberg: | Okay, Harinder, would you mind raising your right hand?  I can't see it, but |

| | I'm going to take your word for it. |
|---|---|
| Interpreter: | Okay. |
| Mr. Blumberg: | Do you swear or affirm that you will truthfully and accurately translate the questions and the testimony that is given at today's creditor's meeting? |
| Interpreter: | I do. |
| Mr. Blumberg: | Okay, thank you. Alright. I'm going to read a little preamble and you can translate it. I'll pause to give you a chance to do that every sentence or so. Starting now. This meeting is being help pursuant to Section 341(a) of the Bankruptcy Code. I'll begin this meeting by examining the debtor's representatives. Creditors will then be given the opportunity to ask questions of the representatives. The responses of the representatives are required to be given under oath. Thank you. You don't need to translate this section right here. Will the debtor's attorney please state his name? |
| Mr. Knight: | Noel Knight here on behalf of Dara Petroleum. |
| Mr. Blumberg: | Okay so now I understand there are two representatives of the debtor that are going to testify today. Will the first representative please state his name? |
| Mr. Amiri: | Azad Amiri. A-Z-A-D A-M-I-R-I. |
| Mr. Blumberg: | Okay Mr. Amiri, will you please raise your right hand. Do you swear or affirm that you will tell the truth, the whole truth and only the truth? |
| Mr. Amiri: | Yes, I do. |
| Mr. Blumberg: | Now, Mr. Amiri, you can understand English fluently, is that correct? |
| Mr. Amiri: | Yes. |
| Mr. Blumberg: | Now, I think before the meeting you mentioned to me that you might have some trouble hearing is that correct? |
| Mr. Amiri: | Yes. |
| Mr. Blumberg: | Okay so what I would ask you to do if you don't hear a question I ask, just let me know and I will shout louder. I am a low talker which I acknowledge so I will try to talk louder. |
| Mr. Amiri: | Okay. |
| Mr. Blumberg: | Now the second representative is Mr. Kang. Now you need to translate for this: Okay, Mr. Kang, will you please state your name? Mr. Kang, will you please raise your right hand? You want to translate that? |
| Mr. Kang: | Yes. |
| Mr. Blumberg: | Okay. Mr. Kang, do you swear or affirm that you will tell the truth, the whole truth and only the truth? |

| | |
|---|---|
| Mr. Kang: | I do. |
| Mr. Blumberg: | Hold on a second.  Harinder, can you repeat the oath? |
| Mr. Kang: | Yes.  I do. |
| Interpreter: | I don't need to interpret the answer. |
| Mr. Kang: | Yes, I do. |
| Mr. Blumberg: | Why don't you say it in Punjabi? |
| Interpreter: | Yes. |
| Mr. Blumberg: | Okay.  Okay, Mr. Amiri what is your relationship to the debtor? |
| Mr. Amiri: | I'm their treasurer. |
| Mr. Blumberg: | You're the treasurer? |
| Mr. Amiri: | And accountant. |
| Mr. Blumberg: | Do you have an equity position in the debtor? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | No equity position?  Did you ever own an equity position in this debtor? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | Okay, now please translate this, Harinder.  Mr. Kang, can you tell me your relationship to the debtor? |
| Interpreter: | I am the President of Dara Petroleum. |
| Mr. Blumberg: | Does he – do you own any stock or an equity interest in the debtor? |
| Interpreter: | I don't understand what it is.  Interpreter going to repeat it.  Sorry I misspoke.<br>Yes, I am the President of the company. |
| Mr. Blumberg: | Do you own a 19% interest of the company? |
| Interpreter: | 19%. |
| Mr. Blumberg: | And who owns the rest of the equity interest in the company? |
| Interpreter: | My accountant and my treasurer came along with me.  The accountant keeps the – he does bookkeeping for the company day-by-day, he can explain it to you. |
| Mr. Blumberg: | Do you not know the answer to the question? |
| Interpreter: | I have 19% interest and I'm the President of the company. |
| Mr. Blumberg: | Do you know who owns the remainder of the company? |
| Interpreter: | About that, the treasurer can tell you. |
| Mr. Blumberg: | That's not my question.  I'm going to repeat the question one last time.  Do |

| | you know who owns the remaining interest in this debtor? |
|---|---|
| Interpreter: | About that, the accountant can tell you and interpreter thinks he said I didn't see it. Interpreter didn't understand the last sentence. |
| Mr. Blumberg: | This is another question.  Please translate. |
| Mr. Amiri: | Can I explain to you? |
| Mr. Blumberg: | No, hold on a second.  This is another question for Mr. Kang.  Mr. Kang, are you competent to testify today to testify today about the financial affairs of this debtor? |
| Interpreter: | He said belongs to some other person.  To another person who is not here today.  And his name is Rayamidi. |
| Mr. Blumberg: | Okay.  The questions is, is Mr. Kang competent to testify today?  Does he have the knowledge to testify today about the financial affairs of the debtor?  It's a yes or no question. |
| Interpreter: | What do you mean by that? |
| Mr. Blumberg: | Do you know enough about the company to answer my questions about the financial affairs of the company that is the debtor? |
| Interpreter: | Okay the person who does the – works on it daily is accountant; he has come with me as well as the treasurer. |
| Mr. Blumberg: | And is the accountant Mr. Amiri, who's here today? |
| Interpreter: | Yes. |
| Mr. Blumberg: | Okay.  Mr. Amiri, who owns the other 81% of this debtor? |
| Mr. Amiri: | Reza Amiri. |
| Mr. Blumberg: | How do you spell that sir? |
| Mr. Amiri: | R-E-Z-A A-M-I-R-I. |
| Mr. Blumberg: | Is that a relation to yourself? |
| Mr. Amiri: | My older brother. |
| Mr. Blumberg: | Older brother.  Thank you.  Okay no need to translate this unless I ask you to, Harinder.<br><br>Housekeeping the schedules and the Statement of Financial Affairs have been filed.  Mr. Knight you've applied for claimant as council for the debtor in possession.  Has a debtor established a debtor in possession bank account? |
| Mr. Amiri: | Not yet. |
| Mr. Knight: | Mr. Blumberg, we provided the DIP [inaudible] Mr. Amiri. |
| Mr. Amiri: | I have to do it.  I made a mistake. |
| Mr. Blumberg: | Mr. Amiri you are going to do that after this meeting is that correct? |

| Mr. Amiri: | That's correct. |
|---|---|
| Mr. Blumberg: | I also have a note that we did not receive a completed real property questionnaire. |
| Mr. Knight: | We have that available for you, Mr. Blumberg. |
| Mr. Blumberg: | You have that with you Mr. Knight? |
| Mr. Knight: | Yes, we do. |
| Mr. Blumberg: | I'll take that, please. |
| Mr. Knight: | We also have the POI. |
| Mr. Blumberg: | Proof of Insurance?  And what is the insurable interest? |
| Mr. Knight: | It's about $10 million aggregate and $1 million per occurrence. |
| Mr. Blumberg: | Of what though?  Which property are we talking about? |
| Mr. Knight: | The one in, that covers the [*inaudible*]. |
| Mr. Blumberg: | So I've received from Mr. Knight, the real property questionnaire for Dara Petroleum which we had requested.  I've also received a certificate of liability insurance which names the insured as a Mr. Singh.  Not this debtor. In a relation to the 3449 El Camino Avenue, Sacramento, California.  Put that aside.  Alright, I have questions about the petitions and schedules that are filed in this case.  Mr. Knight do you have copies of that?  I've printed them out if you don't. |
| Mr. Knight: | I have one copy.  I'll take another if you have it. |
| Mr. Blumberg: | I'll do that.  What I'm going to do is I'm going to hand to Mr. Knight Docket No. 1 that was filed in this case which is the petition, schedules and statements.  Mr. Knight if you could confirm that that's a correct copy of what was filed and then allow the representatives to look upon that while I ask the questions, I would appreciate that. |
| Mr. Knight: | Go ahead. |
| Mr. Blumberg: | And I also am going to hand Mr. Knight Docket No. 19 which I think is an amended Schedule F that was filed in the bankruptcy case. |
| Mr. Knight: | That's it. |
| Mr. Blumberg: | That's the document that was filed, correct? |
| Mr. Knight: | That's correct. |
| Mr. Blumberg: | Okay.  Okay, Harinder, I'm going to need you to translate please. |
| Interpreter: | Okay. |
| Mr. Blumberg: | Okay, Mr. Kang, do you have a copy of the petition in front of you?  Is that the debtor's correct name? |
| Interpreter: | Yes. |

| Mr. Blumberg: | And Mr. Kang, was it you that signed the petition, the schedules and the Statement of Financial Affairs that were filed in this case? |
|---|---|
| Interpreter: | Yes. |
| Mr. Blumberg: | And who was the physical preparer of the schedules and the Statement of Financial Affairs? |
| Interpreter: | My lawyer. |
| Mr. Blumberg: | And do you know who the source of the information was that provided the information to your lawyer? |
| Interpreter: | From my accountant. |
| Mr. Blumberg: | Is that Mr. Amiri who is here today? |
| Interpreter: | Yes. |
| Mr. Blumberg: | Mr. Kang, did you review the schedules and Statement of Financial Affairs before you signed those documents? |
| Mr. Kang: | Yes. |
| Interpreter: | He already answered it thought. |
| Mr. Blumberg: | Would you translate it and then… |
| Interpreter: | Okay. Yes. |
| Mr. Blumberg: | Since filing the schedules and the Statement of Financial Affairs, have you become aware of any changes that you need to make to those documents? |
| Interpreter: | What? I'm going to repeat it. No. |
| Mr. Blumberg: | So to the best of your knowledge, are the schedules and the Statement of Financial Affairs true, accurate and complete as of the petition date? |
| Interpreter: | Best of my knowledge. |
| Mr. Blumberg: | Okay you don't need to translate this, Harinder. Mr. Amiri, have you reviewed the schedules and the statements that are filed in this case? |
| Mr. Amiri: | Yes. |
| Mr. Blumberg: | You have? |
| Mr. Amiri: | Yes, I did. |
| Mr. Blumberg: | Okay. To the best of you knowledge, are they true, complete and accurate? |
| Mr. Amiri: | Yes. |
| Mr. Blumberg: | Okay. Okay, I know that the debtor filed for bankruptcy earlier this spring, correct? |

19806062

6

| | |
|---|---|
| Mr. Knight: | That's correct. |
| Mr. Amiri: | Yes. |
| Mr. Blumberg: | And that was case no. 14-24935, correct Mr. Amiri? |
| Mr. Amiri: | The chapter 7 you mean? |
| Mr. Blumberg: | Yes, I do mean that. |
| Mr. Amiri: | Yes. |
| Mr. Blumberg: | Any prior cases other than that bankruptcy case for this debtor? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | No.  Okay.  And you Mr. Amiri have you ever filed for bankruptcy before? |
| Mr. Amiri: | Who? |
| Mr. Blumberg: | You sir.  Have you filed for bankruptcy before? |
| Mr. Amiri: | Yes.  Yes. |
| Mr. Blumberg: | How many times? |
| Mr. Amiri: | Twice. |
| Mr. Blumberg: | Are you in bankruptcy right now? |
| Mr. Amiri: | I am. |
| Mr. Blumberg: | You are.  Okay.  And where are those cases pending? |
| Mr. Amiri: | In Oakland. |
| Mr. Blumberg: | In Oakland. |
| Mr. Amiri: | It's personal. |
| Mr. Blumberg: | Was Mr. Knight your attorney in any of those bankruptcy cases? |
| Mr. Amiri: | I think he is. |
| Mr. Knight: | I don't believe we're the advisory – oh, yes, we are dealing with one adversarial issue there in the northern district. |
| Mr. Blumberg: | You're council or record, Mr. Knight for Mr. Amiri in an adversarial proceeding? |
| Mr. Knight: | That is correct, sir. |
| Mr. Blumberg: | Okay Harinder I have a question for Mr. Kang so can you translate this please. |
| Interpreter: | Okay. |
| Mr. Blumberg: | Mr. Kang, have you ever filed for bankruptcy before? |
| Interpreter: | No never before. |

| | |
|---|---|
| Mr. Blumberg: | Alright, translate this please as well: do each of you understand that as a debtor in possession this debtor has a duty to prepare and file monthly operating reports? |
| Interpreter: | Reports for what? |
| Mr. Blumberg: | Monthly operating reports. |
| Interpreter: | My accountant, it's his job to do it. He has come with me. |
| Mr. Blumberg: | Mr. Amiri do you understand that as the treasurer that the debtor is responsible for preparing and filing monthly operating reports in this case? |
| Mr. Amiri: | Yes, I do. |
| Mr. Blumberg: | Okay, thank you. |
| Mr. Amiri: | And I think we did the first quarter. |
| Mr. Blumberg: | You did? Okay, I might have missed it. |
| Mr. Amiri: | And we sent the fee. |
| Mr. Blumberg: | You sent the fee? Oh well that's important. |
| Mr. Amiri: | Today. $325.00. |
| Mr. Blumberg: | Okay. Mr. Amiri, does the debtor have any bank accounts? Mr. Amiri, does the debtor have any bank accounts? |
| Mr. Amiri: | No. At this time, no. |
| Mr. Blumberg: | Alright, Mr. Kang – please translate this: Mr. Kang, where is the debtor's principal place of business? |
| Interpreter: | Okay, interpreter wants to repeat the address. |
| Mr. Kang: | It's 55 Oak Court, Suite 100, Danville, California. |
| Mr. Blumberg: | And you're reading that off the petition, correct? |
| Mr. Kang: | Yeah, address. |
| Mr. Blumberg: | Okay. Let's take a step back. What is 55 Oak Court, Suite 100? What is it? |
| Mr. Kang: | It's an office. |
| Mr. Blumberg: | It's an office? |
| Mr. Kang: | M-hmm [*affirmative*]. |
| Mr. Blumberg: | Can you translate the question, Harinder? |
| Interpreter: | It's an office. |
| Mr. Blumberg: | And have you ever been there? |
| Interpreter: | Okay, it's my accountant who is there and he handles everything. |
| Mr. Blumberg: | But the question is; have you, Mr. Kang, ever, personally been at 55 Oak |

| | |
|---|---|
| | Court, Suite 100 in Danville, California? |
| Interpreter: | No, I never went there. Ever. |
| Mr. Blumberg: | Would you take a look at – translate this please: I'm asking Mr. Kang, could you take a look at the first page of the bankruptcy petition please? <br><br> Mr. Kang, why do you say the principal place of business for the debtor is 55 Oak Court in Danville if you've never been to that location? |
| Interpreter: | The business is conducted from there. The accountant is done over there. Everything is done from there. |
| Mr. Blumberg: | Mr. Amiri, 55 Oak Court is that your office? |
| Mr. Amiri: | It is a complex. It's a lot of offices over there include myself. |
| Mr. Blumberg: | 55 Oak Court, Suite 100, is that your office? |
| Mr. Amiri: | No. I am at Suite 120. |
| Mr. Blumberg: | Okay. Who has an office at Suite 100? |
| Mr. Amiri: | There is one, two, three, four different company. |
| Mr. Blumberg: | Four different companies? |
| Mr. Amiri: | Right. |
| Mr. Blumberg: | And can you tell me the names of those companies? |
| Mr. Amiri: | Star Holding, Amiri Management, Aria Oil and also Dara. |
| Mr. Blumberg: | Do you know how big the office space is in terms of square footage? |
| Mr. Amiri: | It's about 1000 sq. ft. |
| Mr. Blumberg: | 1000 sq. ft. Are there actually people physically at this office? |
| Mr. Amiri: | Yeah. |
| Mr. Blumberg: | There are? |
| Mr. Amiri: | There are. Yeah. |
| Mr. Blumberg: | And who are they? If not yourself? |
| Mr. Amiri: | The person you mean? |
| Mr. Blumberg: | Yeah, who actually is the physical person who's there? |
| Mr. Amiri: | For Star Holding is- |
| Mr. Blumberg: | Let's start with Dara. Who is there for Dara? |
| Mr. Amiri: | Dara, myself. |
| Mr. Blumberg: | I thought you had a different office? |
| Mr. Amiri: | I am at 120, but if there's anything then I also, they have a little office in Suite 100 I go to. |

| | |
|---|---|
| Mr. Blumberg: | Okay, what about for Star Holding? |
| Mr. Amiri: | They are - is two people working. |
| Mr. Blumberg: | Do you know their names? |
| Mr. Amiri: | Nazrin and Haleh. |
| Mr. Blumberg: | What are the last -- what's the last name of Nazrin? |
| Mr. Amiri: | My ex-wife. |
| Mr. Blumberg: | Is that Amiri? She's your ex-wife? |
| Mr. Amiri: | [Inaudible]. |
| Mr. Blumberg: | And what about the second person that you named? Haleh did you say? |
| Mr. Amiri: | Amiri. My daughter. |
| Mr. Blumberg: | That's your daughter, okay. |
| Mr. Amiri: | Working with her mom. And then for Aria it's Tran. I don't know the last name. For Amiri management it's Ann Tran, I know the last name. And for who else is- |
| Mr. Blumberg: | I think you got everybody, right? Unless I miscounted? So my question is then, do you have any interest in Star Holding? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | What about, is it Amiri Management you said? |
| Mr. Amiri: | I used to have it but I sold it long time ago. |
| Mr. Blumberg: | You sold it a long time ago. Do you recall when that was? Do you recall when that was that you sold the interest? |
| Mr. Amiri: | I think 2010. |
| Mr. Blumberg: | 2010. Okay. And what about Aria Oil; do you have an interest in that entity? |
| Mr. Amiri: | In 2008 also is sold. |
| Mr. Blumberg: | Alright, I want to hand you the petition that was filed in the prior bankruptcy case. What is that 14-24935? Mr. Knight is that a correct copy of the petition in that case? |
| Mr. Knight: | I believe that is the correct copy, Mr. Blumberg. |
| Mr. Blumberg: | Thank you, sir. Please translate this: Mr. Kang, did you sign the petition that was filed in the prior bankruptcy case of Dara? |
| Interpreter: | Yes. |
| Mr. Blumberg: | Can I draw your attention to the first page? Five boxes down it says county of principal place of business; do you see that, sir? |

| Interpreter: | Yes, Sacramento? |
| --- | --- |
| Mr. Blumberg: | Okay, my question is how come it was Sacramento as the principal place of business in May of 2014 and then approximately one month later, the county of the principal place of business became Contra Costa. Can you explain that, sir? |
| Interpreter: | Ask that to my accountant. |
| Mr. Blumberg: | Do you not know the answer to the question? |
| Interpreter: | Well he can tell you because he filled out everything. No, he didn't fill it out. That's what he said. |
| Mr. Blumberg: | So you're relying on the information from your accountant, is that correct? |
| Interpreter: | Say that again, sir. |
| Mr. Blumberg: | You were relying on information provided to you by the accountant? |
| Interpreter: | Yes. |
| Mr. Blumberg: | And is the accountant Mr. Amiri who is here today? |
| Interpreter: | Yes. |
| Mr. Blumberg: | Okay, Mr. Amiri, do you know why the principal place of business on the petition in the prior case is indicated to be Sacramento? |
| Mr. Amiri: | Yes. If you look at it we put it originally was there at 3449 El Camino which is the premises is there and then we decided we cannot use somebody else business as our office so we decided to have the office in Danville. |
| Mr. Blumberg:? | Okay on July 18th I looked up Dara Petroleum on the California Secretary of State website and I'll just represent to you that it indicated that the address for the entity was 8994 Greenback Lane is Orangeville. Are you familiar with that address? |
| Mr. Amiri: | That's right. |
| Mr. Blumberg: | And what is that? |
| Mr. Amiri: | That is the business place of the 81% owner which was – she had the gas station ad used that one as her mailing address for that. 8994 Greenback Lane, Orangeville, California. |
| Mr. Blumberg: | Who are we talking about? |
| Mr. Amiri: | We talk original 81% owner which was Narges Eghtesadi. She owns that gas station and from day one she used that address as the business for address. |
| Mr. Blumberg: | Ms. Eghtesadi, am I pronouncing that right? How do I pronounce the last name? |
| Mr. Amiri: | Eghtesadi. I apologize for not pronouncing it correctly. Does she still own an interest in Dara? |

| | |
|---|---|
| Mr. Amiri: | No. |
| Mr. Blumberg: | To whom did she sell her interest? |
| Mr. Amiri: | To Reza Amiri. |
| Mr. Blumberg: | To Reza. Okay. Do you know when that transfer took place? Do you know when that transfer took place? |
| Mr. Amiri: | I believe sometime in 2010. |
| Mr. Blumberg: | Do you know if your brother paid anything for the acquisition of the 81% interest? |
| Mr. Amiri: | They owed the supplier gas and my brother I know he accept the liability and liability of the Ciena Bank paid for the supplier and then accept the payment for the Ciena Bank and SBA loan. At that time, the station was closed and fenced off and my brother accepting to have. |
| Mr. Blumberg: | Do you have any continuing relationship to Ms. Eghtesadi? |
| Mr. Amiri: | No for almost six years. |
| Mr. Blumberg: | Was it an arm's length business relationship? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | It was not. So who – who is she then? |
| Mr. Amiri: | Huh? |
| Mr. Blumberg: | Who is she? She had a personal relationship with yourself and the other principals of this debtor? |
| Mr. Amiri: | No, I don't think so. |
| Mr. Blumberg: | Was she a relative of you or your brother? |
| Mr. Amiri: | My brother? |
| Mr. Blumberg: | Is Ms. Eghtesadi a brother a relative of yourself or your brother? |
| Mr. Amiri: | No, no. We don't have any relation. |
| Mr. Blumberg: | And how long have you been the treasurer of the debtor, sir? |
| Mr. Amiri: | When my brother came I start to taking care of his interest. |
| Mr. Blumberg: | So your involvement began when your brother acquired his 81% interest, is that correct? |
| Mr. Amiri: | Sometime before, yes. |
| Mr. Blumberg: | So before that then? |
| Mr. Amiri: | Yeah, I was in 2003 or 4, I actually put the find the station. One of my job at that time was buying, selling gas station and then I did to recommend to these people to buy this station. |

| Mr. Blumberg: | But after the acquisition was completed were you involved in running the business until your brother became involved? |
|---|---|
| Mr. Amiri: | I don't remember if I was involved. |
| Mr. Blumberg: | What is the debtor's business?  What does the debtor do? |
| Mr. Amiri: | Right now? |
| Mr. Blumberg: | Yes. |
| Mr. Amiri: | Nothing. |
| Mr. Blumberg: | Nothing?  Okay.  Does the debtor have any employees besides – well anybody?  Any employees? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | Why did the debtor file for bankruptcy? |
| Mr. Amiri: | Because they – this is another background about the debtor; debtor at 2010 on November of 2010 when they reached the settlement with Ciena Bank they really couldn't perform.  Couldn't pay the liability to supplier, to taxers and so they decided is closed to leave it closed and start holding my brother actually looking for somebody to buy it.  In 2012, January of 2012 start holding, accepting with the law firm which is Trustee.  They inform Dara, their property tax is delinquent and as a result we went and got the judgment for closure judgment, some kind of judgment and my brother asked me if I can, what we should do and we went and payment plan with the county assistant for five years and my brother said how about talking to these people see if we can now cure it if they can let us to open it so I called same law firm, Trustee, they ask, we have to send them the financial, they asked to send them the insurance, they asked to send them the tax return and also the agreement for payment plan for the taxes.  Five years payment plan.  We put all these thing together and send it to the law firm and asked them if they, if we cure the defect or problem or default and they said we let you know.  And then in January 2012, Dara really couldn't go forward and start holding all this package and inform the company we are now, we went to assistant office and recording office to see if there's anything lien, judgment, anything beside the 800 and 450 from SBA is there nothing there, we informed them and we changed the deed on January, middle of January to Star Holding and Star Holding to start to perform and collect the rent and tell them the same law firm to pick up this and Dara in reality didn't have anything and Mr. Kang was and my brother was, they stay out.  And then after 30 months when we paid the payment to Ciena Bank, we got the information the bank wants to enforce their judgment.  After 30 months to paying, I called the Ciena Bank, it said no, you are current and I saw all the statement comes and it said interest, statement, loan is 800 and the interest rate is 5.5, 5 ½ over the [inaudible] and how much you pay interest, there is no principal.  We said, you know, Dara at this point now decided to file chapter 11 and one of finals to Dara to pay the liability. |

19806062

13

| Mr. Blumberg: | Did I understand you right when you said that the real property that had been owned by this debtor was transferred to Star Holding – did I understand you right when you said that the real property, the gas station I guess it was, that had been owned by this debtor was transferred to Star Holding? |
| --- | --- |
| Mr. Amiri: | Yes. |
| Mr. Blumberg: | When was that? |
| Mr. Amiri: | January of 2012. |
| Mr. Blumberg: | January 2012.  Okay.  Okay, I'm going to ask this to Mr. Knight.  What is the purpose of this case? |
| Mr. Knight: | Well, we are trying to – we filed a motion before Judge Holman to get him to accept the civil agreement between Dara Petroleum and HSBC Bank.  The purpose of which it will satisfy a judgment against the debtor, that's outstanding.  It will also allow one of the creditors to satisfy the chapter 11 payments for Dara Petroleum.  So we're trying to get the settlement agreement approved before the court as an executory contract and assumed and then just planning on proceeding with the chapter 11 therefrom. |
| Mr. Blumberg: | Okay.  So this is my question: if the motion is granted and the debtor is able to assume a sediment agreement, do you envision of chapter 11 plan following or some kind of dismissal? |
| Mr. Knight: | Yes, we do. |
| Mr. Blumberg: | You do? |
| Mr. Knight: | Yes, we do.  And we've already had discussion with various parties for the financial resources to support a viable plan.  So yes that's what – we do envision that. |
| Mr. Blumberg: | Okay.  Can you translate this again, Harinder?  Can I ask Mr. Kang and Mr. Amiri to take a look at Schedule A of the debtor's bankruptcy schedules?  I just want to confirm, the debtor owns no real property, is that correct, Mr. Amiri? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | Okay.  Mr. Amiri, the debtor has no cash or bank accounts, is that correct? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | Mr. Amiri, does the debtor have any interest in any other corporations or LLC's or partnerships? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | Does anybody owe the debtor any money, Mr. Amiri? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | On amended Schedule F there's a claim therein favor of Star Holding.  Does |

| | the debtor owe Star Holding money? |
|---|---|
| Mr. Amiri: | If this doesn't go through, Star Holding has $100,000 cash and accepts $725 to pay Ciena back.  If it doesn't go through, they are going to go after Dara for the money they owe them.  It's 230,000 to supplier plus so far spend almost 100,000 in attorney fee and all this which we even didn't list. |
| Mr. Blumberg: | What is Star Holding's business?  What does it do? |
| Mr. Amiri: | Star Holding business is own and operate gas station. |
| Mr. Blumberg: | It owns and operates gas stations? |
| Mr. Amiri: | Own and operate gas station. |
| Mr. Blumberg: | Does it currently own gas stations aside from? |
| Mr. Amiri: | Yes.  Not this one.  They have other station.  They have three gas station with the property and two station recently they start to have operate. |
| Mr. Blumberg: | And what about Aria Oil?  What does Aria Oil do?  What's their business? |
| Mr. Amiri: | Aria Oil is wholesale of gasoline. |
| Mr. Blumberg: | It's a supplier? |
| Mr. Amiri: | Supply. |
| Mr. Blumberg: | Does the debtor have any equipment or inventory |
| Mr. Amiri: | No.  Means Dara, you mean? |
| Mr. Blumberg: | Correct, Dara. |
| Mr. Amiri: | No. |
| Mr. Blumberg: | Schedule F.  Or amended Schedule F, doesn't matter.  The claim of HSBC Bank, it's indicated to be disputed. |
| Mr. Amiri: | Excuse me. |
| Mr. Blumberg: | It's indicated to be disputed.  Can you take a look at the claim of HSBC Bank on Schedule F?  Okay, so Mr. Amiri, I'd like to draw your attention to the claim on Schedule F listed in favor or HSBC Bank. |
| Mr. Amiri: | Right. |
| Mr. Blumberg: | Do you see that sir?  Do you see the claim? |
| Mr. Amiri: | Yes, I do. |
| Mr. Blumberg: | Okay.  if you look on the far right, or almost to the far right, right before the dollar figure there's an X do see you that? |
| Mr. Amiri: | This one? |
| Mr. Blumberg: | Yes, do you see an X?  In the disputed box? |
| Mr. Amiri: | Right. |

| Mr. Blumberg: | So that indicates that Dara is disputing this debt? |
| Mr. Amiri: | Yes. |
| Mr. Blumberg: | How are they disputing the debt, what's the dispute? |
| Mr. Amiri: | Dara had the agreement with this, with Ciena. To five years pay interest and then pay them 720. And then for five years – last four years they pay all the interest. They keep paying it and from 720 to go $985, they said it's interest and attorney fee which I never saw any paper for it. So that's our dispute. And also, it was sources who pay them. |
| Mr. Blumberg: | Now, Star Holdings is owned by your former spouse is that correct? Nazrin Amiri is that correct? |
| Mr. Amiri: | I don't know. I don't know she has the majority and she has other family. I don't know if she are involved or not. |
| Mr. Blumberg: | And how long have you been divorced? |
| Mr. Amiri: | 15 years. |
| Mr. Blumberg: | 15 years. And you don't live together do you? You don't live together do you? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | Separate residences? |
| Mr. Amiri: | You know, some people is surprised we even talk to each other. |
| Mr. Blumberg: | And you're not involved in the operation of Star Holding? |
| Mr. Amiri: | No. If they have a question, I'm 40 years in the business, if they have a question, they ask. |
| Mr. Blumberg: | So you're more of just an advisor or you're an informal source of advice? |
| Mr. Amiri: | Yeah, if they have a problem they call me, you know, we have this [inaudible], we price it or are we run this or… |
| Mr. Blumberg: | But you have no financial stake? You have no financial stake in it at all? |
| Mr. Amiri: | No they don't share with me. |
| Mr. Blumberg: | Okay. And then Aria Oil company that's owned by your brother is that correct? Mr. Reza Amiri? |
| Mr. Amiri: | I think there are other people, I don't know. |
| Mr. Blumberg: | Okay. But one of them is your brother? |
| Mr. Amiri: | Yes, one is my brother. I think another brother also is involved. I don't know. |
| Mr. Blumberg: | One of your brothers? |
| Mr. Amiri: | Two, three brothers. I have three other brother, they are maybe involved. |

19806062

| | |
|---|---|
| Mr. Amiri: | I have absolutely no interest in any business. |
| Mr. Blumberg: | Alright, if I could ask you now to take a look at Schedule G now, Mr. Amiri. |
| Mr. Amiri: | Which one? |
| Mr. Knight: | Schedule G. Here's a copy of it right here. |
| Mr. Blumberg: | I wanted to ask you about the settlement agreement. Do you see that, sir? |
| Mr. Amiri: | Yes. |
| Mr. Blumberg: | The settlement agreement dated May 6, 2014. You see that listed there, sir? |
| Mr. Amiri: | Yes, |
| Mr. Blumberg: | You do. |
| Mr. Amiri: | The second part, you mean? |
| Mr. Blumberg: | Yes, the second one that's listed there. The schedule mentions a $100,000 payment. I think I saw a copy of two $50,000 checks somewhere on the docket somewhere, and they are from Harwan Kower? |
| Mr. Amiri: | Yes, I still have it. Right. |
| Mr. Blumberg: | Who is she? |
| Mr. Amiri: | She owes- |
| Mr. Blumberg: | Well first of all, is it a she? I could be wrong? |
| Mr. Amiri: | Is Indian. |
| Mr. Blumberg: | Okay. Okay, so who is she then? |
| Mr. Amiri: | Is a lady investor. |
| Mr. Blumberg: | Is she a relative of yours? Is she a relative of yours? |
| Mr. Amiri: | I'm not Indian. I'm Persian. |
| Mr. Blumberg: | Could be by marriage. |
| Mr. Amiri: | I didn't marry again. Once I married with Mrs. Amiri. |
| Mr. Blumberg: | And let me ask this question to Mr. Kang. Can you translate please? |
| Interpreter: | Sure. |
| Mr. Blumberg: | Mr. Kang, do you know who Harwan Kower is? |
| Interpreter: | She's my first ex-wife. |
| Mr. Blumberg: | And how long Mr. Kang have you been divorced from Harwan Kower? |
| Interpreter: | Since 2003. |
| Mr. Blumberg: | In the risk of sounding stupid again, I'll just ask it. Do you still, Mr. Kang, reside with your former spouse? |

| | |
|---|---|
| Interpreter: | I wish. |
| Mr. Blumberg: | So that's a no? |
| Mr. Kang: | No. |
| Mr. Blumberg: | Okay. Okay the other $725,000 who is going to come up with the money? How are you going to come up with the money for that? |
| Mr. Amiri: | Okay, let's tell you. we had Star Holding had two station in Sacramento and sold it to Harwan, that's the first time Harwan, his wife, and balance was $100,000, she had that 100,000 [*inaudible*] and also she called and arranged with the bank. Actually, I explain. I said you paid $100,000 and you within 90 days, you have to pay 725 and they have stipulation 1; if you pay it you have to pay 725 in 90 days and these people is looking at their clock. If in 90 days by 5 p.m. you don't pay them, they take your $100,000 and you have to give them the key for their station and that's the huge risk. Are you able to come with 100,000 and 725 in 90 days, she said yeah, we already arranged with the banker to give us the loan based on our credit. And also for three months they have to pay their payment to the lawyers and if they don't perform they losing all the money so far they have spent 100,000 and they lose the gas station and huge risk. And they work on this deal for two months. They filed the lawsuit in April. February, March and April, they really work and they said yes, we ready to go. And we still today, they are ready to go and take all this risk. |
| Mr. Blumberg: | This is Mrs. Kowers? This is Mrs. Kowers? |
| Mr. Amiri: | No. Star Holding. |
| Mr. Blumberg: | Star Holding. |
| Mr. Amiri: | Yeah. They want to pay the $100,000, 90 days, pay the payment and if they don't they give them the key and $100,000 for them and all the payment is for them too. |
| Mr. Blumberg: | Is there financing line up for the $725,000? |
| Mr. Amiri: | Everything is ready. |
| Mr. Blumberg: | There's a letter of payment? |
| Mr. Amiri: | But we went – the bank, it doesn't trust us because it happened in middle of April, they are said we are ready, it's hot money. It's not, you know, it's hot money. 12% interest for three years. And then they back up and it was really, and then it again in May, they said okay bank, we're going to go and they talk to the bank and then we told the bank sorry we cannot do it. If we can get to this point, everything, we can get the commandment letter and 100,000 and ready to perform. |
| Mr. Blumberg: | Is the receiver currently in possession of the gas station? |
| Mr. Amiri: | Yes. |

| | |
|---|---|
| Mr. Blumberg: | Is Mr. is it Paramjit Singh? |
| Mr. Amiri: | No, that's the tenant. |
| Mr. Blumberg: | That's the tenant. |
| Mr. Amiri: | Receiver is Single.  Kevin Single. |
| Mr. Blumberg: | Right.  Is Mr. Singh still operating the gas station there? |
| Mr. Amiri: | Yes. |
| Mr. Blumberg: | And is he an unrelated party to the debtor? |
| Mr. Amiri: | I don't know. |
| Mr. Blumberg: | Do you know? |
| Mr. Amiri: | Excuse me? |
| Mr. Blumberg: | Is Mr. Singh unrelated to the debtor? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | He's not? |
| Mr. Amiri: | He has a couple of gas stations.  Tenant. |
| Mr. Blumberg: | Not a relative or a – with any of the principals there right? |
| Mr. Amiri: | I really don't know.  I just leave it to him and then his perform. |
| Mr. Blumberg: | Oh, can you tell me the name of the hard money lender?  Can you tell me the name of the hard money lender? |
| Mr. Amiri: | Yes. |
| Mr. Blumberg: | Who is it? |
| Mr. Amiri: | First financial credit.  And I'm asking, I don't want another lawyer call and disturb our relation.  Please, if I tell you this information it just has to be stay, you know. |
| Mr. Blumberg: | I'm not going to call them, don't worry about it. |
| Mr. Amiri: | No, not you.  I know them, they gonna.  Oh you know these people and you know.  Actually, we have three [*inaudible*]. |
| Mr. Blumberg: | Have you ever heard of Kang Property, Inc.?  The entity, what is that? |
| Mr. Amiri: | Yes, it was his and in '09 I bought it and then we close. |
| Mr. Blumberg: | Does it have any assets?  Does the entity have any assets? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | Alright, I'm going to turn it over to the creditors or anyone else who wants to ask any questions. |
| Mr. Pezold: | Mr. Amiri, my name is Eric Pezold.   I represent HSBC. |

19806062

19

| | |
|---|---|
| Mr. Amiri: | Excuse me? |
| Mr. Pezold: | My name is Eric Pezold. |
| Mr. Amiri: | Talk a little bit louder, please. |
| Mr. Pezold: | And I represent HSBC Bank.  I want to go back to this transaction that you were describing to Mr. Blumberg.  What relationship – let me ask you this: Harwan Kower who is Mr. Kang's ex-wife provided two $50,000 checks to the debtor? |
| Mr. Amiri: | Yes. |
| Mr. Pezold: | Okay.  And are those checks, are they certified checks? |
| Mr. Amiri: | Yes. |
| Mr. Pezold: | Okay. |
| Mr. Amiri: | I have a copy of them with me. |
| Mr. Pezold: | But in this hard money loan that you're describing, the borrower under that hard money loan is Star Holding? |
| Mr. Amiri: | Yes. |
| Mr. Pezold: | So what's the relationship between Harwan Kower and Star Holding? |
| Mr. Amiri: | Okay as explained to the attorney; Star Holding had two station in Sacramento and Danika and sold it.  The balance of the money was $100,000 and Star Holding need money and told them with the notice about 30 days' notice, we need our loan.  And she said I have it ready and we said we have to be in a cashier check, we don't accept the check. |
| Mr. Pezold: | Okay.  so there was a seller carryback note- |
| Mr. Amiri: | 100,000. |
| Mr. Pezold: | Alright.  Okay.  Mr. Kang, what consideration – when did you become President of the debtor? |
| Interpreter: | You want me to translate? |
| Mr. Blumberg: | Yes, I think you should. |
| Interpreter: | Okay.  When – say that question again, sir. |
| Mr. Pezold: | When did Mr. Kang become President of the debtor? |
| Interpreter: | I can't recall.  My memory is not that good. |
| Mr. Pezold: | Has the debtor ever had another president? |
| Interpreter: | Yes. |
| Mr. Pezold: | And who was that? |
| Interpreter: | I don't recall the name.  It was Kazi something.  Hard to pronounce it.  She's an attorney. |

| | |
|---|---|
| Mr. Pezold: | Mr. Kang are you paid by the debtor? |
| Interpreter: | No, I don't get anything. |
| Mr. Pezold: | For your 81% interest in the debtor, what did you pay? |
| Mr. Kang: | No, I'm not 81%. I'm 19%. |
| Mr. Pezold: | I'm sorry. Is it 19? |
| Mr. Kang: | Yeah. |
| Mr. Pezold: | What did you pay for your 19% interest in the debtor? |
| Interpreter: | It took place in 2003 and I put in $80,000. Yes. |
| Mr. Pezold: | What did the debtor do with the 80,000? |
| Interpreter: | It was the down payment. |
| Mr. Pezold: | Down payment for what? |
| Interpreter: | It must be for the property, what else? |
| Mr. Pezold: | Who paid the filing fee for this bankruptcy case? |
| Interpreter: | What did you say? |
| Mr. Pezold: | I'll ask it again. To file a bankruptcy case, there is a filing fee that is required; who paid that fee? |
| Interpreter: | Star Holding paid it. |
| Mr. Pezold: | What did Star Holding receive in exchange for paying the bankruptcy filing fee? |
| Interpreter: | Okay, they have the deed. Star Holdings has the deed. Dara doesn't have anything. Star Holding does everything. It went to them. [*Inaudible*] about it. |
| Mr. Pezold: | Can you repeat that translator? |
| Interpreter: | I don't know a whole lot about it. |
| Mr. Pezold: | Was the filing fee a loan from Star Holding to Dara? |
| Interpreter: | No. |
| Mr. Pezold: | Was it a gift? |
| Interpreter: | No, no gift. |
| Mr. Pezold: | Was it a capital contribution? |
| Interpreter: | No. |
| Mr. Amiri: | I ask Star to pay. |
| Mr. Pezold: | So if I were to look at the debtor's books and records, where would I see the filing fee that was paid by Star's Holding? |

| | |
|---|---|
| Mr. Amiri: | I can ask that question. |
| Mr. Pezold: | Just a second, Mr. Amiri. |
| Mr. Amiri: | He doesn't know anything. He doesn't do any accounting. |
| Mr. Pezold: | I think he answered, translator. |
| Interpreter: | Okay, interpreter didn't know who answered it. |
| Mr. Kang: | What you tried to say? |
| Mr. Pezold: | I asked if I were to look at the debtor's books and records where would I find this filing fee. |
| Interpreter: | Okay, to ask me, tell him to ask Star Holding. |
| Mr. Pezold: | Okay so you don't know the answer to that question? |
| Mr. Amiri: | Why you asking all the question? |
| Interpreter: | I don't know any accounting. It's my treasurer and my bookkeeper who does it. You need to ask him. |
| Mr. Pezold: | Does the debtor hold board meetings? |
| Interpreter: | What? |
| Mr. Pezold: | Mr. Blumberg, I realize this is kind of casual, but is there any ground rules we could put in place when I'm just asking Mr. Kang? |
| Mr. Blumberg: | Well, I mean, if it's a question for Mr. Kang, let Mr. Kang answer. |
| Mr. Pezold: | Thank you. Okay, let me ask the question. Let me just ask the question again. Does the debtor hold board meetings? |
| Mr. Blumberg: | If you don't know- |
| Interpreter: | Yes. |
| Mr. Pezold: | Okay. Who are the board members of the debtor? |
| Interpreter: | I was a member and one was Amiri. Interpreter doesn't understand. Yes. What did you say? |
| Mr. Pezold: | Are there – is there one or more board members of the debtor? |
| Interpreter: | Okay which debtor are you talking about? Which company are you talking about? |
| Mr. Pezold: | Well, we're here in a bankruptcy case of Dara Petroleum. That's the debtor. |
| Interpreter: | Alright. |
| Mr. Pezold: | Okay, so the question is does Dara, the debtor in this bankruptcy case have any director- |
| Mr. Amiri: | Talk to translator, please. |
| Mr. Pezold: | Mr. Amiri, I'm going to have to insist that you not talk unless I'm asking you |

| | a question. I'm talking to Mr. Kang, okay? |
|---|---|
| Mr. Amiri: | You know you – okay is, what it is, is directly ask the question and he doesn't understand and translator is going to go- |
| Mr. Blumberg: | [Inaudible] to Mr. Pezold, the translator is not here so he can't look at the translator, she has to listen, so I think he's doing it okay. |
| Mr. Amiri: | Okay. |
| Mr. Pezold: | Mr. Kang, does the debtor – and Mr. Kang, wait till the interpreter interprets my question before you respond to it, okay? |
| Interpreter: | Alright. |
| Mr. Pezold: | Alright. Are there any board members of Dara Petroleum, the debtor in this bankruptcy case? |
| Interpreter: | What did you say? Can you say it again? I didn't understand. |
| Mr. Pezold: | Mr. Kang, who makes decisions for Dara? |
| Interpreter: | It's two of us that make the decisions. Its' Reza Amiri and I. |
| Mr. Pezold: | Do you have any ability to make any decisions without Mr. Reza? |
| Interpreter: | No. |
| Mr. Pezold: | Mr. Amiri, you mentioned that you are in bankruptcy yourself, is that right? |
| Mr. Amiri: | Yes. |
| Mr. Pezold: | I'll show you; this is a copy of the schedules that were filed in that case. Does that look familiar to you? |
| Mr. Amiri: | Yes. |
| Mr. Pezold: | Could I just have you flip to Schedule B. Here I'll – yeah, right there. I'm sorry? |
| Mr. Knight: | You want C or B? |
| Mr. Pezold: | B. |
| Mr. Amiri: | Yeah. |
| Mr. Pezold: | May I see this? That's Schedule C. Mr. Amiri, do you see where it describes a lawsuit in which you have listed as an asset of your case, a lawsuit on behalf of Dara Petroleum? |
| Mr. Amiri: | Where? |
| Mr. Pezold: | Can you read that circled language for me? Could you read this for me? Out loud. |
| Mr. Amiri: | Yeah. |
| Mr. Pezold: | Could you read it out loud? |

| Mr. Amiri: | From where?  Improper foreclosure of debtor 30% common stock interest in a [*inaudible*] property. |
|---|---|
| Mr. Pezold: | Okay.  May I see it? |
| Mr. Amiri: | Yes, sir. |
| Mr. Pezold: | Why is it that in your Schedule C, that you are listing as a cause of action against Ramas Oil, Inc. for improper foreclosure of debtor as 30% common stock interest in Kang Property, Inc.? |
| Mr. Amiri: | What is the question? |
| Mr. Pezold: | Did you testify earlier that you no longer have an interest in Kang Property? |
| Mr. Amiri: | Yeah, I don't have any. |
| Mr. Pezold: | So why are you listing a cause of action on behalf of Kang property? |
| Mr. Amiri: | I had 30% and the Ramas Oil company foreclosed on us and took it.  So I have no interest in it anymore. |
| Mr. Pezold: | Alright.  Who is -- you testified earlier that there's a tenant on the property at 3449 Camino, is that right? |
| Mr. Amiri: | Yes. |
| Mr. Pezold: | I have a check here written on behalf of Paramjit Singh dba Wad Avenue; why is the tenant paying the property taxes for this property? |
| Mr. Amiri: | I don't know what kind of attorney you are.  This lease, we provide it to you.  It's triple net rent, means tenant pay all the expenses. |
| Mr. Pezold: | Gotcha. |
| Mr. Amiri: | At least you learn something. |
| Mr. Pezold: | Triple net lease.  Is that right? |
| Mr. Amiri: | Yes, sir. |
| Mr. Pezold: | Okay.  In the schedules that were filed Mr. Amiri, I think Mr. Blumberg showed you this amended list of 20 largest unsecured creditors.  Here.  Why is it that Stars Holding is putting a claim in this bankruptcy case on behalf of Aria Oil? |
| Mr. Amiri: | They bought the Aria Oil interest.  When they bought this gas station, the daughter owed Aria $231,000; they told the daughter we're going to be responsible for it.  As a result they are creditor of the daughter. |
| Mr. Pezold: | So Stars Holding now owns Aria Oil? |
| Mr. Amiri: | Yes.  When they bought the gas station. |
| Mr. Knight: | Okay, I'm sorry; he may have misunderstood that, okay.  You used the word own or owe? |
| Mr. Pezold: | Own.  Does Stars Holding own Aria Oil? |

| Mr. Amiri: | I think they have some share on it. I am not sure. |
|---|---|
| Mr. Pezold: | Okay. Alright. Is Stars Holding asserting a claim against this debtor in this case? |
| Mr. Amiri: | Yes. |
| Mr. Pezold: | Okay. so will schedule- |
| Mr. Amiri: | If this doesn't go through. If this doesn't go through, they gonna go after Dara, us for $231,000 plus other expenses. |
| Mr. Pezold: | So will Schedule F be amended to include this claim of stars holding? |
| Mr. Amiri: | I don't know. That's attorneys. |
| Mr. Knight: | Could you repeat that Mr. Pezold. I'm sorry. |
| Mr. Amiri: | |
| Mr. Pezold: | I was asking if Stars Holding Company asserts a claim against the debtor, is Schedule F going to be amended to include that claim. |
| Mr. Knight: | Most likely yes. If there is a claim filed, we would have to amend it. |
| Mr. Blumberg: | Was it not amended already? |
| Mr. Knight: | We amended it once, that's correct. |
| Mr. Blumberg: | I thought I saw [*inaudible*] holding an amended Schedule F, but I might be mistaken about that. |
| Mr. Knight: | I think I have it here. well needless to say Mr. Pezold, if it is a claim against the debtor, by right, we'll have to amend Schedule F. |
| Mr. Pezold: | Okay. |
| Mr. Knight: | If we have done so already, then that's the case. |
| Mr. Pezold: | Sure. I didn't see one, so… |
| Mr. Blumberg: | Yeah, I believe there was an amended Schedule filed. |
| Mr. Pezold: | Do you need to take a break, Mr. Knight? |
| Mr. Knight: | Just one minute. |
| Mr. Pezold: | Okay. I'll wait. Just a few more questions. |
| Mr. Blumberg: | Yeah, I think it was Docket No. 19. There was an amended Schedule F filed. |
| Mr. Pezold: | So Mr. Knight, you're back and ready to go? |
| Mr. Knight: | Ready to go. |
| Mr. Pezold: | Alright. Mr. Amiri, are you aware that a judgment was entered against Dara Petroleum in January of 2013? |
| Mr. Amiri: | 2013? No, I don't know. |

| | |
|---|---|
| Mr. Pezold: | Are you aware of whether a judgment was entered against the debtor in January 2012? |
| Mr. Amiri: | Yes. I heard about it. |
| Mr. Pezold: | Okay. From January of 2012 to the present, has Dara itself made any payments on this judgment to HSBC Bank? |
| Mr. Amiri: | We didn't deal with HSBC at all. We directly deal with Ciena Bank. They sent us the statement and their order and has been paid for last 30 months. We never deal with HSBSU. |
| Mr. Pezold: | Has Dara- |
| Mr. Amiri: | By your instruction. By your law firm, I have a letter, it said please send the direct payment to Ciena Bank and here the account number. And we authorized Ciena Bank to take the EFT from the tenant account as their rent – our rent. |
| Mr. Pezold: | Who owns the tenant account? Who owns the tenant account? |
| Mr. Amiri: | Tenant is Paramjit Singh, is a tenant. We told him instead of to pay Dara told the tenant, instead of to pay us, you pay to Ciena Bank for first five, six payment, Dara paid and then we said to EFT the tenant account and we gave the Ciena Bank the tenant account to pick it up to EFT the account. |
| Mr. Pezold: | So from January of 2012 Dara made payments directly to Ciena? |
| Mr. Amiri: | The tenant. |
| Mr. Pezold: | Okay. So- |
| Mr. Amiri: | Ciena Bank sent statement, loan statement, it's got a loan statement, monthly loan statement to Dara at the P.O. Box Concord and we tell the tenant at the first day EFT the account as the rent. Don't pay the rent, just pay it to Ciena. |
| Mr. Pezold: | Why was Dara directing – when did you say that Stars Holding took ownership of the station? The 3449 El Camino address? |
| Mr. Amiri: | January of 2012. |
| Mr. Pezold: | So if Dara – Dara didn't own the property after that, is that right? |
| Mr. Amiri: | Right. |
| Mr. Pezold: | So why is Dara telling a tenant to pay Ciena when Dara doesn't own the property anymore? |
| Mr. Amiri: | Is January 12 when Star Holding got it. Before that, even Dara told the tenant to pay it. Our agreement start at November 1st with Dara 2011. We pay first payment, Dara paid in June of 2010. I'm sorry, start in 2010. November 1, 2010 when settlement reach until June of 2011, Dara paid directly and then they want to EFT the account. We told them okay since you pay the rent to us we have to pay it. Let them at the first of the month, Dara told the tenant in June 1st of 2011 to pay the payment directly to Ciena. |

|  | Not at 12, at June 1st of 2011 by your law firm instruction we EFT the tenant account. |
|---|---|
| Mr. Pezold: | Yeah, what I'm asking is after January 12, how can Dara direct a tenant to make payments to Ciena when Dara didn't own the property anymore? |
| Mr. Amiri: | As I told you, on June 1st of 2011 Dara since they didn't – they want to EFT the account, we told the tenant by your instruction to EFT the tenant account and take their payment, whatever it is, the rent was payment.  Equal to payment, it's not more than the payment. On June 1st of 2011 the Ciena Bank EFT the tenant.  Dara told you don't need to pay me anymore rent, pay the different between 6,000 and the payment to us that let Ciena take the money from your account and is set this pay by your law firm instruction. |
| Mr. Pezold: | And your recollection is that the letter from me was to- |
| Mr. Amiri: | Not you, sir.  It's Matt – John Matthews or John, his name was John Matthews.  The attorney handled the settlement of the 2010.  I have his letter actually in my car.  If you want it, I can give you copy. |
| Mr. Pezold: | For what it's worth, he's not with my firm, but I - |
| Mr. Amiri: | Yeah, he instruct us to pay and from that point I never heard from you guys. |
| Mr. Pezold: | Have you talked to Mr. Paramjit Singh say in the last 30 days? |
| Mr. Amiri: | Yes. |
| Mr. Pezold: | And why were you talking to Mr. Singh? |
| Mr. Amiri: | I told him in after there is a good possibility there is a receiver is now – you may lose the – we maybe lose the property.  Dara – Star, they may lose the property and you have to go. |
| Mr. Pezold: | But Dara's already lost the property.  Dara has already lost the property.  Doesn't own it anymore. |
| Mr. Amiri: | That's you say it.  We don't believe it. |
| Mr. Pezold: | Do you make calls on behalf of Stars? |
| Mr. Amiri: | To who? |
| Mr. Pezold: | Mr. Singh. |
| Mr. Amiri: | No. |
| Mr. Pezold: | So if I ask Mr. Singh if you- |
| Mr. Amiri: | Dara is original tenant – original landlord was Dara. |
| Mr. Pezold: | Has Stars Holding ever made a payment directly to Ciena Bank? |
| Mr. Amiri: | I don't know. |
| Mr. Pezold: | Okay.  Is there any agreement whatsoever between the debtor and Stars Holding? |

| Mr. Amiri: | Yes. |
|---|---|
| Mr. Pezold: | What's the agreement? |
| Mr. Amiri: | Agreement says that we gonna – we told Star if you accept the $231,000, you accept to pay Ciena Bank and you accept the SBA loan and if you accept to pay the property tax, the back property tax, you can have it, but you have to continue to pay the payment and by December 1 of 2015 you have to pay $720,000 to buy the property. |
| Mr. Pezold: | Is this agreement in writing? |
| Mr. Amiri: | Yes.  Actually, I think they hire lawyer to put it together. |
| Mr. Pezold: | Okay so there's some writing between some kind of asset sale agreement between Stars and Dara? |
| Mr. Amiri: | I know they call it purchase agreement. |
| Mr. Pezold: | Okay. |
| Mr. Amiri: | And it is done, you know, they just want to make sure it is in writing so they know what they… |
| Mr. Pezold: | And was that dated sometime in January 2012? |
| Mr. Amiri: | January, actually, before end of January. |
| Mr. Pezold: | Okay.  Does Dara have any utility bills?  Does Dara have any utility bills? |
| Mr. Amiri: | No.  What you mean utility?  Means water? |
| Mr. Pezold: | Does Dara have a lease agreement? |
| Mr. Amiri: | We offer them office.  Star Holding offered them the office – like use of the paper, first time they close the office at 3 o'clock on a Friday and you come and you took somebody from you take the paper, we [*inaudible*] and put the sign here, this is Star Holding.  If there's any legal paper, come just drop it in this office.  And the second time when he came, directly for the [*inaudible*] went to their office and drop the paper. |
| Mr. Pezold: | So, is there a lease agreement bet – so Stars is letting space to Dara? |
| Mr. Amiri: | Yeah, one office.  One, maybe I can say 10x6 office for them in case there is any legal paper is filed or this is the principal no longer any other places. |
| Mr. Pezold: | And what does Dara pay for that space? |
| Mr. Amiri: | I don't know, but they pay equal to other side which I think they pay $2,000. |
| Mr. Pezold: | You're the accountant and treasurer from Dara? |
| Mr. Amiri: | I don't pay anything to Star, but I know, I think Star pay $2,000+ for the place. |
| Mr. Pezold: | Yeah, but I'm not asking what you pay.  I'm asking what Dara pays for this space at Stars Holding's office. |

| Mr. Amiri: | Nothing. Star let them to have this office in case you want it, you know, somebody want to serve - principal place they call it. We keep their papers over there if there's any paper for pass, it stay there. |
| Mr. Pezold: | So this 55 Dan Court address –sorry. This Oak Court address is like a drop box? |
| Mr. Amiri: | No, sir. We call it office. Has a desk, has a chair, has a cabinet and we call it office. It's not drop box. If anybody wants to serve for legal paper or they want to talk to Dara they will come to come over there. |
| Mr. Pezold: | So if Dara did want to use the office space to pick up these documents that are dropped off, would Dara pay utilities? Does it have a phone? Does it have a phone? |
| Mr. Amiri: | They don't have a phone and this office is gross. Means the landlord pay for the utility. |
| Mr. Pezold: | Okay so is there a written lease agreement between Dara and Stars? |
| Mr. Amiri: | No. Star and the landlord, but not with Dara. |
| Mr. Pezold: | I'm asking about between Dara and Stars? |
| Mr. Amiri: | No. |
| Mr. Pezold: | So you're typical understanding is with a gross lease that would include a telephone line? |
| Mr. Amiri: | Doesn't have a telephone line. |
| Mr. Pezold: | Okay. |
| Mr. Amiri: | If they call Star, somebody – we usually give the – if somebody ask for Dara phone, we give them the switchboard phone number and if they ask for Dara they tell them you have a phone. |
| Mr. Pezold: | I see. So if called – what number would I call if I wanted to talk to Dara? |
| Mr. Amiri: | Dara – write it down so you don't forget. It's 925-838-2621. |
| Mr. Pezold: | And this is - this is not Dara's direct line? |
| Mr. Amiri: | That's the switchboard for that complex. If you call that number and say I want to talk to Dara, they said okay, Dara pick up the phone. |
| Mr. Pezold: | Alright. Mr. Knight has been retained by Dara to represent Dara in this case? |
| Mr. Amiri: | Yes. |
| Mr. Pezold: | And who paid Mr. – has Mr. Knight been paid a retainer? |
| Mr. Amiri: | Yes. |
| Mr. Pezold: | And who paid that? |
| Mr. Amiri: | Star. |

| Mr. Pezold: | Okay. Is there an employment agreement between Stars and Mr. Knight? |
|---|---|
| Mr. Amiri: | I don't know that. I know we have agreement between Star and Dara and Mr. Knight. |
| Mr. Pezold: | Who signed that letter? The agreement? The employment agreement? |
| Mr. Amiri: | I don't remember now. |
| Mr. Pezold: | Mr. Kang, who signed the employment agreement between Dara and Mr. Knight? Translator can you translate that? |
| Interpreter: | I didn't understand if you can repeat it? |
| Mr. Pezold: | Mr. Kang, did Dara hire Mr. Knight to represent Dara in this bankruptcy case? |
| Interpreter: | No. Star did. |
| Mr. Amiri: | Star paid for it. |
| Mr. Pezold: | Mr. Kang, is there a written agreement between Dara and Mr. Knight to represent Dara in this case? |
| Interpreter: | Say that again, what did you say? |
| Mr. Pezold: | Mr. Kang, I was asking whether there was a written agreement between Dara and Mr. Knight where Dara has asked Mr. Knight to represent Dara in this bankruptcy case. |
| Interpreter: | Yes. |
| Mr. Pezold: | Who signed the letter on behalf of Dara? |
| Interpreter: | I did them myself. |
| Mr. Pezold: | Okay. Is it your understanding Mr. Kang that Stars Holding paid Mr. Knight for his services in this case? |
| Interpreter: | Yes. |
| Mr. Pezold: | Is there an agreement in place between Dara and Stars for Dar – well, let ask – withdraw the question. What – where would I find – withdraw the question. How much has Stars Holding paid Mr. Knight in this case? |
| Interpreter: | I don't know. You need to talk to Star. |
| Mr. Knight: | May I make council commentary on this? To your question. |
| Mr. Amiri: | This is the confidence. |
| Mr. Knight: | No, no. Outside of confidential areas, there is an agreement between Dara Petroleum and my office. I had Galen Gentry send that out to the appropriate parties. It's between Dara Petroleum and myself and my office. It was signed by a Dara Petroleum representative. I'd have to pull it out to find out exactly who that is now, but I, you know, Galen sent it out. It was signed. That's all I knew when we got ready to go the first time around with your |

|  | hearing – original hearings before Judge Holman.  And as far as payment is concerned all I know is that it came from Dara Petroleum.  I have no relationship with Stars, I've never talked to anybody of Stars and that's it. |
|---|---|
| Mr. Pezold: | Mr. Amiri, do you remember writing a check for Mr. Knight for Mr. Knight's attorneys' fees? |
| Mr. Amiri: | Excuse me? |
| Mr. Pezold: | Did you write a check to Mr. Knight for Mr. Knight's retainer? |
| Mr. Amiri: | I did? |
| Mr. Pezold: | I'm asking you.  Did you write a check to Mr. Knight? |
| Mr. Amiri: | Personally? |
| Mr. Pezold: | Did Dara write a check to Mr. Knight? |
| Mr. Amiri: | I don't know how they paid it. |
| Mr. Pezold: | Who's they? |
| Mr. Amiri: | Star.  I didn't pay it. |
| Mr. Pezold: | Okay.  Mr. Kang, did you write a check to Mr. Knight? |
| Interpreter: | No. |
| Mr. Pezold: | Okay.  Mr. Amiri, is there any kind of agreement in place between Stars Holding and Dara whereby Stars will pay all of Mr. Knight's attorneys' fees in this case? |
| Mr. Amiri: | Star Holding pay if any expenses for Dara, Star Holding is paying it.  There is no agreement as they pay their taxes even.  Star Holding pay the taxes for Dara because Dara doesn't have any income.  Doesn't have any bank account.  So if Star – I don't know how, where they paid it, but they paid that.  All the expenses of Dara is paid by Star Holding. |
| Mr. Pezold: | What taxes are you talking about that were paid by Stars? |
| Mr. Amiri: | I – they paid the IRS.  They pay franchise taxes.  They pay [*inaudible*] taxes, they pay it. |
| Mr. Pezold: | Who talks to – who tells Stars what expenses there are of Dara? |
| Mr. Amiri: | If it's related to Aria it comes to me and I will pass it to them. |
| Mr. Pezold: | Do you have an interest in Aria?  Do you have an interest in Aria?  Do you own any equity in Aria? |
| Mr. Amiri: | Nothing.  I don't own anything, anywhere.  So no Aria, no Star, no Dara, nothing. |
| Mr. Pezold: | Are you an officer of Aria? |
| Mr. Amiri: | No.  I'm no longer with officer and if I'm in Dara because of my brother ask me to do the accounting. |

19806062

31

| Mr. Pezold: | So any expenses for Dara, you would know about; is that right? |
| Mr. Amiri: | If they come to me, if they ask me, I pass it to Star. I say, hey, you have to pay this, you have to pay that and you have to do it. |
| Mr. Pezold: | I see.  What – are you paid by Dara? |
| Mr. Amiri: | Me? No. |
| Mr. Pezold: | You just do this for free? |
| Mr. Amiri: | Yes. |
| Mr. Pezold: | Okay. |
| Mr. Amiri: | I don't do too much. |
| Mr. Pezold: | That's all I have. |
| Mr. Blumberg: | Sir in the back, do you want to ask any questions? |
| Male: | I have no questions. |
| Mr. Blumberg: | I did have a couple of questions.  In preparing for this meeting of creditors we came across a lawsuit filed by the state water resort– |
| Mr. Amiri: | Excuse me? |
| Mr. Blumberg: | In preparing for this meeting of creditors we came across a lawsuit filed by the State Water & Resources Controlled Board against a number of parties, including Mr. Amiri yourself personally and this debtor, Dara.  Are you familiar with this lawsuit? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | You've never heard of it? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | Okay. |
| Mr. Amiri: | I don't know.  Nobody serve us. |
| Mr. Blumberg: | Well I'll hand you a copy of the complaint.  Why don't you take a look at it? |
| Mr. Amiri: | You wanted – you mean, serving me? |
| Mr. Blumberg: | I'm not serving you.  I'm saying, have you heard of it?  Have you seen this complaint before?  Are you aware of this lawsuit? |
| Mr. Amiri: | No, no, that's fine.  Thank you. |
| Mr. Blumberg: | I'm not giving it to you.  I'm not serving it to you.  I'm saying, are you familiar with this lawsuit? |
| Mr. Amiri: | No, no. |
| Mr. Blumberg: | No? Not at all? |
| Mr. Amiri: | I don't know. |

| | |
|---|---|
| Mr. Blumberg: | Okay. I'll ask the questions to Mr. Kang; can you translate please, Harinder? |
| Interpreter: | Yes, sir. |
| Mr. Blumberg: | Mr. Kang, are you familiar with the lawsuit filed against yourself personally and the debtor by the State Water & Resources Control Board? |
| Interpreter: | No. |
| Mr. Blumberg: | Okay. Mr. Kang, does the debtor, that is Dara Petroleum, does Dara Petroleum own an ownership interest in an entity called Tahoe 3208 Highway 50 corporation? |
| Interpreter: | To my best knowledge, there isn't any. |
| Mr. Blumberg: | Are you familiar with that entity, however? |
| Interpreter: | I know about the place, but I don't know about the case. |
| Mr. Blumberg: | Okay. I'll just ask you the same question, Mr. Amiri. Do you know if the debtor owns an interest in Tahoe 3208 Highway 50 corporation? |
| Mr. Amiri: | No, and I'm telling you Dara has absolutely no interest in anything else besides this property. |
| Mr. Blumberg: | I just want to ask you about a couple – maybe about 10 entities, Mr. Amiri. You let me know whether you are an officer, a director or have an ownership interest in any of these entities okay? |
| Mr. Amiri: | In which one? |
| Mr. Blumberg: | I'm going to ask you. I'm going to ask you about 10 of them. |
| Mr. Amiri: | Okay, sure. |
| Mr. Blumberg: | Amiri Management Company, Inc.? do you have a - |
| Mr. Amiri: | I start it, but I'm out. |
| Mr. Blumberg: | No current interest? Or position with that entity? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | Okay. What about Amiri Oil Company, Inc.? |
| Mr. Amiri: | No. They are closed at 2008. |
| Mr. Blumberg: | Okay. Aria Oil Company, Inc.? |
| Mr. Amiri: | 2010. |
| Mr. Blumberg: | So no current interest, no current position? |
| Mr. Amiri: | No. no. |
| Mr. Blumberg: | What about Dunnigan Sacramento, LLC? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | What about Emerald Business Group, Inc.? |

| | |
|---|---|
| Mr. Amiri: | No. |
| Mr. Blumberg: | What about - |
| Mr. Amiri: | You know, they may put me as there because before we had our company, we did advise the people to buy/sell the gas station and also marketing, you know, what the price to put and maybe their agent if anything is – they should send the letter, you know, be agent for if any paper wants to be served or I don't know. |
| Mr. Blumberg: | So you might be an agent for service of process for that entity?  You might be an agent for the service of lawsuits or other [*inaudible*]? |
| Mr. Amiri: | Or anybody wants – because we also making the corporation.  Making LLC, making all this. |
| Mr. Blumberg: | But no longer are you an agent? |
| Mr. Amiri: | No, I am a 70 years old. |
| Mr. Blumberg: | What about Myers Holding Company, LLC? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | What about North Tahoe Station, Inc.? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | Parthian, Inc.?  No?  Sacramento Dunnigan Property, Inc.? |
| Mr. Amiri: | I have – no. |
| Mr. Blumberg: | No?  Okay.  I just got a few more.  South Tahoe Station, Inc.? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | Okay.  Stock – oh, we already know about that one.  This one we already touched on.  Tahoe 3208 Highway 50 corporation; do you personally have any position or ownership interest with this company? |
| Mr. Amiri: | I don't.  I don't really know.  I am not, and I don't know if I was. |
| Mr. Blumberg: | Okay.  Tahoe Blue, LLC?  No.  Tahoe Blue Property, Inc.?  That's a no. And then Tahoe Station, Inc.? |
| Mr. Amiri: | No. |
| Mr. Blumberg: | No.  Okay.  Alight.  That's all the questions I have.  I do want to suggest some amendments to the - |
| Mr. Knight: | We'll take this.  Thank you. |
| Mr. Blumberg: | Sounds like people were talking about purchase agreements, I don't know the status of those, but to the extent necessary those might or should be added to Schedule G.  Switching to the Statement of Financial Affairs, it states there the receiver has not taken possession of the property, I think that's incorrect from the testimony today.  I think that should be amended.  Item 9 of the |

|  | Statement of Financial Affairs payments related to debt counseling, it says here that Mr. Knight, you received $3,000 from Stars Holding, Co., LLC, I'm looking at your disclosure of compensation which was filed at Docket No. 63, it says you have received $2,000.  There's an inconsistency there which needs to be remedied. |
|---|---|
| Mr. Knight: | Okay. |
| Mr. Blumberg: | And then Items 21 and 22 of the Statement of Financial Affairs are blank and I'm sure there were at some point officers and directors so that needs to be amended. |
| Mr. Knight: | I'll get those amendments in to the office ASAP. |
| Mr. Blumberg: | Alright.  Does anyone have any more questions?  Alright, I'm going to conclude the meeting. |
| Mr. Pezold: | Thank you, Mr. Blumberg.  [*End of recording.*] |

1    **PROOF OF SERVICE**

2        I am employed in the County of Orange, State of California. I am over the age of
3    18 and not a party to the within action; my business address is 600 Anton Boulevard,
     Suite 1400, Costa Mesa, CA 92626-7689.

4        On March 11, 2015, I served, in the manner indicated below, the documents
5    described as

6    **DECLARATION OF ERIC S. PEZOLD IN SUPPORT OF PLAINTIFF'S**
7    **APPLICATION FOR ISSUANCE OF ORDER DIRECTING STARS**
     **HOLDING CO. LLC, AZAD AMIRI AND SARBJIT S. KANG TO SHOW**
8    **CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT**

9    on the interested parties in this action by placing true copies thereof, enclosed in sealed
10   envelopes, at Costa Mesa, addressed as follows:

11   Stars Holding Co. LLC                        Stars Holding Co. LLC
     1514 3rd Avenue                              P.O. Box 5728
12   Walnut Creek, CA 94597                       Concord, CA 94524

13   Parjmit Singh                                Kevin Singer
     3449 El Camino Avenue                        RECEIVERSHIP SPECIALISTS
14   Sacramento, CA 95821                         980 9th Street
                                                  16th Floor
15                                                Sacramento, CA 95814

16   ☒   **BY U.S. MAIL:** I caused such envelopes to be deposited in the United States
17       mail at Costa Mesa, California, with postage thereon fully prepaid. I am readily
         familiar with the firm's practice of collection and processing correspondence for
18       mailing. It is deposited with the United States Postal Service each day and that
         practice was followed in the ordinary course of business for the service herein
19       attested to  (C.C.P. § 1013(a)).

20   ☒   **BY OVERNITE/FEDERAL EXPRESS**: I caused such envelopes to be
21       delivered by courier, with next day service, to the offices of the addressees
         below. (C.C.P. § 1013I(d)).

22
23   Senior Judge William B. Shubb
     United States Bankruptcy Court, Eastern District
24   501 I Street, Courtroom 5, 14th Floor
     Sacramento, CA  95814

25

26

27

28

16409375

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

☒   **BY ELECTRONIC TRANSMISSION:** The following parties were served electronically by the Court:

Jeffrey S. Kravitz ............kravitzlaw@aol.com
John Phillip Mertens .........jmertens@padrm.com,lbutler@padrm.com
Bobbie J. Montoya , cv ......bobbie.montoya@usdoj.gov,
paulette.tremblay@usdoj.gov,janet.bain@usdoj.gov,
usacae.ecfsaccv@usdoj.gov,pamela.beauvais@usdoj.gov,
monica.lee@usdoj.gov,cassie.christensen@usdoj.gov
Eric S. Pezold .................epezold@swlaw.com
Leo D. Plotkin ...............lplotkin@lsl-la.com,hpetrilli@lsl-la.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **March 11, 2015**, at Costa Mesa, California.

/s/ Kimberly A. Collins
Kimberly A. Collins

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

PROOF/CERTIFICATE OF SERVICE

- 2 -

16409375